# EXHIBIT "1"

| | |
|---|---|
| **From:** | Nalbandyan, Hovannes "Hovik" |
| **To:** | "David C. Leimbach"; Carolyn H. Cottrell; Scott L. Gordon |
| **Cc:** | Gregg Shavitz; Michael Palitz; Tamra Givens; Patajo, Emily T. |
| **Subject:** | RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel |
| **Date:** | Saturday, October 19, 2019 5:17:00 PM |
| **Attachments:** | image005.png |
| | image006.png |
| | image001.png |

---

Dear Counsel:

Thank you for your e-mail, and for your patience. Below in red please find Sprint's position regarding the outstanding issues. Due to our collective unavailability, we were unable to respond yesterday. To the extent possible, we will respond in full regarding the remaining issues during the upcoming week.

**Documents and Data Produced in *Guilbaud***

- **Plaintiff's Position**: It has been a week.  The Court will not continue dates if we do not have an agreement by the 30th. We will not wait until the last minute to try and finalize informal production arrangements, as it will be too late to take necessary actions, such as moving to compel further discovery responses, and moving to amend the complaint – dates that will not be moved unless an agreement on informal discovery is reached. We expect a response by close of business tomorrow.

- **Defendant's Position:**
  - With all due respect, it took multiple months until we received our request for the documents produced in the *Guilbaud* matter. We were not the counsel of record in the *Guilbaud* case, so we are reliant on prior counsel to confirm the production. Regrettably, prior counsel had been difficult to reach due to Yom Kippur, and a recent medical procedure that has kept him out of the office.
  - We are doing our best to circle back as soon as possible (including multiple follow-ups with prior counsel), and are willing to work with Plaintiff's counsel to advise the Court of same – including stipulating to acquire relief, or an extension, from Plaintiff's outstanding motion to compel deadline. However, we cannot agree to the production of anything until we have heard from prior counsel and acquire approval from our client.
  - Has Plaintiff reviewed Sprint's informal request for documents and information? Does Plaintiff intend to produce Sprint's requested documents? The Court made very clear that both sides have to reach an agreement regarding the informal document production.

**Conditional Certification:**

1. **Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns).**
   - **Plaintiff's Position**: It appears the parties are in agreement over this issue.
   - **Defendant's Position**: Yes, correct.

2. **To the extent contact information is produced, Sprint will only produce to the Notice**

**Administrator.**

- **Defendant's Original Position**: Plaintiff already agreed to this for non-California members of the proposed Collective.  The Parties disagree whether the Rule 23 Class List needs to be produced as a pre-condition for stipulating to conditional certification.  Again, Sprint has no qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.

- **Plaintiff's Response:** The production of a Rule 23 Class list is not a pre-condition for stipulating to conditional certification; is it is pre-condition for a productive mediation.  One way or the other, we will need to receive the Rule 23 Class list, so we can conduct our investigation, before the mediation. If we are unable to obtain a class list and conduct our investigation prior to mediation, please be advised: during mediation, we will not entertain any arguments that the experiences of class and collective members were different from Plaintiff's. Even outside of mediation, this is information we require to litigate the case. This information was requested through our formal discovery, and if we need to bring a motion to compel, we will. But considering it is black-letter law that Plaintiff is entitled to this class list, such an approach seems incredibly wasteful. We are willing to use a *Belaire* process. Please confirm if the parties have reached an impasse over this issue requiring the Court's involvement.

  - **Defendant's Position**:
    - The Parties agree that the production of the Rule 23 Class List will not be a pre-condition for stipulating to condition certification. In that vein, Sprint will agree to produce to the Collective lists only to the Notice Administrator.
    - In light of the above agreement, the Parties should proceed regarding the stipulation to conditionally certify the collective, so that the matter is progressing forward.
    - Just please confirm that Plaintiff is agreeable with the following revisions to paragraph 8 of the Parties' Stipulation to Conditionally Certify the Collective: "Within fourteen (14) days of this Order, Defendant shall provide ~~Plaintiff and~~ the Notice Administrator with a computer-readable data file…"
    - Please also confirm the same revision for paragraph 1 of the [Proposed] Order.
    - After confirmation of the above, the Parties have reached an agreement regarding this issue.
    -

3.  **Sprint will only provide full names, last known addresses, and social security numbers.**

    - **Plaintiff's Position:** Plaintiff is amenable to a protective order. Collective lists will be produced to the Notice Administrator.  Class lists must be produced directly to Plaintiff's counsel. Please confirm if the parties have reached an impasse over this issue.

    - **Defendant's Positon**:
      - Again, the parties are attempting to reach an agreement regarding the

conditional certification issue. The production of the Rule 23 class list should not be equivocated with the production of the Collective List to the Notice Administrator for purposes of proceeding the Stipulation to Conditionally Certify the Collective.

o The Parties agree that the collective list should be subject to a protective order, and that the collective lists will be produced only to the Notice Administrator. However, as mentioned before, to the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.

o The Parties are in agreement regarding the collective list.

o The Parties have not reached an agreement regarding the production of the Rule 23 class list.

d.  Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.

- **Plaintiff's Position:** We know this is incorrect.  Sprint's standard employment application, available on Sprint's main webpage, asks for this information. This is not a "non-issue;" it is non-negotiable from our end. Email addresses must be produced, and notice must go out via email.  In fact, in Oliphant, the Court's Report and Recommendation on 216b Certification provided for the production of e-mail addresses and Sprint did not object. Please confirm whether the parties have reached an impasse over this issue.

- **Defendant's Position:** We are circling back with our client to acquire confirmation regarding the personal e-mail addresses during the application process. Based on our understanding, Sprint does not keep track of employee's personal e-mail addresses. To the extent Sprint was ordered in Oliphant to produce e-mail addresses, there was no mention of producing personal e-mail addresses. Indeed, based on our understanding, Sprint did not produce personal any e-mail addresses in *Oliphant.*

e.  Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review applicable federal and state guidelines for producing Customer Proprietary Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent. Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

- **Plaintiff's Position:** The production of phone numbers is standard practice.  You

are not producing "customer" "call records;" you are producing class and collective member contact information. The statutes you have cited are irrelevant. As you no doubt know, in California, the law is clear: class and collective contact information (including phone numbers) is discoverable, and any privacy concerns are addressed through a *belaire* process and/or protective order, both of which we have already agreed. <u>Please confirm whether the parties have reached an impasse on this issue.</u>

- **Defendant's Position:** Sprint was not ordered to produce telephone numbers in *Oliphant*. Same applies here. Regarding the statutes we cited, they apply to the Sprint's employees, as most Sprint employees have Sprint telephone plans and are customers for purposes of the CPNI. Sprint will not be producing telephone numbers of its employees without a Court Order. <u>The Parties have reached an impasse on this issue.</u>

4. **Only mailed notices will go out.**
   - **Plaintiff's Position:** See above. Notice via mail and email is required.  If Sprint agrees to notice by e-mail, we will not seek notice by text message.
   - **Defendant's Position:** Please see above. We will circle back regarding the e-mail issue as it relates to the production of the Collective List. If Sprint produces personal e-mails, which based on our understanding it does not have any to produce, then Defendant is amenable with Plaintiff not seeking notice by text message.

5. **Reminders will be sent by mail only.**
   - **Plaintiff's Position:** See discussion above.
   - **Defendant's Position:** Same as above.

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**
   - **Plaintiff's Position:** We believe a 90-day period is proper.  We are willing to consider a 75-day period if Sprint agrees to other conditions outlined in this email.
   - **Defendant's Position:** Please clarify what Plaintiff means by "other conditions outlined in this e-mail." We will discuss Plaintiff's suggestion for a 75-day opt-in period with our client. Otherwise, Sprint reasserts its position outlines below.

7.  **The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms.  That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**
   - **Plaintiff's Position:** I don't think there's any actual disagreement here.  Plaintiff's counsel will not be re-writing deficient opt-in forms.
   - **Defendant's Position:** Thank you for confirming. In light of this agreement, please confirm that Plaintiff will agree to revise Paragraph 12 of the Joint Stipulation and Paragraph 5 of the [Proposed Order] so that it reads as follows:

"To the extent needed, Plaintiff's counsel may ~~cure and~~ re-file any Opt In Consent Forms that were filed, ~~and~~ later found to be deficient. Putative collective members are subject to a 30-day cure period after the subject opt-in is judged to be deficient. The subject opt-in will be solely responsible for curing and returning deficient opt-in forms."

c.     Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.

- **Plaintiff's Position**: Plaintiff is agreeable to this.
- **Defendant's Position**: Same with Defendant. Please see discussion above.

8. **Only the Notice Administrator may put notice on their website.**
   - **Plaintiff's Position***:* Plaintiff's counsel has agreed to not put notice on their websites if the parties can come to a global agreement on conditional certification. Plaintiff has not, and does not, make an unqualified agreement to refrain from posting notice on our websites.
   - **Defendant's Position:** Based on Defendant's understanding, if the Parties reach an agreement on conditional certification, Plaintiff will refrain from putting notice on its website. The Parties are still in agreement on this issue. Plaintiff's qualifications above are understood.

9. **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.** In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.
   - **Plaintiff's Position:** Under this example, we agree.
   - **Defendant's Position:** Thank you. The parties are in agreement on this point.

10. **In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.**
    - **Plaintiff's Position:** We do not agree with this.  Because individuals who actually opted in to Oliphant will not receive notice, we see no reason for collective member confusion, nor do we perceive any prejudice to Sprint. If you have authority suggesting these individuals should not receive notice, we will reconsider your argument.
    - **Defendant's Position:** Defendant will research this issue further, and circle back. Please see discussion below.

11. To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.

- **Plaintiff's Position**: To the extent the release resembles your Drouillard example, we agree.  Those individuals do not have any FLSA claims.  But individuals who may have only released a portion of their FLSA claims should receive notice.
- **Defendant's Position:** Understood. Defendant will research this issue further, and circle back.
- **Plaintiff's Second Position***:* How do you propose to address this issue, logistically? For example, looking to class or collective action settlement agreements and settlement approval orders, we can identify the scope of the relevant release, verify those individuals who should not receive notice, and structure stipulation language accordingly.  Do you also intend to send us all relevant individual settlement agreements? Because Plaintiff will not agree that Defendant can unilaterally decide who has released all their claims without providing Plaintiff any ability to verify, and then prevent those individuals from receiving notice. Additionally, please advise how many potential employees at issue that sprint contends may have released their claims so we can get a sense of the scope of individuals at issue.
- **Defendant's Second Position:** Defendant will circle back on this issue.

12.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*
- **Plaintiff's Position***:* See above – only for individuals who have opted into Oliphant.
- **Defendant's Position:** Understood. Thank you. Same as above. Defendant will circle back on this issue.

b.    Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case.  Is that correct?
- **Plaintiff's Position:** (1) is correct; (2) is partially correct. We will agree to exclude individuals who have released all their FLSA claims as part of a class/collective settlement.  We do not agree to exclude individuals who may have only released a portion of their FLSA claims as part of a class/collective settlement.
- **Defendant's Position:** Understood. Thank you.

## Stipulated Protective Order

a.    **Plaintiff's Position:** Please send us a draft of the Stipulated protective order, using the SD Cal.'s Model. We will review once sent.

b.    **Defendant's Position**: We sent a prior version, which was rejected. We agree to use the SD Cal Protective Order as is.

## [Proposed] Amended Complaint:

*a.*    **Plaintiff's Position:** It has been a week.  We expect a responses by close of business tomorrow.  Otherwise, we will plan on moving to amend the complaint.

**b.    Defendant's Position:** We will respond during the upcoming week.  We anticipate

stipulating to grant leave.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Sent:** Thursday, October 17, 2019 3:54 PM
**To:** Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Dear Counsel:

Our responses to your most recent email regarding conditional certification is as follows, in **bold italics**:

(1) **Documents and Data Produced in _Guilbaud_**

We have reached out to Sprint's prior counsel in the _Guilbaud_ matter to confirm the full extent of Sprint's formal/informal discovery production. Prior counsel will review Plaintiff's list and confirm its accuracy. We expect a response by next week. Once confirmed, we believe an agreement to produce same will likely remediate many of the issues below.

- _**It has been a week. The Court will not continue dates if we do not have an agreement by the 30th. We will not wait until the last minute to try and finalize informal production arrangements, as it will be too late to take necessary actions, such as moving to compel further discovery responses, and moving to amend the complaint – dates that will not be moved unless an agreement on informal discovery is reached. We expect a response by close of business tomorrow.**_

(2) **Conditional Certification:**

Please find Sprint's revised positions below. Sprint remains amenable to stipulating to conditional certification, even if the Parties are not at full agreement regarding the issues below. If the Parties are at an impasse, Sprint is amenable returning back to the Court for resolution.

1.   **Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns).**
     a.   We are fine with the SD Cal Model Protective Order.
                    i.   ***It appears the parties are in agreement over this issue.***

2.   **To the extent contact information is produced, Sprint will only produce to the Notice Administrator.**
     a.   Plaintiff already agreed to this for non-California members of the proposed Collective.  The Parties disagree whether the Rule 23 Class List needs to be produced as a pre-condition for stipulating to conditional certification.  Again, Sprint has no qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.
                    i.   ***The production of a Rule 23 Class list is not a pre-condition for stipulating to conditional certification; is it is pre-condition for a productive mediation.  One way or the other, we will need to receive the Rule 23 Class list, so we can conduct our investigation, before the mediation. If we are unable to obtain a class list and conduct our investigation prior to mediation, please be advised: during mediation, we will not entertain any arguments that the experiences of class and collective members were different from Plaintiff's.  Even outside of mediation, this is information we require to litigate the case. This information was requested through our formal discovery, and if we need to bring a motion to compel, we will. But considering it is black-letter law that Plaintiff is entitled to this class list, such an approach seems incredibly wasteful. We are willing to use a Beliare process. <u>Please confirm if the parties have reached an impasse over this issue requiring the Court's involvement.</u>***

3.   **Sprint will only provide full names, last known addresses, and social security numbers.**
     a.   Sprint will agree to include jobs titles.
     b.   The rest will depend on whether the information is produced directly to the Notice Administrator or Plaintiff's counsel, and the Parties entering into a stipulated protective order (which the Notice Administrator would also be subject to).
                    i.   ***Plaintiff is amenable to a protective order. Collective lists will be produced to the Notice Administrator.  Class lists must be produced directly to Plaintiff's counsel. <u>Please confirm if the parties have reached an impasse over this issue.</u>***
     c.   To the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.
     d.   Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.
                    i.   ***We know this is incorrect.  Sprint's standard employment application, available on Sprint's main webpage, asks for this***

*information. This is not a "non-issue;" it is non-negotiable from our end. Email addresses must be produced, and notice must go out via email.  In fact, in Oliphant, the Court's Report and Recommendation on 216b Certification provided for the production of e-mail addresses and Sprint did not object. <u>Please confirm whether the parties have reached an impasse over this issue.</u>*

   e.   Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review applicable federal and state guidelines for producing Customer Proprietary Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent. Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

   i.   *The production of phone numbers is standard practice.  You are not producing "customer" "call records;" you are producing class and collective member contact information. The statutes you have cited are irrelevant. As you no doubt know, in California, the law is clear: class and collective contact information (including phone numbers) is discoverable, and any privacy concerns are addressed through a belaire process and/or protective order, both of which we have already agreed. <u>Please confirm whether the parties have reached an impasse on this issue.</u>*

4. **Only mailed notices will go out.**

   a.   Please see above. In light of same, we believe Plaintiff's position regarding notice by e-mail and text is likely moot.

   i.   *See above. Notice via mail and email is required. If Sprint agrees to notice by e-mail, we will not seek notice by text message.*

5. **Reminders will be sent by mail only.**

   a.   Same as Item # 4. See discussion above.

   i.   *See discussion above.*

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**

   a.   As a compromise, Plaintiff agreed to a 90-day opt-in period.  However, we do not have authority for a 90-day opt-in period. If Plaintiff is amenable to 60-days, we believe Sprint will agree to same. If not, Sprint maintains its position that a 30-day opt-in period is appropriate.

   i.   *We believe a 90-day period is proper.  We are willing to consider a 75-day period if Sprint agrees to other conditions*

*outlined in this email.*

7. **The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms.  That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**

   a.   The issue is <u>not</u> who is responsible of *filing* the opt-in; the issue is who is responsible for *curing* the opt-in forms.

   b.   For the individual opt-ins, it's our understanding that the opt-in Plaintiffs are supposed to work with the claims administrator, and are responsible for fixing any defects with their opt-in forms.  We take issue with Plaintiff's counsel fixing defective forms, instead of having them handled by the opt-in plaintiffs (*See, e.g., Van Kempen v. Matheson Tri-Gas, Inc.,* 2016 U.S. Dist. LEXIS 100537 (court discussed deficiency of the actual Opt-In Form; the parties may correct deficiencies by directing FLSA putative class members to send an opt-in form back to the settlement administrator ***and then*** filing them with the Court); *Casas v. Pac. Bell Tel. Co.,* 2014 Cal. Super. LEXIS 10127 (provides an outline of the schedule and indicates that deficient forms should be sent to settlement administrator directly.)

       i.   ***I don't think there's any actual disagreement here.  Plaintiff's counsel will not be re-writing deficient opt-in forms.***

   c.   Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.

       i.   ***Plaintiff is agreeable to this.***

8. **Only the Notice Administrator may put notice on their website.**

   a.   This is no longer an issue. Plaintiff's counsel agreed not to put notice on their websites, and that only the Notice Administrator may put the notice on its website.

       i.   ***Plaintiff's counsel has agreed to not put notice on their websites if the parties can come to a global agreement on conditional certification. Plaintiff has not, and does not, make an unqualified agreement to refrain from posting notice on our websites.***

9. **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.**  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.

   a.   ***Under this example, we agree.***

10. In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.

    a.   ***We do not agree with this.  Because individuals who actually opted in to Oliphant will not receive notice, we see no reason for collective member confusion, nor do we perceive any prejudice to Sprint. If you have authority suggesting these individuals should not receive notice, we will reconsider your argument.***

11. To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any

current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.

    **a.** ***To the extent the release resembles your Drouillard example, we agree. Those individuals do not have any FLSA claims. But individuals who may have only released a portion of their FLSA claims should receive notice.***

    **b.** ***How do you propose to address this issue, logistically? For example, looking to class or collective action settlement agreements and settlement approval orders, we can identify the scope of the relevant release, verify those individuals who should not receive notice, and structure stipulation language accordingly. Do you also intend to send us all relevant individual settlement agreements? Because Plaintiff will not agree that Defendant can unilaterally decide who has released all their claims without providing Plaintiff any ability to verify, and then prevent those individuals from receiving notice. Additionally, please advise how many potential employees at issue that sprint contends may have released their claims so we can get a sense of the scope of individuals at issue.***

12. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*

    a. ***See above – only for individuals who have opted into Oliphant.***

    b. Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case. Is that correct?

        i. ***(1) is correct; (2) is partially correct. We will agree to exclude individuals who have released <u>all</u> their FLSA claims as part of a class/collective settlement. We do not agree to exclude individuals who may have only released a portion of their FLSA claims as part of a class/collective settlement.***

  **(3)** <u>**Stipulated Protective Order**</u>

Kindly confirm that Sprint has authority to affix Plaintiff's electronic signature and file the SD Cal Model Protective Order.

    - ***Please send us a draft of the Stipulated protective order, using the SD Cal.'s Model. We will review once sent.***

  **(4)** <u>**[Proposed] Amended Complaint:**</u>

We are still working through the proposed amended complaint, and anticipate having a response shortly.

    - ***It has been a week. We expect a responses by close of business tomorrow. Otherwise, we will plan on moving to amend the complaint.***

David



**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
             (800) 689-0024
Toll Free:   (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Thursday, October 10, 2019 6:54 PM
**To:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach
<DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra
Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Dear Counsel:

Thank you for your patience. Below please find Sprint's position regarding the outstanding issues.

**(1)** **Documents and Data Produced in *Guilbaud***
We have reached out to Sprint's prior counsel in the *Guilbaud* matter to confirm the full extent of
Sprint's formal/informal discovery production. Prior counsel will review Plaintiff's list and confirm its
accuracy. We expect a response by next week. Once confirmed, we believe an agreement to
produce same will likely remediate many of the issues below.

**(2)** **Conditional Certification:**
Please find Sprint's revised positions below. Sprint remains amenable to stipulating to conditional
certification, even if the Parties are not at full agreement regarding the issues below. If the Parties
are at an impasse, Sprint is amenable returning back to the Court for resolution.

1. **Any and all contact information must be subject to a stipulated protective order (due to
   the obvious privacy concerns).**
   a. We are fine with the SD Cal Model Protective Order.
2. **To the extent contact information is produced, Sprint will only produce to the Notice
   Administrator.**
   a. Plaintiff already agreed to this for non-California members of the proposed
      Collective. The Parties disagree whether the Rule 23 Class List needs to be produced
      as a pre-condition for stipulating to conditional certification. Again, Sprint has no

        qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.

3. **Sprint will only provide full names, last known addresses, and social security numbers.**

    a. Sprint will agree to include jobs titles.

    b. The rest will depend on whether the information is produced directly to the Notice Administrator or Plaintiff's counsel, and the Parties entering into a stipulated protective order (which the Notice Administrator would also be subject to).

    c. To the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.

    d. Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.

    e. Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review applicable federal and state guidelines for producing Customer Proprietary Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent. Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

4. **Only mailed notices will go out.**

    a. Please see above. In light of same, we believe Plaintiff's position regarding notice by e-mail and text is likely moot.

5. **Reminders will be sent by mail only.**

    a. Same as Item # 4. See discussion above.

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**

    a. As a compromise, Plaintiff agreed to a 90-day opt-in period.  However, we do not have authority for a 90-day opt-in period. If Plaintiff is amenable to 60-days, we believe Sprint will agree to same. If not, Sprint maintains its position that a 30-day opt-in period is appropriate.

7. **The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-filing deficient opt-in consent forms.  That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**

    a. The issue is <u>not</u> who is responsible of *filing* the opt-in; the issue is who is responsible for *curing* the opt-in forms.

    b. For the individual opt-ins, it's our understanding that the opt-in Plaintiffs are

supposed to work with the claims administrator, and are responsible for fixing any defects with their opt-in forms. We take issue with Plaintiff's counsel fixing defective forms, instead of having them handled by the opt-in plaintiffs (*See, e.g., Van Kempen v. Matheson Tri-Gas, Inc.,* 2016 U.S. Dist. LEXIS 100537 (court discussed deficiency of the actual Opt-In Form; the parties may correct deficiencies by directing FLSA putative class members to send an opt-in form back to the settlement administrator ***and then*** filing them with the Court); *Casas v. Pac. Bell Tel. Co.,* 2014 Cal. Super. LEXIS 10127 (provides an outline of the schedule and indicates that deficient forms should be sent to settlement administrator directly.)

    c.   Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.

8. **Only the Notice Administrator may put notice on their website.**

    a.   This is no longer an issue. Plaintiff's counsel agreed not to put notice on their websites, and that only the Notice Administrator may put the notice on its website.

9. **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.** In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective. This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases. In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active. Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint. To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*

    a.   Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case. Is that correct?


**(3)  Stipulated Protective Order**

Kindly confirm that Sprint has authority to affix Plaintiff's electronic signature and file the SD Cal Model Protective Order.


**(4)  [Proposed] Amended Complaint:**

We are still working through the proposed amended complaint, and anticipate having a response shortly.


Thank you.


Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
[HNalbandyan@littler.com](mailto:HNalbandyan@littler.com)



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** Carolyn H. Cottrell <[ccottrell@schneiderwallace.com](mailto:ccottrell@schneiderwallace.com)>
**Sent:** Tuesday, October 1, 2019 9:12 AM
**To:** Nalbandyan, Hovannes "Hovik" <[HNalbandyan@littler.com](mailto:HNalbandyan@littler.com)>; David C. Leimbach
<[DLeimbach@schneiderwallace.com](mailto:DLeimbach@schneiderwallace.com)>; Scott L. Gordon <[sgordon@schneiderwallace.com](mailto:sgordon@schneiderwallace.com)>
**Cc:** Gregg Shavitz <[gshavitz@shavitzlaw.com](mailto:gshavitz@shavitzlaw.com)>; Michael Palitz <[mpalitz@shavitzlaw.com](mailto:mpalitz@shavitzlaw.com)>; Tamra
Givens <[tgivens@shavitzlaw.com](mailto:tgivens@shavitzlaw.com)>; Patajo, Emily T. <[EPatajo@littler.com](mailto:EPatajo@littler.com)>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel,

Please respond to my email below.

Thanks
Carolyn



**Carolyn Hunt Cottrell**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
            (800) 689-0024
Toll Free:  (415) 421-7105
Facsimile:
[www.schneiderwallace.com](http://www.schneiderwallace.com)

---

**From:** Carolyn H. Cottrell
**Sent:** Tuesday, September 24, 2019 12:40 PM
**To:** Nalbandyan, Hovannes "Hovik" <[HNalbandyan@littler.com](mailto:HNalbandyan@littler.com)>; David C. Leimbach
<[DLeimbach@schneiderwallace.com](mailto:DLeimbach@schneiderwallace.com)>; Scott L. Gordon <[sgordon@schneiderwallace.com](mailto:sgordon@schneiderwallace.com)>
**Cc:** Gregg Shavitz <[gshavitz@shavitzlaw.com](mailto:gshavitz@shavitzlaw.com)>; Michael Palitz <[mpalitz@shavitzlaw.com](mailto:mpalitz@shavitzlaw.com)>; Tamra

Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel:

Unfortunately, the majority of those conditions will not work for us. We are willing to compromise on some of these issues, provided it puts the matter to rest. But for the majority of these issues, Plaintiff's position is firm.  Please let us know if the parties have reach an impasse, since expedient resolution of conditional certification and the notice phase is essential to a productive mediation.

Plaintiff's responses appear in red.  And to reiterate, Plaintiff's concessions on a given issue are not made generally, but only to the extent the parties' stipulate to conditional certification.

**(1)  Condition Certification:**
Sprint is amenable to stipulating to conditional certification on the following conditions:
1.  Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns). See discussion below.
    a.  We are fine with a protective order.  We will review the one circulated and get back to you as soon as possible.
2.  To the extent contact information is produced, Sprint will only produce to the Notice Administrator.
    a.  Plaintiff will agree to this for non-California members of the proposed Collective. But for members of the proposed California Class, Plaintiff's counsel expects to receive the entire class list.  As a matter of law, Plaintiff is entitled to this information.
3.  Sprint will only provide full names, last known addresses, and social security numbers.
    a.  Personal phone numbers, personal email addresses, and job titles must be provided too.
4.  Only mailed notices will go out.
    a.  Email and text notice must also go out. These electronic notices will feature a link to the notice administrator's webpage, which will allow Collective members to complete opt-in forms electronically.
5.  Reminders will be sent by mail only.
    a.  Reminders will be sent by email and text as well.
6.  An opt-in period of 30 days, instead of 120 days (this is excessive).
    a.  As a compromise, we will agree to a 90-day opt-in period.
7.  The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms.  That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.
    a.  Collective members do not personally file their opt-ins – Plaintiff's counsel handles that task.  We're not sure what the issue is here.  Plaintiff will agree to limit the cure period to 30 days after subject opt-in is judged to be deficient.
8.  Only the Notice Administrator may put notice on their website.
    a.  Plaintiff's counsel will agree not to put "notice" on their websites, and that only the Notice Administrator may put the notice on its website.
9.  Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since

2/28/16.  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.  In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.  Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.

a.   To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*

i.   If a Collective Member has no potential claims, i.e., all work experience falls within the scope of a settlement (individual or class), we are fine with notice not going to that person.  But we have not received any information indicating that would apply to any Collective member.  While Collective members may have released older claims in other proceedings, the release would not apply to claims that have accrued since then, and notice must still go to these Collective members.

1.   We cannot agree that Sprint will have unilateral discretion to decide who has "released" their claims in deciding the scope of individuals to receive notice.  If there are Collective members who have executed individual settlement agreements, for example, that Sprint contends extinguishes all claims at issue in this case, we will need a list of names, as well as the date of the settlement, the settlement agreement, and the time period in which the individual worked for Sprint.  The same requirements attach to prior class or collective settlements Sprint believes extinguishes all claims during the relevant time period.

ii.   The following approach is problematic: "employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective."  If certain Collective members will not receive notice, we need to know all the cases where Sprint believes their entire claims are foreclosed, and the applicable time frames. While we understand there may be some settlements that foreclose a portion of a Collective member's claims, we are not aware of any case that would have fully extinguished the claims of a Collective member during the time frame at issue in this case.

1.   The example you gave is something with which we could work: "*Drouillard* class members whose employment ended during the settlement period." The would seem an example of a proposed Collective member who would not have any claims left.

iii.   We do not agree that notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action.  We will agree that notices will not be sent to Collective members who have opted in to *Oliphant.*

iv.   For these reasons, the proposed add-on language does not work for us: "opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted

in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*"

1. For one, if the Collective member is "current," any prior release necessarily does not extinguish all claims at issue in this case.

2. For former Collective members, the language will need to read as follows: "opt-in notices shall not be sent to any former non-exempt employees who worked in retail who have released <u>all</u> claims that are asserted in the *Amaraut* action, during the time period at issue, whether such claims have been released through individual settlements or through settled class and/or collective actions."

   a. While this language will work as far as the Stipulation is concerned, we will nevertheless need verification that a Collective member is properly excluded on this basis before they are prevented from receiving notice of this case. If there is a disagreement as to whether that individual released <u>all</u> claims at issue, the individual will need to be included, and Sprint can challenge that individuals ability to participate when and if the need arises.

v. By in large, we do not believe these other cases should meaningfully impact notice dissemination. Rather, to the extent Collective members released *some* of their claims, that would impact the parties' discussions concerning damages and settlement. But any individual with a live claim – even if a portion of their claims are foreclosed by settlement – should receive notice and be included in the certified Collective.

**(2)** <u>**Stipulated Protective Order**</u>

In conjunction with our discovery responses, we provided a draft stipulated protective order. Kindly review and confirm we have authority to affix your firm's signature for filing. We have attached it here again for your convenience.
We will review and get back to you this week.

**(3)** <u>**Mark Rudy's Available Dates:**</u>

Mark Rudy has the following dates available, which also work for our client: **March 3, 5, 10, 24, 26, 30.**
We will get back to you this week.

**(4)** <u>**Meet and Confer Re Discovery:**</u>

We stipulated to continue the MTC deadline until after the mediation, produced documents, and agreed to informal discovery prior to mediation to ensure a meaningful mediation. Could you please provide additional clarification on the scope of the meet and confer, so we may appropriately prepare for it? Does Plaintiff intend to confer regarding the scope of informal discovery?
This meet and confer will largely concern formal discovery, not informal discovery. If the parties are unable to stipulate to conditional certification, Plaintiff must proceed on two tracks: formal litigation, and early settlement discussions. This is particularly true considering that Sprint will not be available to mediate until March at the earliest.

Plaintiff has not pursued appropriate responses to his written discovery served three months ago so the parties could focus on a potential early resolution. But taking no action on formal

discovery from June of 2019 to March or April of 2020 is not something we can do, particularly when formal litigation may need to take place regarding conditional certification. We do not believe the Court would look kindly on a request to modify case management dates (which, presumably, will be accomplished by way of a joint motion), when no progress has been made in discovery or on the case generally in nearly a year.

**(5)  [Proposed] Amended Complaint:**
We will be in touch regarding same soon.
When can we expect a response?

Carolyn



**Carolyn Hunt Cottrell**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
             (800) 689-0024
Toll Free:  (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Friday, September 20, 2019 6:24 PM
**To:** David C. Leimbach <DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel:

Thank you for your patience. Our thoughts regarding the outstanding issues are as follows:

**(1)  Condition Certification:**
Sprint is amenable to stipulating to conditional certification on the following conditions:
1.  Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns). See discussion below.
2.  To the extent contact information is produced, Sprint will only produce to the Notice Administrator.
3.  Sprint will only provide full names, last known addresses, and social security numbers.
4.  Only mailed notices will go out.

5.   Reminders will be sent by mail only.
6.   An opt-in period of 30 days, instead of 120 days (this is excessive).
7.   The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms.  That must be done by the class member. Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.
8.   Only the Notice Administrator may put notice on their website.
9.   Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.  In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.

   a.   To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint*.

**(2)  Stipulated Protective Order**
In conjunction with our discovery responses, we provided a draft stipulated protective order. Kindly review and confirm we have authority to affix your firm's signature for filing. We have attached it here again for your convenience.

**(3)  Mark Rudy's Available Dates:**
Mark Rudy has the following dates available, which also work for our client: **March 3, 5, 10, 24, 26, 30.**

**(4)  Meet and Confer Re Discovery:**
We stipulated to continue the MTC deadline until after the mediation, produced documents, and agreed to informal discovery prior to mediation to ensure a meaningful mediation.
Could you please provide additional clarification on the scope of the meet and confer, so we may appropriately prepare for it? Does Plaintiff intend to confer regarding the scope of informal discovery?

**(5)  [Proposed] Amended Complaint:**
We will be in touch regarding same soon.

After your team has had a chance to review the above, kindly provide us your thoughts. Thank you.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Sent:** Thursday, September 19, 2019 3:07 PM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz
<gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens
<tgivens@shavitzlaw.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel:

We need to hear back from you regarding the stipulation for conditional certification by close of
business tomorrow.  This process has been delayed for some time now, the claims of collective
members continue to expire, and if we cannot get this resolved in the next couple days, we intend to
move for conditional certification towards the end of next week.

We also need to schedule a call next week to meet and confer over Defendant's discovery
responses.  What is your availability?

David



**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
         (800) 689-0024
Toll Free:  (415) 421-7105

Facsimile:
www.schneiderwallace.com

---

**From:** Patajo, Emily T. [mailto:EPatajo@littler.com]
**Sent:** Thursday, September 19, 2019 2:13 PM
**To:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Hi Scott,

The revisions are acceptable to me.  Mark Rudy has given us dates in January, February and March.  Because I have trial in February, I cannot book mediation in January or February.  I'm running the March dates by my client and will then circulate the dates that work on our end.

Regards,
Emily

---

**From:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Sent:** Thursday, September 19, 2019 12:57 PM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

# [EXTERNAL E-MAIL]

Dear Emily,

Thank you for your approval of the joint motion to continue the motion to compel deadline.  I have revised it slightly because of the reassignment to the new magistrate judge (Judge Allison H. Goddard has a 45-day deadline for raising discovery disputes).  The minor tweaks are visible in the attached redlines.  Please let us know if you approve.

Also, do you have any updates on Mark Rudy's dates?  We have to get something booked.

Thank you for your time.

Best,
Scott

---

**From:** Patajo, Emily T. [mailto:EPatajo@littler.com]
**Sent:** Tuesday, September 17, 2019 9:33 AM
**To:** Scott L. Gordon <sgordon@schneiderwallace.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Scott,

We don't have any changes to the joint motion to continue the deadline for motions to compel.  We will get back to you separately about the stip for condition cert and Mark Rudy's dates, which we just received.

Emily

---

**From:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Sent:** Thursday, September 5, 2019 1:28 AM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

## [EXTERNAL E-MAIL]

Counsel,

Pursuant to the Court's standing order, there is a 30-day deadline to file motions to compel. Given that Defendant's document production was limited to Plaintiff, and did not encompass any class or collective members, we obviously have some issues with Defendant's responses and production. We also note that the production contains duplicate documents, e.g. SPRINT0000814-851 and SPRINT0000886-923 (there are many other issues over which the parties must meet and confer; these are just by way of an example).

Under the 30-day timeline, we are required to circulate a draft of the joint motion re discovery dispute, with a filing deadline of September 18 (this deadline assumes the three-day rule applies for service of the responses by mail). Pursuant to Judge Dembin's Chamber Rules at Section IV.C, Judge Dembin expects the parties to file a joint motion to seek relief from this

requirement. Attached you will find a draft of a joint motion to this effect. Please let me know whether I have your agreement to file this today (Thursday). Thank you.

Best,
Scott



**Scott L. Gordon**
**Attorney at Law**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:   (415) 421-7100

Direct:          (510) 740-2922
Toll Free:      (800) 689-0024
Facsimile:     (415) 421-7105

www.schneiderwallace.com

--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the

sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.


--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

# EXHIBIT "2"

| | |
|---|---|
| **From:** | Scott L. Gordon |
| **To:** | Nalbandyan, Hovannes "Hovik"; David C. Leimbach |
| **Cc:** | Carolyn H. Cottrell; Gregg Shavitz; Michael Palitz; Tamra Givens; Patajo, Emily T. |
| **Subject:** | RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel |
| **Date:** | Wednesday, October 23, 2019 3:57:13 PM |

Dear Hovik,

Thank you for your willingness to work with us on these issues. It appears that we are close to agreement on stipulation to conditional certification. Additionally, the parties agree to stipulate to amendment of the complaint and to move case deadlines.

Our deadline to move the October 30 deadlines (motion to amend and motion to compel discovery responses) is today. The motion to amend deadline should be a moot point, as the parties agree to stipulate to the amended complaint.  However, the motion to compel deadline remains a live issue. To move it, we must have a Joint Mediation Plan.

To address these issues in an expedient manner, it may be helpful to summarize where we stand on (1) stipulation to conditional certification, and separately, (2) the mediation plan. Please let me know if you are not in agreement on any of the issues below.

Regarding stipulation to conditional certification, It appears that we have reached agreement on the major items:

- The FLSA notice and blank opt-in form will go out via mail and email.

- For the FLSA notice process, the parties agree that names and contact information (including email addresses) for putative collective members will be provided to the notice administrator.  We are agreeable to Hovik's specified changes to the stipulation and proposed order to reflect this.  (Separately, Plaintiff reserves the right to seek production of a class lists for the California class and any later Rule 23 classes asserted in this case.)

- The notice administrator will send the submitted opt-in forms to Plaintiff's counsel.

- Notice and opt-in forms will <u>not</u> be sent to those individuals who (1) have opted into other FLSA actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have <u>fully</u> released FLSA claims as part of class/collective action settlements. The parties will still have to figure out the logistics of this.

- The parties are amenable to the S.D. Cal. model protective order, and will sign and file it by tomorrow.  Any information produced to the notice administrator will be subject to the protective order.

- The parties agree to the provision regarding re-filing of deficient opt-in forms, with the 30-day cure period. We are agreeable to Hovik's specified changes to the stipulation and proposed order to reflect this.

- Only the notice administrator may put the notice on its website.

The following issues for conditional certification must still be addressed:
- The length of the opt-in periods. Provided that Defendant agree to electronic submission of opt-in forms and in the interest of finality, Plaintiff is amenable to a 75 day notice period.

- The manner of dissemination of reminder notices. At this point, Plaintiff requires that they go out via mail and email, while Defendant requires mail only.

We will update the stipulation and proposed order accordingly and circulate it to you shortly.

Regarding the mediation plan, we have agreed to mediate the case with Mark Rudy on March 24, 2020.  Plaintiff's position is that the informal discovery should be produced by mid-January. We will continue to meet and confer with you as to the scope of mediation discovery. **However, our deadline to move the motion to compel deadline is today. Therefore, we must agree on a joint motion to continue the deadline and the Joint Mediation Plan (finalized to the extent possible). We will circulate drafts of these documents to you momentarily.**

Thank you.

Best,
Scott

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Wednesday, October 23, 2019 10:18 AM
**To:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** Re: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

David:

Thank you for the e-mail, and the additional clarification. Yes, it appears we've reached an agreement on many of the issues. We address the outstanding issues below.

Regarding the **notice dissemination issue** for the collective, we circled back with our client regarding the personal e-mail address. After additional scrutiny regarding the issue, Sprint confirmed that it can obtain personal emails from sprint.com/careers repository. We will agree to produce those e-mails to the Notice Administrator.

Regarding the **second issue**, as to whether notice will go to collective members who received notice of the *Oliphant* case, but did not opt in, it appears we have an understanding on this issue. Namely, the parties agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case, in that Plaintiff will exclude individual who have released all their FLSA claims, but will not agree to exclude individual who have only released a portion of their FLSA claim. The parties will still have to figure out the logistics of this, but it appears the Parties are in agreement about this issue otherwise.

Regarding the **class list**, we don't believe it's necessary for Sprint to produce a Rule 23 class list in light of the Parties' agreement to mediate this matter. Assuming Plaintiff does not pursue a litigation track, Sprint will agree to produce a sample set of punch and payroll data (along with total number of workweeks, and other seminal information), instead of producing records for the entire class.  The

parties will have to meet and confer to discuss scope, sampling percentage, and further handling of production when possible, but otherwise, this will likely alleviate the need to acquire the entire class list.

Regarding **informal discovery,** once the parties reach an agreement on the discovery items and scope, we believe Sprint will be able to compile, organize, and produce its end of the production by February of next year. This will provide Plaintiff over a month to review and analyze. Has Plaintiff reviewed Sprint's requested documents and information? What is the status on this, and when can we expect a production?

In light of the Parties' continued good faith meet and confer efforts, Defendant is amenable to stipulate to continue Plaintiff's motion to compel deadline. Additionally, in light of the set mediation date, Sprint is also amenable to filing a joint motion **acquire relief from all the other upcoming deadlines**.

Lastly, Sprint will agree to stipulate (via Joint Motion) to grant Plaintiff leave to **amend their complaint**.

Please let us know your thoughts regarding the above ASAP. Thanks you.

Sincerely,

Hovik

Sent from my iPhone. Please excuse typos and brevity.


On Oct 22, 2019, at 2:05 PM, David C. Leimbach <DLeimbach@schneiderwallace.com> wrote:


Hovik:

It appears as though the parties are closer in terms of stipulating to conditional certification.  But one critical item is non-negotiable for us: the manner of notice dissemination to the Collective.  If there are email addresses for the Collective, we will agree to mail and email notice, and forego text message notice.  If there are not sufficient email addresses for the Collective as you say, or for some reason Sprint will have difficulty obtaining this information, then notice must go out by mail and text message.  But we require either text or email notice.  If Sprint will not agree to one or the other, Plaintiff will move for conditional certification and ask this of the Court.

A second issue concerning the stipulation to conditional certification:

whether notice will go to collective members who received notice of the *Oliphant* case, but did not opt in.  Our position is these collective members should receive notice.  These individuals are not a party to any other proceeding and there is no reason why they should be denied the opportunity to participate in this case.

As for the class list, thank you for confirming the parties have reached an impasse on this issue.  Plaintiff will be using the procedures outlined in the Court's local rules and move to compel this information in the coming days.  However, Plaintiff proposes that, if the parties are able to come to an agreement relating to mediation discovery and conditional certification, the parties stipulate to continue the motion to compel deadline – in addition to all other deadlines – for all discovery requests other than those concerning the class list.  Otherwise, Plaintiff will need to immediately put all of Sprint's deficient discovery responses before the Court, under the current deadlines.

As you no doubt are aware, the deadline for the parties to come to an agreement on mediation discovery and conditional certification is tomorrow, October 23, 2019. If the parties to not reach an agreement by then, the Court may not continue rapidly-approaching case management deadlines, and Plaintiff will have no choice but to pursue this case on a litigation track, even if the parties ultimately pursue an early mediation.

David


<image.jpg>

**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
            (800) 689-0024
Toll Free:   (415) 421-7105
Facsimile:
www.schneiderwallace.com


**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Saturday, October 19, 2019 5:18 PM
**To:** David C. Leimbach <DLeimbach@schneiderwallace.com>; Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>

**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Dear Counsel:

Thank you for your e-mail, and for your patience. Below in red please find Sprint's position regarding the outstanding issues. Due to our collective unavailability, we were unable to respond yesterday. To the extent possible, we will respond in full regarding the remaining issues during the upcoming week.

### Documents and Data Produced in *Guilbaud*

- **Plaintiff's Position**: It has been a week.  The Court will not continue dates if we do not have an agreement by the 30th. We will not wait until the last minute to try and finalize informal production arrangements, as it will be too late to take necessary actions, such as moving to compel further discovery responses, and moving to amend the complaint – dates that will not be moved unless an agreement on informal discovery is reached. We expect a response by close of business tomorrow.

- **Defendant's Position:**
  - With all due respect, it took multiple months until we received our request for the documents produced in the *Guilbaud* matter. We were not the counsel of record in the *Guilbaud* case, so we are reliant on prior counsel to confirm the production. Regrettably, prior counsel had been difficult to reach due to Yom Kippur, and a recent medical procedure that has kept him out of the office.
  - We are doing our best to circle back as soon as possible (including multiple follow-ups with prior counsel), and are willing to work with Plaintiff's counsel to advise the Court of same – including stipulating to acquire relief, or an extension, from Plaintiff's outstanding motion to compel deadline. However, we cannot agree to the production of anything until we have heard from prior counsel and acquire approval from our client.
  - Has Plaintiff reviewed Sprint's informal request for documents and information? Does Plaintiff intend to produce Sprint's requested documents? The Court made very clear that both sides have to reach an agreement regarding the informal document production.

### Conditional Certification:

1. **Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns).**
   - **Plaintiff's Position**: It appears the parties are in agreement over this issue.
   - **Defendant's Position**: Yes, correct.

2. **To the extent contact information is produced, Sprint will only produce**

to the Notice Administrator.

- **Defendant's Original Position**: Plaintiff already agreed to this for non-California members of the proposed Collective.  The Parties disagree whether the Rule 23 Class List needs to be produced as a pre-condition for stipulating to conditional certification.  Again, Sprint has no qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.

- **Plaintiff's Response***:* The production of a Rule 23 Class list is not a pre-condition for stipulating to conditional certification; is it is pre-condition for a productive mediation.  One way or the other, we will need to receive the Rule 23 Class list, so we can conduct our investigation, before the mediation. If we are unable to obtain a class list and conduct our investigation prior to mediation, please be advised: during mediation, we will not entertain any arguments that the experiences of class and collective members were different from Plaintiff's.  Even outside of mediation, this is information we require to litigate the case. This information was requested through our formal discovery, and if we need to bring a motion to compel, we will. But considering it is black-letter law that Plaintiff is entitled to this class list, such an approach seems incredibly wasteful. We are willing to use a *Belaire* process. Please confirm if the parties have reached an impasse over this issue requiring the Court's involvement.

- **Defendant's Position**:
  - The Parties agree that the production of the Rule 23 Class List will not be a pre-condition for stipulating to condition certification. In that vein, Sprint will agree to produce to the Collective lists only to the Notice Administrator.
  - In light of the above agreement, the Parties should proceed regarding the stipulation to conditionally certify the collective, so that the matter is progressing forward.
  - Just please confirm that Plaintiff is agreeable with the following revisions to paragraph 8 of the Parties' Stipulation to Conditionally Certify the Collective: "Within fourteen (14) days of this Order, Defendant shall provide ~~Plaintiff and~~ the Notice Administrator with a computer-readable data file…"
  - Please also confirm the same revision for paragraph 1 of the [Proposed] Order.
  - After confirmation of the above, the Parties have reached an agreement regarding this issue.

3.   **Sprint will only provide full names, last known addresses, and social security numbers.**

- **Plaintiff's Position:** Plaintiff is amenable to a protective order. Collective lists will be produced to the Notice Administrator. Class lists must be produced directly to Plaintiff's counsel. <u>Please confirm if the parties have reached an impasse over this issue.</u>
- **Defendant's Positon:**
  - Again, the parties are attempting to reach an agreement regarding the conditional certification issue. The production of the Rule 23 class list should not be equivocated with the production of the Collective List to the Notice Administrator for purposes of proceeding the Stipulation to Conditionally Certify the Collective.
  - The Parties agree that the collective list should be subject to a protective order, and that the collective lists will be produced only to the Notice Administrator. However, as mentioned before, to the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.
  - <u>The Parties are in agreement regarding the collective list.</u>
  - <u>The Parties have not reached an agreement regarding the production of the Rule 23 class list</u>

d.   Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.

- **Plaintiff's Position:** We know this is incorrect.  Sprint's standard employment application, available on Sprint's main webpage, asks for this information. This is not a "non-issue;" it is non-negotiable from our end. Email addresses must be produced, and notice must go out via email.  In fact, in Oliphant, the Court's Report and Recommendation on 216b Certification provided for the production of e-mail addresses and Sprint did not object. <u>Please confirm whether the parties have reached an impasse over this issue.</u>
- **Defendant's Position:** We are circling back with our client to acquire confirmation regarding the personal e-mail addresses during the application process. Based on our understanding, Sprint does not keep track of employee's personal e-mail addresses. To the extent Sprint was ordered in Oliphant to produce e-mail addresses, there was no mention of producing personal e-mail addresses. Indeed, based on our understanding, Sprint did not produce personal any e-mail addresses in *Oliphant*.

e.   Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review

applicable federal and state guidelines for producing Customer Propriatory Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent.  Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

- **Plaintiff's Position:** The production of phone numbers is standard practice.  You are not producing "customer" "call records;" you are producing class and collective member contact information. The statutes you have cited are irrelevant. As you no doubt know, in California, the law is clear: class and collective contact information (including phone numbers) is discoverable, and any privacy concerns are addressed through a *belaire* process and/or protective order, both of which we have already agreed. Please confirm whether the parties have reached an impasse on this issue.

- **Defendant's Position:** Sprint was not ordered to produce telephone numbers in *Oliphant*. Same applies here. Regarding the statutes we cited, they apply to the Sprint's employees, as most Sprint employees have Sprint telephone plans and are customers for purposes of the CPNI. Sprint will not be producing telephone numbers of its employees without a Court Order. The Parties have reached an impasse on this issue.

4. **Only mailed notices will go out.**
   - **Plaintiff's Position:** See above. Notice via mail and email is required.  If Sprint agrees to notice by e-mail, we will not seek notice by text message.
   - **Defendant's Position:** Please see above. We will circle back regarding the e-mail issue as it relates to the production of the Collective List. If Sprint produces personal e-mails, which based on our understanding it does not have any to produce, then Defendant is amenable with Plaintiff not seeking notice by text message.

5. **Reminders will be sent by mail only.**
   - **Plaintiff's Position:** See discussion above.

- **Defendant's Position:** Same as above.

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**
   - **Plaintiff's Position:** We believe a 90-day period is proper. We are willing to consider a 75-day period if Sprint agrees to other conditions outlined in this email.
   - **Defendant's Position:** Please clarify what Plaintiff means by "other conditions outlined in this e-mail." We will discuss Plaintiff's suggestion for a 75-day opt-in period with our client. Otherwise, Sprint reasserts its position outlines below.

7. **The stipulation indicates: "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient." We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms. That must be done by the class member. Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**
   - **Plaintiff's Position:** I don't think there's any actual disagreement here. Plaintiff's counsel will not be re-writing deficient opt-in forms.
   - **Defendant's Position:** Thank you for confirming. In light of this agreement, please confirm that Plaintiff will agree to revise Paragraph 12 of the Joint Stipulation and Paragraph 5 of the [Proposed Order] so that it reads as follows: "To the extent needed, Plaintiff's counsel may ~~cure and~~ re-file any Opt In Consent Forms that were filed~~, and~~ later found to be deficient. Putative collective members are subject to a 30-day cure period after the subject opt-in is judged to be deficient. The subject opt-in will be solely responsible for curing and returning deficient opt-in forms."

   c. Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.
   - **Plaintiff's Position:** Plaintiff is agreeable to this.
   - **Defendant's Position:** Same with Defendant. Please see discussion above.

8. **Only the Notice Administrator may put notice on their website.**
   - **Plaintiff's Position:** Plaintiff's counsel has agreed to not put notice on their websites if the parties can come to a global agreement on conditional certification. Plaintiff has not, and does not, make an unqualified agreement to refrain from posting notice on our websites.
   - **Defendant's Position:** Based on Defendant's understanding, if the Parties reach an agreement on conditional certification, Plaintiff will refrain from putting notice on its website. The Parties are still in agreement on this issue. Plaintiff's qualifications above are

understood.

9.   **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.**  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.

- **Plaintiff's Position:** Under this example, we agree.
- **Defendant's Position:** Thank you. The parties are in agreement on this point.

10.   **In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.**

- **Plaintiff's Position:** We do not agree with this.  Because individuals who actually opted in to Oliphant will not receive notice, we see no reason for collective member confusion, nor do we perceive any prejudice to Sprint. If you have authority suggesting these individuals should not receive notice, we will reconsider your argument.
- **Defendant's Position:** Defendant will research this issue further, and circle back. Please see discussion below.

11.  To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.

- **Plaintiff's Position**: To the extent the release resembles your Drouillard example, we agree.  Those individuals do not have any FLSA claims.  But individuals who may have only released a portion of their FLSA claims should receive notice.
- **Defendant's Position:** Understood. Defendant will research this issue further, and circle back.
- **Plaintiff's Second Position:** How do you propose to address this issue, logistically? For example, looking to class or collective action settlement agreements and settlement approval orders, we can identify the scope of the relevant release, verify those individuals who should not receive notice, and structure stipulation language accordingly.  Do you also intend to send us all relevant individual settlement agreements? Because Plaintiff will not agree that Defendant can unilaterally decide who has released all their claims

without providing Plaintiff any ability to verify, and then prevent those individuals from receiving notice. Additionally, please advise how many potential employees at issue that sprint contends may have released their claims so we can get a sense of the scope of individuals at issue.

- **Defendant's Second Position:** Defendant will circle back on this issue.

12. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint*.

- **Plaintiff's Position***:* See above – only for individuals who have opted into Oliphant.
- **Defendant's Position:** Understood. Thank you. Same as above. Defendant will circle back on this issue.

b.   Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case.  Is that correct?

- **Plaintiff's Position***:* (1) is correct; (2) is partially correct. We will agree to exclude individuals who have released all their FLSA claims as part of a class/collective settlement.  We do not agree to exclude individuals who may have only released a portion of their FLSA claims as part of a class/collective settlement.
- **Defendant's Position:** Understood. Thank you.

**Stipulated Protective Order**

a.   **Plaintiff's Position:** Please send us a draft of the Stipulated protective order, using the SD Cal.'s Model. We will review once sent.

b.   **Defendant's Position**: We sent a prior version, which was rejected. We agree to use the SD Cal Protective Order as is.

**[Proposed] Amended Complaint:**

a.   **Plaintiff's Position:** It has been a week.  We expect a responses by close of business tomorrow.  Otherwise, we will plan on moving to amend the complaint.

b.   **Defendant's Position:** We will respond during the upcoming week.  We anticipate stipulating to grant leave.

Sincerely,

Hovik

Hovannes "Hovik" Nalbandyan
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com

<image007.png>

Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Sent:** Thursday, October 17, 2019 3:54 PM
**To:** Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; Carolyn H. Cottrell
<ccottrell@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz
<mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T.
<EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to
Compel

Dear Counsel:

Our responses to your most recent email regarding conditional certification is as
follows, in ***bold italics***:

    **(1)  Documents and Data Produced in *Guilbaud***

We have reached out to Sprint's prior counsel in the *Guilbaud* matter to confirm
the full extent of Sprint's formal/informal discovery production. Prior counsel
will review Plaintiff's list and confirm its accuracy. We expect a response by next
week. Once confirmed, we believe an agreement to produce same will likely
remediate many of the issues below.

       -  ***It has been a week.  The Court will not continue dates if we do not have
an agreement by the 30th. We will not wait until the last minute to try
and finalize informal production arrangements, as it will be too late to
take necessary actions, such as moving to compel further discovery
responses, and moving to amend the complaint – dates that will not be
moved unless an agreement on informal discovery is reached. We expect
a response by close of business tomorrow.***

    **(2)  Conditional Certification:**

Please find Sprint's revised positions below. Sprint remains amenable to
stipulating to conditional certification, even if the Parties are not at full agreement
regarding the issues below. If the Parties are at an impasse, Sprint is amenable
returning back to the Court for resolution.

    1.  **Any and all contact information must be subject to a stipulated protective**

order (due to the obvious privacy concerns).

    a.   We are fine with the SD Cal Model Protective Order.

         i.   ***It appears the parties are in agreement over this issue.***

2.   **To the extent contact information is produced, Sprint will only produce to the Notice Administrator.**

    a.   Plaintiff already agreed to this for non-California members of the proposed Collective.  The Parties disagree whether the Rule 23 Class List needs to be produced as a pre-condition for stipulating to conditional certification.  Again, Sprint has no qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.

         i.   ***The production of a Rule 23 Class list is not a pre-condition for stipulating to conditional certification; is it is pre-condition for a productive mediation. One way or the other, we will need to receive the Rule 23 Class list, so we can conduct our investigation, before the mediation. If we are unable to obtain a class list and conduct our investigation prior to mediation, please be advised: during mediation, we will not entertain any arguments that the experiences of class and collective members were different from Plaintiff's.  Even outside of mediation, this is information we require to litigate the case. This information was requested through our formal discovery, and if we need to bring a motion to compel, we will. But considering it is black-letter law that Plaintiff is entitled to this class list, such an approach seems incredibly wasteful. We are willing to use a Beliare process. <u>Please confirm if the parties have reached an impasse over this issue requiring the Court's involvement.</u>***

3.   **Sprint will only provide full names, last known addresses, and social security numbers.**

    a.   Sprint will agree to include jobs titles.

    b.   The rest will depend on whether the information is produced directly to the Notice Administrator or Plaintiff's counsel, and the Parties entering into a stipulated protective order (which the Notice Administrator would also be subject to).

         i.   ***Plaintiff is amenable to a protective order. Collective lists will be produced to the Notice Administrator.  Class lists must be produced directly to Plaintiff's counsel. <u>Please confirm if the parties have reached an impasse over this issue.</u>***

    c.   To the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.

    d.  Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.

        i.  ***We know this is incorrect.  Sprint's standard employment application, available on Sprint's main webpage, asks for this information. This is not a "non-issue;" it is non-negotiable from our end. Email addresses must be produced, and notice must go out via email.  In fact, in Oliphant, the Court's Report and Recommendation on 216b Certification provided for the production of e-mail addresses and Sprint did not object. <u>Please confirm whether the parties have reached an impasse over this issue.</u>***

    e.  Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review applicable federal and state guidelines for producing Customer Proprietary Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent.  Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

        i.  ***The production of phone numbers is standard practice.  You are not producing "customer" "call records;" you are producing class and collective member contact information. The statutes you have cited are irrelevant. As you no doubt know, in California, the law is clear: class and collective contact information (including phone numbers) is discoverable, and any privacy concerns are addressed through a belaire process and/or protective order, both of which we have already agreed. <u>Please confirm whether the parties have reached an impasse on this issue.</u>***

4. **Only mailed notices will go out.**

    a.  Please see above. In light of same, we believe Plaintiff's position regarding notice by e-mail and text is likely moot.

        i.  ***See above. Notice via mail and email is required.  If Sprint agrees to notice by e-mail, we will not seek notice by text message.***

5. **Reminders will be sent by mail only.**

    a.   Same as Item # 4. See discussion above.

        i.   ***See discussion above.***

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**

    a.   As a compromise, Plaintiff agreed to a 90-day opt-in period. However, we do not have authority for a 90-day opt-in period. If Plaintiff is amenable to 60-days, we believe Sprint will agree to same. If not, Sprint maintains its position that a 30-day opt-in period is appropriate.

        i.   ***We believe a 90-day period is proper. We are willing to consider a 75-day period if Sprint agrees to other conditions outlined in this email.***

7. **The stipulation indicates: "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient." We cannot agree to Plaintiff's counsel curing and re-filing deficient opt-in consent forms. That must be done by the class member. Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**

    a.   The issue is <u>not</u> who is responsible of *filing* the opt-in; the issue is who is responsible for *curing* the opt-in forms.

    b.   For the individual opt-ins, it's our understanding that the opt-in Plaintiffs are supposed to work with the claims administrator, and are responsible for fixing any defects with their opt-in forms. We take issue with Plaintiff's counsel fixing defective forms, instead of having them handled by the opt-in plaintiffs (*See, e.g., Van Kempen v. Matheson Tri-Gas, Inc.,* 2016 U.S. Dist. LEXIS 100537 (court discussed deficiency of the actual Opt-In Form; the parties may correct deficiencies by directing FLSA putative class members to send an opt-in form back to the settlement administrator ***and then*** filing them with the Court); *Casas v. Pac. Bell Tel. Co.,* 2014 Cal. Super. LEXIS 10127 (provides an outline of the schedule and indicates that deficient forms should be sent to settlement administrator directly.)

        i.   ***I don't think there's any actual disagreement here. Plaintiff's counsel will not be re-writing deficient opt-in forms.***

    c.   Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.

        i.   ***Plaintiff is agreeable to this.***

8. **Only the Notice Administrator may put notice on their website.**

    a.   This is no longer an issue. Plaintiff's counsel agreed not to put notice on their websites, and that only the Notice Administrator may put the notice on its website.

        i.   ***Plaintiff's counsel has agreed to not put notice on their websites if the parties can come to a global agreement on conditional certification. Plaintiff has not, and does not, make an unqualified agreement to refrain from posting notice on our websites.***

9.  **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.**  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.

     a.  ***Under this example, we agree.***

10. In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.

     a.  ***We do not agree with this.  Because individuals who actually opted in to Oliphant will not receive notice, we see no reason for collective member confusion, nor do we perceive any prejudice to Sprint. If you have authority suggesting these individuals should not receive notice, we will reconsider your argument.***

11. To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.

     a.  ***To the extent the release resembles your Drouillard example, we agree.  Those individuals do not have any FLSA claims.  But individuals who may have only released a portion of their FLSA claims should receive notice.***

     b.  ***How do you propose to address this issue, logistically? For example, looking to class or collective action settlement agreements and settlement approval orders, we can identify the scope of the relevant release, verify those individuals who should not receive notice, and structure stipulation language accordingly.  Do you also intend to send us all relevant individual settlement agreements? Because Plaintiff will not agree that Defendant can unilaterally decide who has released all their claims without providing Plaintiff any ability to verify, and then prevent those individuals from receiving notice. Additionally, please advise how many potential employees at issue that sprint contends may have released their claims so we can get a sense of the scope of individuals at issue.***

12. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*

     a.  ***See above – only for individuals who have opted into Oliphant.***

     b.  Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of

class/collective action settlements that are the same as those pled in
the Amaraut case.  Is that correct?

> i.  **(1) is correct; (2) is partially correct.
> We will agree to exclude individuals who have released _all_
> their FLSA claims as part of a class/collective settlement.  We
> do not agree to exclude individuals who may have only
> released a portion of their FLSA claims as part of a
> class/collective settlement.**

**(3)  Stipulated Protective Order**

Kindly confirm that Sprint has authority to affix Plaintiff's electronic signature
and file the SD Cal Model Protective Order.

> - **Please send us a draft of the Stipulated protective order, using the SD Cal.'s
> Model.  We will review once sent.**

**(4)  [Proposed] Amended Complaint:**

We are still working through the proposed amended complaint, and anticipate
having a response shortly.

> - **It has been a week.  We expect a responses by close of business
> tomorrow.  Otherwise, we will plan on moving to amend the complaint.**

David

<image002.jpg>

**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
        (800) 689-0024
Toll Free:   (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Thursday, October 10, 2019 6:54 PM
**To:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach
<DLeimbach@schneiderwallace.com>; Scott L. Gordon
<sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz
<mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T.
<EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to
Compel

Dear Counsel:

Thank you for your patience. Below please find Sprint's position regarding the outstanding issues.

**(1)  Documents and Data Produced in _Guilbaud_**

We have reached out to Sprint's prior counsel in the _Guilbaud_ matter to confirm the full extent of Sprint's formal/informal discovery production. Prior counsel will review Plaintiff's list and confirm its accuracy. We expect a response by next week. Once confirmed, we believe an agreement to produce same will likely remediate many of the issues below.

**(2)  Conditional Certification:**

Please find Sprint's revised positions below. Sprint remains amenable to stipulating to conditional certification, even if the Parties are not at full agreement regarding the issues below. If the Parties are at an impasse, Sprint is amenable returning back to the Court for resolution.

1. **Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns).**
   a. We are fine with the SD Cal Model Protective Order.
2. **To the extent contact information is produced, Sprint will only produce to the Notice Administrator.**
   a. Plaintiff already agreed to this for non-California members of the proposed Collective.  The Parties disagree whether the Rule 23 Class List needs to be produced as a pre-condition for stipulating to conditional certification.  Again, Sprint has no qualms producing directly to the Notice Administrator, to the extent needed for the FLSA conditional certification.
3. **Sprint will only provide full names, last known addresses, and social security numbers.**
   a. Sprint will agree to include jobs titles.
   b. The rest will depend on whether the information is produced directly to the Notice Administrator or Plaintiff's counsel, and the Parties entering into a stipulated protective order (which the Notice Administrator would also be subject to).
   c. To the extent SSNs numbers are produced to the Notice Administrator, they would be limited to the last four digits (to confirm accuracy of contact information). Unless ordered otherwise by the Court, the SSNs will not be provided to Plaintiff's counsel in any context.
   d. Sprint does not ask for or have personal e-mail addresses. Accordingly, this is a non-issue.
   e. Sprint will not produce personal phone numbers without a court order. Sprint has strict limitation on producing employee and customer cell phone numbers as a telecommunications provider. Please review applicable federal and state guidelines for producing Customer

Proprietary Network Information (CPNI). For instance, in California, Cal PUC 2891 requires consent of the subscriber to release subscriber information and call records.  Obviously, in collective or class action suits that is logistically very difficult, as Sprint wouldn't know who to contact to get consent.  Sprint will release when the court has ordered Sprint to send requests for consent to affected subscribers, **at requesting counsel's cost.** Pennsylvania also requires consent to obtain subscriber records and other information per 18 Pa C.S.A. 5742. However, there is a court order process laid out in that statute that a party can use to obtain that information. Delaware has the strictest protection where a carrier cannot release subscriber records and there is no process through court order laid out.  Sprint does release on consent of the subscriber in Delaware.

4. **Only mailed notices will go out.**
   a.  Please see above. In light of same, we believe Plaintiff's position regarding notice by e-mail and text is likely moot.

5. **Reminders will be sent by mail only.**
   a.  Same as Item # 4. See discussion above.

6. **An opt-in period of 30 days, instead of 120 days (this is excessive).**
   a.  As a compromise, Plaintiff agreed to a 90-day opt-in period.  However, we do not have authority for a 90-day opt-in period. If Plaintiff is amenable to 60-days, we believe Sprint will agree to same. If not, Sprint maintains its position that a 30-day opt-in period is appropriate.

7. **The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms.  That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.**
   a.  The issue is <u>not</u> who is responsible of *filing* the opt-in; the issue is who is responsible for *curing* the opt-in forms.
   b.  For the individual opt-ins, it's our understanding that the opt-in Plaintiffs are supposed to work with the claims administrator, and are responsible for fixing any defects with their opt-in forms.  We take issue with Plaintiff's counsel fixing defective forms, instead of having them handled by the opt-in plaintiffs (*See, e.g., Van Kempen v. Matheson Tri-Gas, Inc.,* 2016 U.S. Dist. LEXIS 100537 (court discussed deficiency of the actual Opt-In Form; the parties may correct deficiencies by directing FLSA putative class members to send an opt-in form back to the settlement administrator ***and then*** filing them with the Court); *Casas v. Pac. Bell Tel. Co.,* 2014 Cal. Super. LEXIS 10127 (provides an outline of the schedule and indicates that deficient forms should be sent to settlement administrator directly.)
   c.  Sprint is amenable with a cure period of 30 days after subject opt-in judged to be deficient.

8. **Only the Notice Administrator may put notice on their website.**
    a.   This is no longer an issue. Plaintiff's counsel agreed not to put notice on their websites, and that only the Notice Administrator may put the notice on its website.

9. **Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.**  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.   In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.  To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*
    a.   Our understanding from your last email is that you will agree that opt in forms will not have to be sent to those individuals who (1) have opted in other actions encompassing the same claims and time period as in the Amaraut case; and/or (2) have released claims as part of class/collective action settlements that are the same as those pled in the Amaraut case.  Is that correct?

**(3)  Stipulated Protective Order**
Kindly confirm that Sprint has authority to affix Plaintiff's electronic signature and file the SD Cal Model Protective Order.

**(4)  [Proposed] Amended Complaint:**
We are still working through the proposed amended complaint, and anticipate having a response shortly.

Thank you.

Sincerely,

Hovik
**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com

Labor & Employment Law Solutions | Local Everywhere

633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>
**Sent:** Tuesday, October 1, 2019 9:12 AM
**To:** Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel,

Please respond to my email below.

Thanks
Carolyn

<image008.jpg>

**Carolyn Hunt Cottrell**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
           (800) 689-0024
Toll Free:  (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Carolyn H. Cottrell
**Sent:** Tuesday, September 24, 2019 12:40 PM
**To:** Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel:

Unfortunately, the majority of those conditions will not work for us. We are willing to compromise on some of these issues, provided it puts the matter to rest. But for the majority of these issues, Plaintiff's position is firm.  Please let us know if the parties have reach an impasse, since expedient resolution of conditional certification and the notice phase is essential to a productive mediation.

Plaintiff's responses appear in red.  And to reiterate, Plaintiff's concessions on a given issue are not made generally, but only to the extent the parties' stipulate to conditional certification.

**(1)  <u>Condition Certification:</u>**

Sprint is amenable to stipulating to conditional certification on the following conditions:

1.  Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns). See discussion below.
    a.  We are fine with a protective order.  We will review the one circulated and get back to you as soon as possible.
2.  To the extent contact information is produced, Sprint will only produce to the Notice Administrator.
    a.  Plaintiff will agree to this for non-California members of the proposed Collective.  But for members of the proposed California Class, Plaintiff's counsel expects to receive the entire class list.  As a matter of law, Plaintiff is entitled to this information.
3.  Sprint will only provide full names, last known addresses, and social security numbers.
    a.  Personal phone numbers, personal email addresses, and job titles must be provided too.
4.  Only mailed notices will go out.
    a.  Email and text notice must also go out. These electronic notices will feature a link to the notice administrator's webpage, which will allow Collective members to complete opt-in forms electronically.
5.  Reminders will be sent by mail only.
    a.  Reminders will be sent by email and text as well.
6.  An opt-in period of 30 days, instead of 120 days (this is excessive).
    a.  As a compromise, we will agree to a 90-day opt-in period.
7.  The stipulation indicates:  "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient."  We cannot agree to Plaintiff's counsel curing and re-fling deficient opt-in consent forms. That must be done by the class member.  Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.
    a.  Collective members do not personally file their opt-ins – Plaintiff's counsel handles that task.  We're not sure what the issue is here.  Plaintiff will agree to limit the cure period to 30 days after subject opt-in is judged to be deficient.
8.  Only the Notice Administrator may put notice on their website.

    a.  Plaintiff's counsel will agree not to put "notice" on their websites, and that only the Notice Administrator may put the notice on its website.

9.  Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16.  In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective.  This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases.  In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active.   Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.

    a.  To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*

        i.  If a Collective Member has <u>no</u> potential claims, i.e., all work experience falls within the scope of a settlement (individual or class), we are fine with notice not going to that person.  But we have not received any information indicating that would apply to any Collective member.  While Collective members may have released older claims in other proceedings, the release would not apply to claims that have accrued since then, and notice must still go to these Collective members.

        1.  We cannot agree that Sprint will have unilateral discretion to decide who has "released" their claims in deciding the scope of individuals to receive notice.  If there are Collective members who have executed individual settlement agreements, for example, that Sprint contends extinguishes all claims at issue in this case, we will need a list of names, as well as the date of the settlement, the settlement agreement, and the time period in which the individual worked for Sprint.  The same requirements attach to prior class or collective settlements Sprint believes extinguishes <u>all</u> claims during the relevant time period.

        ii.  The following approach is problematic: "employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective."  If certain Collective members will not receive notice, we need to know all the cases where Sprint believes their entire claims are foreclosed, and the applicable time frames. While we understand there may be some settlements that foreclose a portion of a Collective member's claims, we are not aware of any case that would have fully extinguished the claims of a Collective member during the time frame at issue in this case.

        1.  The example you gave is something with which we

could work: "*Drouillard* class members whose employment ended during the settlement period." The would seem an example of a proposed Collective member who would not have any claims left.

    iii.   We do not agree that notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action.  We will agree that notices will not be sent to Collective members who have opted in to *Oliphant.*

    iv.   For these reasons, the proposed add-on language does not work for us: "opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions.  In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in *Oliphant v. Sprint.*"

    1.   For one, if the Collective member is "current," any prior release necessarily does not extinguish all claims at issue in this case.

    2.   For former Collective members, the language will need to read as follows: "opt-in notices shall not be sent to any former non-exempt employees who worked in retail who have released <u>all</u> claims that are asserted in the *Amaraut* action, during the time period at issue, whether such claims have been released through individual settlements or through settled class and/or collective actions."

    a.   While this language will work as far as the Stipulation is concerned, we will nevertheless need verification that a Collective member is properly excluded on this basis before they are prevented from receiving notice of this case. If there is a disagreement as to whether that individual released <u>all</u> claims at issue, the individual will need to be included, and Sprint can challenge that individuals ability to participate when and if the need arises.

    v.   By in large, we do not believe these other cases should meaningfully impact notice dissemination.  Rather, to the extent Collective members released *some* of their claims, that would impact the parties' discussions concerning damages and settlement.  But any individual with a live claim – even if a portion of their claims are foreclosed by settlement – should receive notice and be included in the certified Collective.

**(2)  <u>Stipulated Protective Order</u>**

In conjunction with our discovery responses, we provided a draft stipulated protective order. Kindly review and confirm we have authority to affix your firm's signature for filing. We have attached it here again for your convenience. We will review and get back to you this week.

**(3)  Mark Rudy's Available Dates:**

Mark Rudy has the following dates available, which also work for our client:
**March 3, 5, 10, 24, 26, 30.**
 We will get back to you this week.

**(4)  Meet and Confer Re Discovery:**

We stipulated to continue the MTC deadline until after the mediation, produced documents, and agreed to informal discovery prior to mediation to ensure a meaningful mediation.
Could you please provide additional clarification on the scope of the meet and confer, so we may appropriately prepare for it? Does Plaintiff intend to confer regarding the scope of informal discovery?
This meet and confer will largely concern formal discovery, not informal discovery.  If the parties are unable to stipulate to conditional certification, Plaintiff must proceed on two tracks: formal litigation, and early settlement discussions.  This is particularly true considering that Sprint will not be available to mediate until March at the earliest.

Plaintiff has not pursued appropriate responses to his written discovery served three months ago so the parties could focus on a potential early resolution.  But taking no action on formal discovery from June of 2019 to March or April of 2020 is not something we can do, particularly when formal litigation may need to take place regarding conditional certification.  We do not believe the Court would look kindly on a request to modify case management dates (which, presumably, will be accomplished by way of a joint motion), when no progress has been made in discovery or on the case generally in nearly a year.

**(5)  [Proposed] Amended Complaint:**

We will be in touch regarding same soon.
When can we expect a response?

Carolyn


<image009.jpg>

**Carolyn Hunt Cottrell**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
               (800) 689-0024
Toll Free:   (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Friday, September 20, 2019 6:24 PM
**To:** David C. Leimbach <DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz

<gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Patajo, Emily T. <EPatajo@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Counsel:

Thank you for your patience. Our thoughts regarding the outstanding issues are as follows:

**(1)** **Condition Certification:**

Sprint is amenable to stipulating to conditional certification on the following conditions:

1. Any and all contact information must be subject to a stipulated protective order (due to the obvious privacy concerns). See discussion below.
2. To the extent contact information is produced, Sprint will only produce to the Notice Administrator.
3. Sprint will only provide full names, last known addresses, and social security numbers.
4. Only mailed notices will go out.
5. Reminders will be sent by mail only.
6. An opt-in period of 30 days, instead of 120 days (this is excessive).
7. The stipulation indicates: "Plaintiff's counsel may cure and re-file any Opt-In Consent Forms that were filed and later found to be deficient." We cannot agree to Plaintiff's counsel curing and re-filing deficient opt-in consent forms. That must be done by the class member. Also, there must be a time limit imposed to cure timely but deficient opt-in consent forms. We recommend a 15-day curing period.
8. Only the Notice Administrator may put notice on their website.
9. Lastly, the collective is broadly defined as anyone who worked for Sprint in retail since 2/28/16. In our view, employees subject to wage and hour settlements in other jurisdictions have released their claims and therefore should not be part of the collective. This would include, for example, the *Drouillard* class members whose employment ended during the settlement period and those plaintiffs with whom we have entered individual settlements which contain wage and hour releases. In addition, notices should not be sent to employees who have been sent opt in notices in the *Oliphant* collective action, which is presently active. Multiple opt-in notices sent to the same set of individuals will cause confusion and is prejudicial to Sprint.
   a. To remedy this issue, Sprint will add a term that says opt-in notices shall not be sent to any current or former non-exempt employees who worked in retail who have released claims that are asserted in the *Amaraut* action, whether such claims have been released through individual settlements or through settled class and/or collective actions. In addition, opt-in notices shall not be sent to any current or former non-exempt employees who have been sent opt-in notices in

*Oliphant v. Sprint.*

**(2)  Stipulated Protective Order**

In conjunction with our discovery responses, we provided a draft stipulated protective order. Kindly review and confirm we have authority to affix your firm's signature for filing. We have attached it here again for your convenience.

**(3)  Mark Rudy's Available Dates:**

Mark Rudy has the following dates available, which also work for our client: **March 3, 5, 10, 24, 26, 30.**

**(4)  Meet and Confer Re Discovery:**

We stipulated to continue the MTC deadline until after the mediation, produced documents, and agreed to informal discovery prior to mediation to ensure a meaningful mediation.

Could you please provide additional clarification on the scope of the meet and confer, so we may appropriately prepare for it? Does Plaintiff intend to confer regarding the scope of informal discovery?

**(5)  [Proposed] Amended Complaint:**

We will be in touch regarding same soon.

After your team has had a chance to review the above, kindly provide us your thoughts. Thank you.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com

<image007.png>

Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Sent:** Thursday, September 19, 2019 3:07 PM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens

<tgivens@shavitzlaw.com>; Nalbandyan, Hovannes "Hovik"
<HNalbandyan@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to
Compel

Counsel:

We need to hear back from you regarding the stipulation for conditional certification by
close of business tomorrow.  This process has been delayed for some time now, the
claims of collective members continue to expire, and if we cannot get this resolved in
the next couple days, we intend to move for conditional certification towards the end
of next week.

We also need to schedule a call next week to meet and confer over Defendant's
discovery responses.  What is your availability?

David


<image002.jpg>

**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
         (800) 689-0024
Toll Free:   (415) 421-7105
Facsimile:
www.schneiderwallace.com


**From:** Patajo, Emily T. [mailto:EPatajo@littler.com]
**Sent:** Thursday, September 19, 2019 2:13 PM
**To:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach
<DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>;
Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>;
Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to
Compel

Hi Scott,

The revisions are acceptable to me.  Mark Rudy has given us dates in January, February
and March.  Because I have trial in February, I cannot book mediation in January or
February.  I'm running the March dates by my client and will then circulate the dates

that work on our end.

Regards,
Emily

---

**From:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Sent:** Thursday, September 19, 2019 12:57 PM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

# [EXTERNAL E-MAIL]

Dear Emily,

Thank you for your approval of the joint motion to continue the motion to compel deadline. I have revised it slightly because of the reassignment to the new magistrate judge (Judge Allison H. Goddard has a 45-day deadline for raising discovery disputes). The minor tweaks are visible in the attached redlines. Please let us know if you approve.

Also, do you have any updates on Mark Rudy's dates? We have to get something booked.

Thank you for your time.

Best,
Scott

---

**From:** Patajo, Emily T. [mailto:EPatajo@littler.com]
**Sent:** Tuesday, September 17, 2019 9:33 AM
**To:** Scott L. Gordon <sgordon@schneiderwallace.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

Scott,

We don't have any changes to the joint motion to continue the deadline for motions to compel.  We will get back to you separately about the stip for condition cert and Mark Rudy's dates, which we just received.

Emily

**From:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Sent:** Thursday, September 5, 2019 1:28 AM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Subject:** Amaraut v. Sprint - Joint Motion to Continue Deadline for Motion to Compel

**[EXTERNAL E-MAIL]**

Counsel,

Pursuant to the Court's standing order, there is a 30-day deadline to file motions to compel. Given that Defendant's document production was limited to Plaintiff, and did not encompass any class or collective members, we obviously have some issues with Defendant's responses and production. We also note that the production contains duplicate documents, e.g.  SPRINT0000814-851 and SPRINT0000886-923 (there are many other issues over which the parties must meet and confer; these are just by way of an example).

Under the 30-day timeline, we are required to circulate a draft of the joint motion re discovery dispute, with a filing deadline of September 18 (this deadline assumes the three-day rule applies for service of the responses by mail). Pursuant to Judge Dembin's Chamber Rules at Section IV.C, Judge Dembin expects the parties to file a joint motion to seek relief from this requirement. Attached you will find a draft of a joint motion to this effect. Please let me know whether I have your agreement to file this today (Thursday). Thank you.

Best,
Scott

<image010.png>

<image011.png>

Scott L. Gordon
Attorney at Law

2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:  (415) 421-7100

Direct:        (510) 740-2922
Toll Free:    (800) 689-0024
Facsimile:   (415) 421-7105

www.schneiderwallace.com

--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.


--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.


--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.


--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

--------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

--------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

# EXHIBIT "3"

Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

[*Additional Counsel Listed on Next Page*]

Attorneys for Plaintiff and the Putative
Collective and Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR AMARAUT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Sprint/United Management Company,<br><br>Defendant. | Case No. 3:19-cv-00411-WQH-AHG<br><br>**JOINT MEDIATION PLAN**<br><br>Judge: Hon. William Q. Hayes<br>Magistrate Judge: Hon. Allison H. Goddard<br><br>Date action filed: February 28, 2019 |

1

Gregg I. Shavitz (*pro hac vice*)

2

Michael Palitz (*pro hac vice*)
Tamra C. Givens (*pro hac vice*)

3

SHAVITZ LAW GROUP, P.A.

4

951 Yamato Road, Suite 285
Boca Raton, Florida 33431

5

Telephone: (800) 616-4000

6

Facsimile: (561) 447-8831
gshavitz@shavitzlaw.com

7

tgivens@shavitzlaw.com

8

mpalitz@shavitzlaw.com

9

Attorneys for Plaintiff and the Putative

10

Collective and Class

11

12

EMILY T. PATAJO, Bar No. 250212
epatajo@littler.com

13

**LITTLER MENDELSON, P.C.**

14

2049 Century Park East, 5th Floor
Los Angeles, California  90067.3107

15

Telephone: 310.553.0308
Facsimile:  310.553.5583

16

17

HOVANNES G. NALBANDYAN, Bar No. 300364
hnalbandyan@littler.com

18

**LITTLER MENDELSON, P.C.**

19

633 West 5th Street, 63rd Floor
Los Angeles, CA  90071

20

Telephone: 213.443.4300

21

22

Attorneys for Defendant
SPRINT/UNITED MANAGEMENT COMPANY

23

24

25

26

27

28

Plaintiff Vladimir Amaraut, on behalf of himself and all others similarly situated ("Plaintiff"), and Defendant Sprint/United Management Company ("Defendant"), jointly submit the following Joint Mediation Plan for the Court's consideration. The Parties have agreed to attend an early mediation in this wage and hour action under federal and state law, and have agreed on the mediator and a firm date for the mediation.

The Parties agree to mediate the case with Mark Rudy, a respected and experienced mediator of wage and hour class and collective actions. The Parties have secured a mediation date of March 24, 2020 with Mr. Rudy's office.

The Parties have agreed that mediation discovery will be produced, at the latest, by February 2020. The Parties will further refine this date through additional meet and confer efforts.

The Parties agree that Defendant will produce time punch and payroll data for FLSA Opt-In Plaintiffs and any Rule 23 classes that Plaintiff(s) assert in this action, but have not yet agreed as to scope of the production and whether a sampling will be provided as to the production of these records. The Parties will continue to meet and confer on this issue.

The Parties agree that Defendant will provide summary data for the Opt-In Plaintiffs and Rule 23 classes, including, for example and without limitation, the number of class members and the total number of workweeks. The Parties will continue to meet and confer regarding the extent of the summary data that will be produced.

The Parties are unable to agree at this time as to whether Defendant must provide a class list (i.e., name and last-known contact information) for the Rule 23 classes asserted in this action, as well as additional policy and training documents beyond those produced by Defendant in its formal discovery responses. Plaintiff reserves the right to seek these documents and information via formal discovery

requests (and indeed has requested class list information for the putative California class, and policy and training documents, in his formal discovery requests) and to move to compel such documents and information.

Respectfully submitted,

Date: October 23, 2019

/s/ *Scott L. Gordon*
Carolyn H. Cottrell
David C. Leimbach
Scott L. Gordon
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

Gregg I. Shavitz (*pro hac vice*)
Michael Palitz (*pro hac vice*)
Tamra C. Givens (*pro hac vice*)
SHAVITZ LAW GROUP, P.A.

Attorneys for Plaintiff and the Putative Collective and Class

Date: October 23, 2019

/s/ *Hovannes G. Nalbandyan*
Emily T. Patajo
Hovannes G. Nalbandyan
LITTLER MENDELSON, P.C.

Attorneys for Defendant

1

**SIGNATURE ATTESTATION**

2

I hereby attest that all signatories listed above, on whose behalf this joint

3

motion is submitted, concur in the filing's content and have authorized the filing.

4

Dated: October 23, 2019                    /s/ *Scott L. Gordon*

5

Scott L. Gordon

6

7

**CERTIFICATE OF SERVICE**

8

I hereby certify that I electronically served the foregoing document via email

9

on all case participants on October 23, 2019.

10

Dated: October 23, 2019                    /s/ *Scott L. Gordon*

11

Scott L. Gordon

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "4"

1  Carolyn H. Cottrell (SBN 166977)
   David C. Leimbach (SBN 265409)
2  Scott L. Gordon (SBN 319872)
   **SCHNEIDER WALLACE**
3  **COTTRELL KONECKY**
   **WOTKYNS LLP**
4  2000 Powell Street, Suite 1400
   Emeryville, California 94608
5  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
6  ccottrell@schneiderwallace.com
   dleimbach@schneiderwallace.com
7  sgordon@schneiderwallace.com

8  [*Additional Counsel Listed on Next Page*]

9  Attorneys for Plaintiffs and the Putative
   Collective and Classes
10

11

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14

15  VLADIMIR AMARAUT, et al., on         Case No. 3:19-cv-00411-WQH-AHG
16  behalf of themselves and all others
    similarly situated,                   **MEMORANDUM OF POINTS AND**
17                                         **AUTHORITIES IN SUPPORT OF**
            Plaintiffs,                    **JOINT MOTION TO CONTINUE**
18                                         **CASE MANAGEMENT DATES**
        v.
19                                         __Judge__: Hon. William Q. Hayes
    SPRINT/UNITED MANAGEMENT             __Magistrate Judge__: Hon. Allison H.
20  COMPANY.                                 Goddard
21          Defendant.
                                          Date Action Filed: February 28, 2019
22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO CONTINUE CASE
MANAGEMENT DATES
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-AHG

1

2 Gregg I. Shavitz (*pro hac vice*)

3 Michael Palitz (*pro hac vice*)
Tamra C. Givens (*pro hac vice*)

4 **SHAVITZ LAW GROUP, P.A.**

5 951 Yamato Road, Suite 285
Boca Raton, Florida 33431

6 Telephone: (800) 616-4000

7 Facsimile: (561) 447-8831
gshavitz@shavitzlaw.com

8 tgivens@shavitzlaw.com

9 mpalitz@shavitzlaw.com

10 Attorneys for Plaintiffs and the Putative
Collective and Classes

11

12
EMILY T. PATAJO, Bar No. 250212
13 epatajo@littler.com

14 **LITTLER MENDELSON, P.C.**
2049 Century Park East, 5th Floor
15 Los Angeles, California  90067.3107
Telephone: 310.553.0308
16 Facsimile:   310.553.5583

17

18 HOVANNES G. NALBANDYAN, Bar No. 300364
hnalbandyan@littler.com
19 **LITTLER MENDELSON, P.C.**
20 633 West 5th Street, 63rd Floor
Los Angeles, CA  90071
21 Telephone: 213.443.4300

22

23 Attorneys for Defendant
SPRINT/UNITED MANAGEMENT COMPANY

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO CONTINUE CASE
MANAGEMENT DATES
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-AHG

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a class and collective action brought on behalf of current and former non-exempt employees of Defendant Sprint/United Management Company ("Sprint" or "Defendant") who work in retail stores in California and elsewhere in the United States. The action was initiated by Plaintiff Vladimir Amaraut, who worked as a salesperson in Sprint's retail stores in San Diego, California, from approximately February 2016 through August 2018. In this role, he sold cellular phones, phone accessories, service plans, and other products and services to Sprint's customers. He alleges that he endured numerous wage and hour violations, and as a result brings the instant action. Plaintiff asserts Fair Labor Standards Act ("FLSA") and California Labor Code claims on behalf of a putative class and collective of current and former non-exempt employees working in Sprint's retail establishments.

Since this case was filed, the Parties have discussed the possibility of an early mediation. The Parties have now agreed on a mediator, Mark Rudy, and have secured a mediation date of March 24, 2020 with Mr. Rudy's office. Declaration of David C. Leimbach ("Leimbach Decl."), ¶ 4. Relatedly, the Parties have agreed to a stipulation to amend the complaint to add additional Named Plaintiffs, state law claims for states in addition to California, and accompanying putative Rule 23 classes. *Id*. at ¶ 5. Additionally, the Parties have stipulated to, and the Court has granted, conditional certification of the collective action component under the FLSA. *Id*.

Prior to the Parties' firming their plans for mediation, Plaintiff served his first set of written discovery requests on June 25, 2019, consisting of requests for production of documents and special interrogatories. *Id*. at ¶ 6. Defendant responded to Plaintiff's requests on August 16, 2019, in the form of responses and objections and the production of over 2,500 pages of documents. *Id*. at ¶ 7. Defendant's

responses were served by mail in a timely manner pursuant to an extension granted by Plaintiff. *Id.*

Due to the Parties' ongoing early settlement discussions, the Parties jointly requested modification of operative case management dates, including the deadline to move to compel further discovery responses. ECF 39. The Court granted, in part, that joint motion, and issued the following relevant case management dates:

- Deadline for Plaintiff to move to compel further discovery responses: October 30, 2019;

- Deadline for expert disclosures regarding class certification issues: November 25, 2019;

- Deadline for contradictory or rebuttal expert disclosures: December 30, 2019;

- Discovery cutoff for discovery regarding Plaintiff's individual claims, suitability as a class representative, and non-merits fact and expert discovery necessary to support or oppose class certification: February 10, 2020; and

- Deadline for Plaintiff to file his motion for class certification – March 16, 2020.

ECF 42. In that Order, the Court also remarked that it "will only consider another requested extension after the parties have filed a Joint Motion in accordance with Chambers Rules <u>and</u> lodged a Joint Mediation Plan." ECF 42, 2: 16 – 3: 2 (emphasis in original). The "Joint Mediation Plan" was to include: (a) the firm date for mediation; (b) the identity of the mediator; (c) a complete list of informal discovery the parties agree to exchange before mediation; and (d) a firm date by which the parties will exchange informal discovery. *See* ECF 42 at 3: 23-28, fn. 3.

On October 23, 2019, the Parties lodged their Joint Mediation Plan via email to efile_goddard@casd.uscourts.gov. Leimbach Decl. ¶ 8. In that Plan, the Parties

explained that they had set a firm date of March 24, 2020, to mediate this case before Mark Rudy. Parties' Mediation Plan, 1: 7-9. The Parties agreed that all mediation discovery would be produced, at the latest, by February 2020. *Id*. at 1: 10-11. The Parties agreed this informal discovery would include time punch and payroll data for FLSA Opt-In Plaintiffs and a sampling for any Rule 23 classes asserted in this action, which the Parties are still meeting and conferring over. *Id*. at 1: 13-16. The Parties also agreed this informal mediation discovery would include summary data for Opt-In Plaintiffs and Rule 23 classes, including, for example, the number of class members and total workweeks. *Id*. at 1: 18-20. The only issue over which the Parties had not yet agreed was the production of contact information for members of Rule 23 classes.[1] *Id*. at 1: 23 – 2: 3. That same day, the Parties' jointly requested a thirty-day continuance of the deadline for Plaintiff to move to compel further discovery responses. ECF 43. The Court granted that motion, and Plaintiff's motion to compel further discovery responses is currently due November 29, 2019. ECF 44.

Now that the Parties have crystalized the contours of the overwhelming majority of issues relevant to a productive mediation, the Parties now request the Court continue the operative case management dates for a period of five (5) months, so the parties may concentrate their efforts on informal discovery concerning mediation. While a continuance of five months is indeed significant, there is good cause to do so. Ultimately, due to the Parties' and Mr. Rudy's availability, the

---

[1] It is true that the Parties have reached an impasse over the production of contact information for putative class members. Plaintiff will likely be moving to compel this information before mediation. But if the deadline to move to compel further discovery responses is not continued, Plaintiff will also need to move to compel further responses and documents concerning all deficient responses. But such motion practice, and indeed, Defendant's production burdens in the event the motion is granted in whole or in part, will reflect a wasteful allocation of resources – for the Parties and the Court – should the case settle at mediation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO CONTINUE CASE MANAGEMENT DATES
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-AHG

1 mediation could not take place until March 24, 2020. If the Parties' are forced to
2 aggressively litigate this case to meet current case management deadlines, the
3 efficiencies and economies of early settlement discussions will largely be lost.

4       Additionally, there are important distinctions between the contemplated
5 informal mediation discovery, and the formal discovery Plaintiff must pursue in the
6 event the case does not settle, and Plaintiff is required to make a contested motion for
7 class certification. While much of the informal discovery will allow Plaintiff to
8 evaluate, for example, the commonality of class and collective member experiences,
9 as well as Defendant's potential exposure, the discovery will not be as comprehensive
10 – or burdensome, for either party – as formal discovery. For example, on a formal
11 discovery path, a substantial number of depositions will need to be taken – from both
12 sides. The type of document sampling that may allow Plaintiff to determine whether
13 an offer of settlement is fair, reasonable, and adequate may not be sufficient for
14 Plaintiff to meet his burden in showing that a class-wide resolution of claims is
15 predominated by common questions of law and fact, or that a class-wide adjudication
16 is manageable and superior to individual proceedings. Simply, informal mediation
17 discovery is not a substitute for the substantial discovery Plaintiff must obtain to meet
18 his burden in making a contested motion under Federal Rule of Civil Procedure 23.
19 For this reason, there is good cause to modify case management dates in a manner
20 that allows the parties to evaluate the potential for early settlement through informal
21 discovery, without having to simultaneously formally litigate the case, which will
22 require a substantial expenditure of resources and motion practice before the Court.

23       If the case does not settle at mediation, the requested continuance would keep
24 the parties on a very aggressive case management schedule. Plaintiff will have
25 approximately: (1) one month to move to compel further discovery responses; (2) one
26 month to complete initial expert disclosures; (3) four months to complete all pre-
27 certification discovery; and (4) five months to move for class certification.

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO CONTINUE CASE
MANAGEMENT DATES
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-AHG

For these reasons, the Parties jointly request that the Court continue all operative case management deadlines for approximately five months, resulting in the following case management dates:

- Deadline for Plaintiff to move to compel further discovery responses: April 29, 2020;
- Deadline for expert disclosures regarding class certification issues: April 30, 2020;
- Deadline for contradictory or rebuttal expert disclosures: May 29, 2020;
- Discovery cutoff for discovery regarding Plaintiff's individual claims, suitability as a class representative, and non-merits fact and expert discovery necessary to support or oppose class certification: July 10, 2020; and
- Deadline for Plaintiff to file his motion for class certification – August 14, 2020.

Respectfully submitted,

Date: November 18, 2019

/s/ *David C. Leimbach*
Carolyn H. Cottrell
David C. Leimbach
Scott L. Gordon
**SCHNEIDER WALLACE**
**COTTRELL KONECKY WOTKYNS LLP**

Gregg I. Shavitz (*pro hac vice*)
Michael Palitz (*pro hac vice*)
Tamra C. Givens (*pro hac vice*)
**SHAVITZ LAW GROUP, P.A.**

Attorneys for Plaintiffs and the Putative Collective and Classes

Date: November 18, 2019       /s/ *Hovannes G. Nalbandyan*
Emily T. Patajo
Hovannes G. Nalbandyan
**LITTLER MENDELSON, P.C.**

Attorneys for Defendant

## SIGNATURE ATTESTATION

I hereby attest that all signatories listed above, on whose behalf this joint motion is submitted, concur in the filing's content and have authorized the filing.

Dated: November 18, 2019                              /s/ *David C. Leimbach*
                                                          David C. Leimbach

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system on November 18, 2019.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: November 18, 2019                              /s/ *David C. Leimbach*
                                                          David C. Leimbach

# EXHIBIT "5"

| From: | Scott L. Gordon |
|-------|-----------------|
| To: | Nalbandyan, Hovannes "Hovik"; Patajo, Emily T. |
| Cc: | Carolyn H. Cottrell; David C. Leimbach; Gregg Shavitz; Michael Palitz; Tamra Givens |
| Subject: | Amaraut, et al. v. Sprint |
| Date: | Tuesday, December 3, 2019 12:22:25 PM |

**[EXTERNAL E-MAIL]**

Dear Counsel,

Pursuant to Judge Goddard's Civil Pretrial Procedures, we will be sending an email to her chambers today to initiate her discovery dispute resolution process. The email must include a neutral statement of the dispute and single sentence describing (not arguing) each Parties' position. We will be sending the email below this afternoon; please provide any edits to Defendant's position by 3pm today.

Best,
Scott

Dear Judge Goddard,

Plaintiffs in *Amaraut v. Sprint/United Management Company* (Case No. 3:19-cv-00411-WQH-AHG) write to initiate Her Honor's discovery dispute resolution process with respect to Plaintiff Vladimir Amaraut's Document Request Nos. 1-2 and Special Interrogatory Nos. 1-2. These requests seek name and contact information, including telephone numbers, for all members of the putative California Class and FLSA Collective. The Parties have met and conferred extensively on the production of this information, but have reached an impasse on the issue.

Plaintiffs' position is that this contact information, including telephone numbers, must be produced.

Defendant's position is that Class and Collective member telephone numbers is private, and protected from production.

The parties are available for a telephonic conference with the Court on Wednesday, December 4, 2019, at the following times: Anytime between 9:30AM and 12:30 PM; and anytime between 3:30 PM and 5:00 PM.



**Scott L. Gordon**
**Attorney at Law**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Toll Free:    (800) 689-0024
Facsimile:   (415) 421-7105
www.schneiderwallace.com

# EXHIBIT "6"

| From: | Scott L. Gordon |
|---|---|
| To: | efile_goddard@casd.uscourts.gov |
| Cc: | Carolyn H. Cottrell; David C. Leimbach; Gregg Shavitz; Michael Palitz; Tamra Givens; Patajo, Emily T.; Nalbandyan, Hovannes "Hovik" |
| Subject: | Amaraut v. Sprint/United Management Company (Case No. 3:19-cv-00411-WQH-AHG) -- Discovery Dispute |
| Date: | Tuesday, December 3, 2019 4:08:15 PM |

Dear Judge Goddard,

Plaintiffs in *Amaraut v. Sprint/United Management Company* (Case No. 3:19-cv-00411-WQH-AHG) write to initiate Her Honor's discovery dispute resolution process with respect to Plaintiff Vladimir Amaraut's Document Request Nos. 1-2 and Special Interrogatory Nos. 1-2. These requests seek name and contact information, including telephone numbers, for all members of the putative California Class and FLSA Collective. The Parties have met and conferred extensively on the production of this information, but have reached an impasse on the issue.

Plaintiffs' position is that this contact information, including telephone numbers, must be produced; Plaintiff never agreed, nor would Plaintiff have agreed under any circumstances (including mediation), to forego pursuit of class contact information.

Defendant's position is that Class and Collective member contact information, including telephone numbers, are private and protected from production; the upcoming mediation and the joint stipulation to continue the Case Management deadlines were all conditioned on the understanding that the parties' would forego formal discovery until after the mediation.

The parties are available for a telephonic conference with the Court on Wednesday, December 4, 2019, at the following times: Anytime between 9:30AM and  12:00 PM; and anytime between 3:30 PM and 5:00 PM.

All counsel are copied here.


Sincerely,
Scott Gordon
Attorney for Plaintiffs




**Scott L. Gordon**
**Attorney at Law**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone:  (415) 421-7100
Toll Free:    (800) 689-0024
Facsimile:   (415) 421-7105
www.schneiderwallace.com

# EXHIBIT "7"

| | |
|---|---|
| **From:** | Nalbandyan, Hovannes "Hovik" |
| **To:** | "David C. Leimbach"; Scott L. Gordon; Patajo, Emily T.; sfenwick@hefflerclaims.com |
| **Cc:** | Carolyn H. Cottrell; Gregg Shavitz; Michael Palitz; Tamra Givens; Rapazzini, Mark |
| **Subject:** | RE: Amaraut v. Sprint - Potential collective member list |
| **Date:** | Monday, November 25, 2019 4:28:00 PM |
| **Attachments:** | image008.png |
| | image009.png |
| | image001.png |

Counsel:

Please accept Defendant's response to the e-mail below.

**Protective Order**
Your e-mail conveniently ignores Sprint's position regarding the stipulated protective order. As we mentioned before, Plaintiff has not filed, nor has the Court entered, a Protective Order in this matter. The Court's Order expressly indicates that the production is subject to the **"Protective Order entered in this action**."

Defense made it very clear from the start that Sprint would only agree to produce information, if that information was subject to a protective order. This was an express condition of the Parties' stipulation and was memorialized in the Court's order.

In light of the above, it's unclear what Plaintiffs are suggesting here. Are Plaintiffs requesting that Sprint produce personal, confidential information for the entire collective without a protective order? If so, please clearly advise us of same, so we may determine further handling.

**Production Date**
We maintain our position, and are not in violation of the Court's order. We are ready to relay our position to the Judge.

**E-mail Addresses**
Your e-mail inappropriately suggests that we knew of the e-mail issue before agreeing to produce them. We did not. The potential issue was brought to our attention for the first time over a week after the Court ordered entered the Parties' joint motion to conditionally certify the collective. We e-mailed your office shortly after the potential issue was confirmed, and have been working with the client on a continual basis to determine a work-around, and develop a plan for further handling.  We are waiting for clarity from the client, so we can assess further handling from here.

Instead of seeing our effort what it is, you resort to misconstruing the record. Your e-mail is not well taken, and will be brought to the Court's attention.

**Further Handling**
We are available tomorrow between 11:00am and 2:00pm, and again all day Wednesday.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

**From:** David C. Leimbach <DLeimbach@schneiderwallace.com>
**Sent:** Friday, November 22, 2019 3:56 PM
**To:** Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; Scott L. Gordon
<sgordon@schneiderwallace.com>; Patajo, Emily T. <EPatajo@littler.com>;
sfenwick@hefflerclaims.com
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz
<gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens
<tgivens@shavitzlaw.com>; Rapazzini, Mark <mrapazzini@hefflerclaims.com>
**Subject:** RE: Amaraut v. Sprint - Potential collective member list

**[EXTERNAL E-MAIL]**

Counsel:

Your email is not well-taken. In terms of your internal confusion regarding the production date, your reading of the Order is nonsensical.  The phrase "this Order" plainly demonstrates it was tethered to *that* Order (i.e., the conditional certification order making the statement), not some *other* Order to be entered in the future. Regardless of your calendaring errors or apparent misreading of plain language of this stipulated Order, we expect Sprint to marshal whatever resources are necessary to provide the collective information to the administrator by close of business on Tuesday, November 26, 2019.  You are already in violation of the Court's Order.  If Sprint commits any additional violations of this Order, Plaintiff will seek sanctions.

Which brings me to your next issue: Your suggestion that even though you will not be providing collective information until weeks after it was required to be produced, even then, you may not be providing email addresses.  This is unacceptable. If Sprint truly was going to have difficulty producing email addresses, or it needed more than the allotted time to produce this information, those issues needed to be raised and discussed *before* Sprint made its commitments. Raising this issue *after* contact information was to be produced to the notice administrator, coupled with your earlier misrepresentations about the existence of emails, and a pattern of bad faith is readily apparent.

We made it clear we would not agree to anything less than email notice or text notice.  And more importantly, the Court ordered email notice. This is the agreement you made.  Whatever Sprint needs to do to ensure all email addresses in Sprint's possession – not just those it can retrieve, based on whatever diligence Sprint decides to exercise –  are produced by November 19, it needs to be done.

Be advised: based on your email, Plaintiff anticipates seeking monetary and corrective sanctions.  You are already in violation of the Court's Order, and if you violate it again by failing to produce all email addresses in Sprint's possession, we will seek sanctions.  These will not be limited to monetary sanctions (though, we will be seeking those as well).  We will also be seeking corrective sanctions.  First, the opt-in period will be tolled until collective members receive email notice.  The opt-in period will not begin to run upon just mailed notice.  Second, once the Court inevitably compels Sprint to provide telephone numbers – which the unbroken line of California authority will occasion it to do – we will seek text message notice, as a corrective sanction, in addition to email and mail notice.

Relatedly, as the parties have reached an impasse over the production of telephone numbers, please provide three dates, during the week of November 25, 2019, on which you are available for a call with the Magistrate Judge.  This is the first step to Judge Goddard's discovery dispute resolution process. We will work around your schedule.

Please provide your three dates by 5:00 PM PST on Monday, November 25, 2019. If you do not provide dates of availability by then, we will inform the Court you are refusing to participate in the process, and unilaterally put the matter before the Court.

David



**David C. Leimbach**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
            (800) 689-0024
Toll Free:  (415) 421-7105
Facsimile:
www.schneiderwallace.com

---

**From:** Nalbandyan, Hovannes "Hovik" [mailto:HNalbandyan@littler.com]
**Sent:** Wednesday, November 20, 2019 4:45 PM
**To:** Scott L. Gordon <sgordon@schneiderwallace.com>; Patajo, Emily T. <EPatajo@littler.com>;
sfenwick@hefflerclaims.com
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach
<DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz
<mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Rapazzini, Mark
<mrapazzini@hefflerclaims.com>
**Subject:** RE: Amaraut v. Sprint - Potential collective member list

Dear Scott:

Thank you for your e-mail. There are a few issues:

**Timeline of Events**
First, there appears to be a misunderstanding with timing. Based on the Joint Motion the parties
filed, it was our understanding that the 14-days to produce the collective list would be triggered
from the day the Court appoints an Order assigning the Notice Administrator. The term "Order" was
not defined, and due to the structure of the paragraphs, we scheduled our timeline based on this
understanding.  This logically makes sense, as we can't produce a collective list to a Notice
Administrator if there is no Notice Administrator assigned. Accordingly, we are operating on a
production deadline of December 2, 2019 (e.g., 14 days from the November 18 order date).

Here are the applicable paragraphs:

8.      The Court will appoint a third-party notice administrator ("Notice Administrator") to mail and email the proposed Notice of Collective Action Lawsuit ("Notice") and Opt-In Consent Form to all persons identified in Defendant's list. Plaintiff shall propose the Notice Administrator to the Court within five (5) days of the date of this Order and shall meet and confer with Defendant regarding the selection before then.   Plaintiff shall pay the costs of the Notice Administrator, subject to claiming the costs as a reimbursable litigation expense.

9.      Within fourteen (14) days of this Order, Defendant shall provide the Notice Administrator with a computer-readable data file containing the names, job titles, last known mailing addresses, personal e-mail addresses on file with the company at sprint.com/careers (to the extent available), and social security numbers (last four digits only) of all persons within the following definition:

We internally scheduled everything based on the Parties' agreement.

**Stipulated Protective Order**
Also, the parties agreed that all information that any information produced would be subject to a protective order entered into this action.

10.      Defendant shall provide this information for any person who has been employed with Defendant at any time from February 28, 2016 —three years preceding the date of the filing of the Complaint. This information is subject to the Protective Order entered in this action, and shall only be used by the Notice Administrator for dissemination of the Notice and Opt-In Consent Form.

Last we discussed the matter, on October 10 and 19, we confirmed that Sprint is amenable to entering the SD Cal Model Protective Order for the matter. We sent a prior version, which was rejected. Then, Scott forwarded us a copy of model protective, and we did not have objections and agreed to use. We will need it filed and granted by the Court before anything is produced – as the parties agreed in the Joint Motion and was separately confirmed by the Court's order.

Unless your office already has the model version with the caption entered, we would be happy to circulate a draft later today or early tomorrow. Please let us know.

**Potential E-mail Issue**
We're also working with the client regarding the pull of personal e-mails from the sprint.com/career repository. Due to the repository not assigning a unique identifier to applicants when they apply for a position, Sprint cannot use an EE ID# or SS# to pull personal e-mails. We are working with the client to determine a work-around. However, we anticipate this can become an issue if the process

cannot be turned around quickly.

Otherwise, we have the Collective List with names, last known homes address, job titles, last 4 digits of SSNs, etc.

**Individuals to be Excluded from Opt-Ins**
Lastly, the parties did not discuss logistics for the individuals that should be excluded from receiving Opt-Ins. We intend to circulate a list of names shortly.

We recommend setting up a telephone conference tomorrow or Friday to discuss these issues. Please let us know your availability. Thank you.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

**From:** Scott L. Gordon <sgordon@schneiderwallace.com>
**Sent:** Tuesday, November 19, 2019 6:05 PM
**To:** Patajo, Emily T. <EPatajo@littler.com>; Nalbandyan, Hovannes "Hovik" <HNalbandyan@littler.com>; sfenwick@hefflerclaims.com
**Cc:** Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; David C. Leimbach <DLeimbach@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>; Rapazzini, Mark <mrapazzini@hefflerclaims.com>
**Subject:** Amaraut v. Sprint - Potential collective member list

# [EXTERNAL E-MAIL]

Dear Emily and Hovik,

Pursuant to the order granting conditional certification (attached), Sprint is to provide the Notice Administrator, Heffler Claims Group, with a computer-readable data file containing the names, job

titles, last known mailing addresses, personal e-mail addresses on file with the company at sprint.com/careers (to the extent available), and social security numbers (last four digits only) for the potential members of the collective. As this file will be sent directly from Sprint to Heffler, we have included our contact at Heffler, Scott Fenwick, on this email.  Scott will work with you on the transfer of the data.

Pursuant to the order, the deadline for Sprint to provide this information was yesterday. Therefore, we expect that Sprint is ready to proceed with the transfer. Please advise.

Thank you.

Best,
Scott



**Scott L. Gordon**
**Attorney at Law**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:   (415) 421-7100
Direct:          (510) 740-2922
Toll Free:      (800) 689-0024
Facsimile:    (415) 421-7105
www.schneiderwallace.com

--------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

# EXHIBIT "8"

Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

Attorneys for Plaintiff and the Putative
Collective and Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR AMARAUT, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>Sprint/United Management Company,<br><br>    Defendant. | Case No.: 3:19-cv-00411-WQH-WMD<br><br>**PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE**<br><br>Date action filed: February 28, 2019<br>Judge: William Q. Hayes |

1  PROPOUNDING PARTY:      Plaintiff Vladimir Amaraut
2  RESPONDING PARTY:       Sprint/United Management Company
3  SET NO.:                One

4    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff
5  Vladimir Amaraut, on behalf of himself and all others similarly situated
6  ("Plaintiff"), hereby requests that Defendant Sprint/United Management Company
7  ("Defendant") respond to Plaintiff's Requests for Production of Documents to
8  Defendant, Set One, by serving its written responses and producing for inspection
9  and copying the documents described herein upon Plaintiff's Counsel at the offices
10  of Schneider Wallace Cottrell Konecky Wotkyns LLP, 2000 Powell Street, Suite
11  1400, Emeryville, California, 94608, to the attention of Carolyn Hunt Cottrell,
12  within thirty days after being served with these document requests.

13                          **INSTRUCTIONS**

14    1.    In accordance with Rule 34(b), Defendant shall provide written
15  responses to the following requests and shall produce requested documents as they
16  are kept in the ordinary and usual course of business and shall organize and label
17  the documents to correspond with the categories in the request.

18    2.    If any requested document is known by Defendant to have existed, but
19  no longer exists or is no longer in Defendant's possession, custody, or control,
20  Defendant is required to identify the last known custodian thereof and state the date
21  upon which it was lost, destroyed, or otherwise became unavailable.    If the
22  document still exists but is unavailable to Defendant, Defendant is requested to
23  identify its present custodian and location.

24    3.    Pursuant to Rule 26(b)(5), if Defendant withholds the production of any
25  document which is responsive to these requests on the grounds that the document is
26  privileged or otherwise protected, Defendant shall state in a privilege log the nature
27  of the claim of privilege or protection and describe generally the type and nature of
28

1   the document, the date of the document, the identity of the author(s) and their
2   address(es), and any recipients of the document, the document's present location,
3   and any other information that will enable Plaintiff and the court to assess the
4   applicability of the privilege or protection.

5       4.    If any request is defined using a term of art or other term that Defendant
6   believes to be incorrect, but Defendant understands the nature of the document
7   requested, Defendant shall produce the document notwithstanding the semantic or
8   definitional error.

9       5.    All requests for computerized data are to be produced in a computer-
10  readable format with keys for interpretation of the data and/or a glossary or index of
11  terms.

12      6.    Any documents produced electronically shall be produced in native
13  format, with all metadata.

14      7.    Pursuant to Rule 34(b)(2)(E), Plaintiff requests that Defendant produce
15  the documents requested below as they are ordinarily maintained and in the format
16  outlined in Exhibit A.  Defendant is to produce:

17          a.    Copies of electronically stored information ("ESI") responsive to
18                these requests, as it is kept in the usual course of business,
19                including all non-identical copies.  Pursuant to Rule 34(b)(2)(E),
20                Plaintiff requests that Defendant produce ESI in the format
21                outlined in Exhibit A.

22          b.    Electronic scanned images of original documents responsive to
23                these requests that exist only in hard-copy format and are
24                therefore unavailable in ESI format as they are kept in the usual
25                course of business, including all non-identical copies. Plaintiff
26                requests that Defendant produce such electronic images in the
27                format outlined in Exhibit A.

28

## PRIVILEGE LOG

1.      It is not the propounding parties' intention to request production of privileged matter. Pursuant to Rule 26(b)(5), if responding party withholds from production any document on the ground that it is protected by any privilege, please furnish a privilege log for each item or category of item withheld on the basis of said privilege stating the following information:

      (a)   Date of document(s);

      (b)   Person(s) who authored document(s);

      (c)   Person(s) who were addressee(s) of document(s);

      (d)   Person(s) who received copies of document(s);

      (e)   Title of file in which document(s) were kept, if any;

      (f)   Person(s) who prepared and maintained the aforementioned file, if any;

      (g)   Subject of document(s);

      (h)   Nature of privilege claimed; and

      (i)   Any other information that will enable Plaintiffs and the Court to assess the applicability of the privilege or protection.

## DEFINITIONS

The following terms shall have the following meanings:

1.      "Any" includes and encompasses all.

2.      "Plaintiff" means Vladimir Amaraut.

3.      "Defendant" means Sprint/United Management Company and/or any managers, directors, administrators, officers, executives, agents, contractors, fiduciaries, or other representatives of Defendant.

4.      "Putative Class Members" means all current and former non-exempt hourly employees of Defendant working in Defendant's retail establishments

1  throughout the State of California during the time period from four years prior to
2  the filing of the complaint (February 28, 2015) until resolution of this action.

3      5.    "Putative Collective Members" means all current and former non-
4  exempt, hourly employees of Defendant working in Defendant's retail
5  establishments throughout the United States during the time period from three years
6  prior to the filing of the complaint (February 28, 2016) until resolution of this
7  action.

8      6.    "Person(s)" means any natural person or other legal entity, including,
9  without limitation, any corporation, partnership, business, trust, agency, joint
10 venture, or governmental organization, department, or entity.

11     7.    "Identify," when used in relation to a natural person, means to provide
12 sufficient information about the person to identify that person and make
13 arrangements for service of a subpoena, including the person's (a) full name; (b)
14 last known employer and occupation; (c) last known business address and telephone
15 number; (d) title and dates of service; (e) last known residence address and
16 telephone number; and (f) last known personal email address.

17     8.    "Identify," when used in relation to an entity, means to provide
18 sufficient information about the entity to identify the entity and make arrangements
19 for service of a subpoena, including the (a) full name of the entity; (b) legal form of
20 the entity (whether it is a corporation, partnership, etc.); (c) state of incorporation (if
21 any); (d) date of incorporation or the date the business relationship was established;
22 (e) address and telephone number of the headquarters; (f) address and telephone
23 number of the principal place of business; (g) person designated for service of
24 process; and (h) address designated for service of process.

25     9.    "Identify," when used in relation to a document, means to either (a)
26 furnish a clear and legible copy of the document in question; or (b) describe the
27 document with sufficient particularity such that a formal request or subpoena for its

28

production may be made, including (1) the identity of the document's custodian; (2) the date(s) that the document was signed; (3) the date the document was produced (if it was not signed); (4) the identity of the document's author; (5) a summary of the nature of the document's contents; and (6) the identity of the Person whose testimony could be used to authenticate each document and who could lay the foundation for its introduction into evidence.

10.     "Communication" means an instance in which words or information are transferred or transmitted between two or more persons by whatever manner or means, and regardless of how or by whom the communication was initiated, including, but not limited to, directors, employees, agents, attorneys or representatives, and all other persons or entities acting, purporting to act, or authorized to act on its behalf.

11.     "Describe" means to identify, express, explain, set forth, relate, recount, depict, and/or delineate.   A description of an oral or written communication includes an identification of the communicators, the date(s) of the communication, and the substance of the communication.

12.     "Document" or "Documents" include, without limitation, any typewritten, handwritten, graphic, photographic, printed, or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in your possession, custody, or control or in the possession, custody, or control of any servant or agent of you or of your attorneys.   The terms include the following: electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes, video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic, or other media; or any other summary, schedule, memorandum, note, statement,

letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "document" and "documents" include any originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such documents, whether or not used, as well as the file in which the document(s) are maintained.  A draft or non-identical copy of a document, including a copy or duplicate of a document which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate document within the meaning of these terms.

13.    "Meal break" means any 30-minute meal period or lunch period Defendant must authorize, permit, and/or make available to its non-exempt, hourly employees to take pursuant to California Labor Code §§ 226.7 and 512 and Industrial Welfare Commission ("IWC") Wage Orders 4-2001 and 7-2001.

14.    "Rest Break" means any 10-minute rest period Defendant must authorize, permit, and/or make available to its non-exempt, hourly employees to take pursuant to California Labor Code §§ 226.7 and 512 and IWC Wage Orders 4-2001 and 7-2001.

15.    "Overtime" means any work in excess of 8 hours in a day.  It also means any work in excess of 40 hours in a week.

16.    "Double time" means any hours worked in excess of 12 hours in any workday and in excess of eight hours on the seventh consecutive workday.

17.    "Relating to" means supporting, tending to support, refuting, tending to refute, or concerning (including mentioning, stating, discussing, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, comprising, reporting, pertaining to, or

1  having any connection with or bearing upon), directly or indirectly, the matter in
2  question.

3      18.  "Class Time Period" means the time period from February 28, 2015 to
4  final resolution of this action.

5      19.  "FLSA Collective Time Period" means the time period from February
6  28, 2016 to final resolution of this action.

7      20.  The Class Time Period and FLSA Collective Time Period are
8  collectively referred to as the "Relevant Time Periods."

9  **SCOPE OF DISCOVERY**

10      1.  Unless otherwise stated in a specific discovery request, these requests
11  shall be deemed to cover the time period from February 28, 2015 to final resolution
12  of this action to the extent these requests pertain to Putative Class Members; and the
13  time period from February 28, 2016 to final resolution of this action to the extent
14  these requests pertain to Putative Collective Members.

15      2.  All requests phrased in either the disjunctive ("or") or conjunctive
16  ("and") or both, should be interpreted in the manner that makes Defendant's
17  response inclusive rather than exclusive.

18      3.  Pursuant to Federal Rule of Civil Procedure 26(e), these requests are
19  continuing requests and require production of all responsive information discovered
20  or prepared after Defendant's initial response to this request.

21  **REQUESTS FOR PRODUCTION**

22  **REQUEST NO. 1:**

23      A list identifying all Putative Class Members.  The list should include each
24  Putative Class Members' name, last-known address, last-known phone number,
25  last-known email address, job title(s), dates of employment, location at which the
26  employee worked, and social security numbers.

27

28

1  **REQUEST NO. 2:**

2      A list identifying all Putative Collective Members.  The list should include

3  each Putative Collective Members' name, last-known address, last-known phone

4  number, last-known email address, job title(s), dates of employment, location at

5  which the employee worked, and social security numbers.

6  **REQUEST NO. 3:**

7      A list identifying all individuals who managed or supervised Plaintiff and

8  Putative Collective Members during the FLSA Collective Time Period, including

9  but not limited to managers and supervisors.  The list should include the name of

10  each manager or supervisor, their job title, each location at which they worked, last-

11  known address, last-known phone number, last-known email address, and dates of

12  employment.

13  **REQUEST NO. 4:**

14      A list identifying all individuals who managed or supervised Plaintiff and

15  Putative Class Members during the Class Time Period, including but not limited to

16  managers and supervisors foremen.  The list should include the name of each

17  manager or supervisor, their job title, each location at which they worked, last-

18  known address, last-known phone number, last-known email address, and dates of

19  employment.

20  **REQUEST NO. 5:**

21      All documents listing, describing, memorializing, or otherwise relating to the

22  duties and responsibilities of Plaintiff and Putative Collective Members during the

23  FLSA Collective Time Period.  This request includes, without limitation, written

24  job descriptions and any documents concerning any variations in title, type, level,

25  compensation, and/or grade for Plaintiff's and Putative Collective Members' job

26  positions during the FLSA Collective Time Period.

27

28

1  **REQUEST NO. 6:**

2    All documents listing, describing, memorializing, or otherwise relating to the

3  duties and responsibilities of Plaintiff and Putative Class Members during the Class

4  Time Period.  This request includes, without limitation, written job descriptions and

5  any documents concerning any variations in title, type, level, compensation, and/or

6  grade for Plaintiff's and Putative Class Members' job positions during the Class

7  Time Period.

8  **REQUEST NO. 7:**

9    All documents relating to any schedules Plaintiff and Putative Collective

10  Members were required to work for Defendant during the FLSA Collective Time

11  Period.

12  **REQUEST NO. 8:**

13    All documents relating to any schedules Plaintiff and Putative Class Members

14  were required to work for Defendant during the Class Time Period.

15  **REQUEST NO. 9:**

16    All documents reflecting the actual hours Plaintiff and Putative Collective

17  Members worked for Defendant during the FLSA Collective Time Period.

18  **REQUEST NO. 10:**

19    All documents reflecting the actual hours Plaintiff and Putative Class

20  Members worked for Defendant during the Class Time Period.

21  **REQUEST NO. 11:**

22    All timesheets or time records reflecting any hours Plaintiff and Putative

23  Collective Members worked during the relevant FLSA Collective Time Period. This

24  request includes, without limitation, documents, electronic or otherwise, generated

25  or created by any systems used to track work time.  It also includes documents

26  reflecting edits, changes, alterations, adjustments to time records, in both electronic

27

28

9

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*, Case No. 3:19-cv-00411-WQH-MDD

1   and paper form.   This request further includes any summaries, reports, or
2   compilations of hours worked by Putative Collective Members.

3   **REQUEST NO. 12:**

4      All timesheets or time records reflecting any hours Plaintiff and Putative Class
5   Members worked during the Class Time Period. This request includes, without
6   limitation, documents, electronic or otherwise, generated or created by any systems
7   used to track work time.   It also includes documents reflecting edits, changes,
8   alterations, adjustments to time records, in both electronic and paper form.   This
9   request further includes any summaries, reports, or compilations of hours worked
10  by Putative Class Members.

11  **REQUEST NO. 13:**

12      All documents relating to the administration, preparation, completion, and/or
13  maintenance of timesheets or time records for Plaintiff and Putative Collective
14  Members during the FLSA Collective Time Period.

15  **REQUEST NO. 14:**

16      All documents relating to the administration, preparation, completion, and/or
17  maintenance of timesheets or time records for Plaintiff and Putative Class Members
18  during the Class Time Period.

19  **REQUEST NO. 15:**

20      For every timekeeping system utilized by Defendant during the FLSA
21  Collective Time Period, produce all documents (including studies, analyses, reports,
22  memoranda, emails, and notes) concerning any decision to replace a timekeeping
23  system in use and implement a new system.

24  **REQUEST NO. 16:**

25      For every timekeeping system utilized by Defendant during the Class Time
26  Period, produce all documents (including studies, analyses, reports, memoranda,

27

28

1  emails, and notes) concerning any decision to replace a timekeeping system in use
2  and implement a new system.

3  **REQUEST NO. 17:**

4  All documents from the FLSA Collective Time Period relating to Plaintiff's
5  and Putative Collective Members' hours of work, including but not limited to: when
6  Plaintiff and Putative Collective Members arrive at and leave Defendant's
7  worksites; when they clock in and clock out for their shifts; if they are required to
8  complete any work prior to clocking in and/or after clocking out of work; travel
9  between Defendant's locations and/or between Defendant's locations and customer
10 locations; and if they are required to complete any other work, including trainings
11 and travel, "off-the-clock". This request includes, without limitation, all policies,
12 practices, procedures, and correspondence concerning how and when Putative
13 Collective Members record their time worked during such periods, including
14 training materials.

15 **REQUEST NO. 18:**

16 All documents from the Class Time Period relating to Plaintiff's and Putative
17 Class Members' hours of work, including but not limited to: when Plaintiff and
18 Putative Class Members arrive at and leave Defendant's worksites; when they clock
19 in and clock out for their shifts; if they are required to complete any work prior to
20 clocking in and/or after clocking out of work; travel between Defendant's locations
21 and/or between Defendant's locations and customer locations; and if they are
22 required to complete any other work, including trainings and travel, "off-the-clock".
23 This request includes, without limitation, all policies, practices, procedures, and
24 correspondence concerning how and when Putative Class Members record their
25 time worked during such periods, including training materials.

26

27

28

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-MDD

**REQUEST NO. 19:**

All documents or other records relating to Plaintiff's and Putative Collective Members' request(s), concern(s), question(s), or complaint(s) – oral or written – about their work during the FLSA Collective Time Period, including but not limited to work "off-the-clock", work before the beginning of their paid shifts, work after the end of their paid shifts, unpaid trainings, travel between Defendant's locations and/or between Defendant's locations and customer locations, or compensation for time worked.

**REQUEST NO. 20:**

All documents or other records relating to Plaintiff's and Putative Class Members' request(s), concern(s), question(s), or complaint(s) – oral or written – about their work during the Class Time Period, including but not limited to work "off-the-clock", work before the beginning of their paid shifts, work after the end of their paid shifts, unpaid trainings, travel between Defendant's locations and/or between Defendant's locations and customer locations, or compensation for time worked.

**REQUEST NO. 21:**

All documents relating to policies, procedures, guidelines, or practices regarding the compensation paid to Putative Collective Members, including payment in the form of wages, piece rate, bonuses, commissions, salaries, per diems, expense reimbursement, and all other forms of compensation.

**REQUEST NO. 22:**

All documents relating to policies, procedures, guidelines, or practices regarding the compensation paid to Putative Class Members, including payment in the form of wages, piece rate, bonuses, commissions, salaries, per diems, expense reimbursement, and all other forms of compensation.

1 | **REQUEST NO. 23:**

2      All documents relating to Defendant's policies, procedures, and practices
3 relating to Plaintiff's and Putative Collective Members' travel between Defendant's
4 locations and/or between Defendant's locations and customer locations during the
5 FLSA Collective Time Period, including but not limited to Defendant's policies,
6 procedures, and practices relating to recording of and compensation for such travel.

7 | **REQUEST NO. 24:**

8      All documents relating to Defendant's policies, procedures, and practices
9 relating to Plaintiff's and Putative Class Members' travel between Defendant's
10 locations and/or between Defendant's locations and customer locations during the
11 Class Time Period, including but not limited to Defendant's policies, procedures,
12 and practices relating to recording of and compensation for such travel.

13 | **REQUEST NO. 25:**

14      All documents from the FLSA Collective Time Period relating to Plaintiff's
15 and Putative Collective Members' meal breaks. This request includes, without
16 limitation, all policies, practices, procedures, and correspondence concerning such
17 meal breaks, including how and when Plaintiff and Putative Collective Members
18 record their time worked during such periods, including training materials.

19 | **REQUEST NO. 26:**

20      All documents from the Class Time Period relating to Plaintiff's and Putative
21 Class Members' meal breaks. This request includes, without limitation, all policies,
22 practices, procedures, and correspondence concerning such meal breaks, including
23 how and when Plaintiff and Putative Class Members record their time worked
24 during such periods, including training materials.

25 | //

26 | //

27 | //

28 |

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*, Case No. 3:19-cv-00411-WQH-MDD

1 | **REQUEST NO. 27:**

2 |     All documents or other records relating to Plaintiff's and Putative Class

3 | Members' request(s), concern(s), question(s), or complaint(s) – oral or written – for

4 | meal breaks to be made available during the Class Time Period.

5 | **REQUEST NO. 28:**

6 |     All documents or other records relating to Plaintiff's and Putative Class

7 | Members' request(s), concern(s), question(s), or complaint(s) – oral or written –

8 | regarding the possible denial of a meal break during the Class Time Period.

9 | **REQUEST NO. 29:**

10 |     All documents constituting or relating to any waiver(s) of any meal break by

11 | Plaintiff or any Putative Class Member during the Class Time Period.

12 | **REQUEST NO. 30:**

13 |     All documents concerning or identifying any systems, electronic or otherwise,

14 | used to monitor whether Plaintiff and Putative Class Members received meal breaks

15 | in accordance with California law during the Class Time Period.

16 | **REQUEST NO. 31:**

17 |     All documents relating to or identifying whether Defendant paid premium pay

18 | to Plaintiff and/or any Putative Class Members who missed meal breaks during the

19 | Class Time Period.

20 | **REQUEST NO. 32:**

21 |     All documents from the Class Time Period relating to Plaintiff's and Putative

22 | Class Members' rest breaks.  This request includes, without limitation, all policies,

23 | practices, procedures, and correspondence concerning such rest breaks, including

24 | how and when Plaintiff and Putative Class Members record their time worked

25 | during such breaks, including training materials.

26

27

28

**REQUEST NO. 33:**

All documents or other records relating to Plaintiff's and Putative Class Members' request(s), concern(s), question(s), or complaint(s) – oral or written – regarding rest breaks during the Class Time Period.

**REQUEST NO. 34:**

All documents constituting or relating to any waiver(s) of any rest break by Plaintiff or any Putative Class Member during the Class Time Period.

**REQUEST NO. 35:**

All documents concerning or identifying any systems, electronic or otherwise, used to monitor whether Plaintiff and Putative Class Members received rest breaks in accordance with California law during the Class Time Period.

**REQUEST NO. 36:**

All documents relating to or identifying whether Defendant paid premium pay to Plaintiff and Putative Class Members who missed rest breaks during the Class Time Period.

**REQUEST NO. 37:**

All documents relating to overtime for Plaintiff and Putative Collective Members during the FLSA Collective Time Period. This request includes, without limitation, policies, procedures, or practices relating to the payment of overtime to Plaintiff and Putative Collective Members, including how such overtime is calculated.  This request further includes documents reflecting overtime earned by Plaintiff and Putative Collective Members.

**REQUEST NO. 38:**

All documents relating to overtime for Plaintiff and Putative Class Members during the Class Time Period. This request includes, without limitation, policies, procedures, or practices relating to the payment of overtime to Plaintiff and Putative Class Members, including how such overtime is calculated.  This request further

1  includes documents reflecting overtime earned by Plaintiff and Putative Class
2  Members.
3  **REQUEST NO. 39:**
4      All documents relating to Defendant's policies and practices of verifying all
5  compensable hours worked by Plaintiff and Putative Collective Members during the
6  FLSA Collective Time Period.
7  **REQUEST NO. 40:**
8      All documents relating to Defendant's policies and practices of verifying all
9  compensable hours worked by Plaintiff and Putative Class Members during the
10  Class Time Period.
11  **REQUEST NO. 41:**
12      All documents or other records pertaining to Plaintiff's and Putative
13  Collective Members' request(s) for overtime compensation during the FLSA
14  Collective Time Period.
15  **REQUEST NO. 42:**
16      All documents or other records pertaining to Plaintiff's and Putative Class
17  Members' request(s) for overtime compensation during the Class Time Period.
18  **REQUEST NO. 43:**
19      All documents or other records pertaining to Plaintiff's and Putative
20  Collective Members' concern(s), question(s), and/or complaint(s) – oral or written –
21  about overtime compensation during the FLSA Collective Time Period.
22  **REQUEST NO. 44:**
23      All documents or other records pertaining to Plaintiff's and Putative Class
24  Members' concern(s), question(s), and/or complaint(s) – oral or written – about
25  overtime compensation during the Class Time Period.
26
27
28

1  **REQUEST NO. 45:**

2      All documents relating to Defendant's policies, procedures, and practices
3  relating to the payment to Plaintiff and Putative Class Members who have left their
4  employment with Defendant of all wages owed to them either immediately (for
5  those who were discharged by Defendant) or within 72 hours (for those who
6  voluntarily left their employment) of their departure from their employment during
7  the Class Time Period.

8  **REQUEST NO. 46:**

9      All documents showing the payment to Plaintiff and Putative Class Members
10 who have left their employment with Defendant of all wages owed to them either
11 immediately (for those who were discharged by Defendant) or within 72 hours (for
12 those who voluntarily left their employment) of their departure from their
13 employment during the Puta Class Time Period. This request includes, without
14 limitation, a request for production of the final paychecks paid to Putative Class
15 Members who left their employment with Defendant during the Class Time Period.

16 **REQUEST NO. 47:**

17     All documents identifying or relating to the contents of itemized wage
18 statements provided to Plaintiff and Putative Collective Members during the FLSA
19 Collective Time Period. This request includes, without limitation, Defendant's
20 policies, practices, and procedures relating to the contents of such itemized wage
21 statements.

22 **REQUEST NO. 48:**

23     All documents identifying or relating to the contents of itemized wage
24 statements provided to Plaintiff and Putative California Putative Class Members
25 during the Class Time Period. This request includes, without limitation,
26 Defendant's policies, practices, and procedures relating to the contents of such
27 itemized wage statements.

28

**REQUEST NO. 49:**

All documents constituting or relating to materials used to train Plaintiff and Putative Collective Members during the FLSA Collective Time Period, including but not limited to, the materials used to train them on the following topics: scheduling, timekeeping, compensable and non-compensable time, meal breaks, rest breaks, minimum wage, overtime and overtime wages, payment of wages, usage of personal vehicles and telephones, reimbursement of expenses, commissions, wages on termination and/or quitting, and wage statements. This request includes all drafts, iterations, editions, and versions of such training materials.

**REQUEST NO. 50:**

All documents constituting or relating to materials used to train Plaintiff and Putative Class Members during the Class Time Period, including but not limited to, the materials used to train them on the following topics: scheduling, timekeeping, compensable and non-compensable time, meal breaks, rest breaks, minimum wage, overtime and overtime wages, payment of wages, usage of personal vehicles and telephones, reimbursement of expenses, commissions, wages on termination and/or quitting, and wage statements. This request includes all drafts, iterations, editions, and versions of such training materials.

**REQUEST NO. 51:**

All documents reflecting any of Defendant's policies Defendant provided to Plaintiff and Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 52:**

All documents reflecting any of Defendant's policies Defendant provided to Plaintiff and Putative Class Members during the Class Time Period.

**REQUEST NO. 53:**

The complete personnel files for Named Plaintiff Vladimir Amaraut, and all opt-in plaintiffs, as well as any other documents which pertain to or identify these individuals, by name or otherwise.

**REQUEST NO. 54:**

All documents reflecting any disciplinary action taken by Defendant against Named Plaintiff Vladimir Amaraut, and all opt-in plaintiffs.

**REQUEST NO. 55:**

All human resource manuals, handbooks, policy statements, memoranda, and other documents that pertain to Plaintiff and Putative Collective Members, including but not limited to any handbooks or manuals relating to recording hours worked and meal breaks.

**REQUEST NO. 56:**

All human resource manuals, handbooks, policy statements, memoranda, and other documents that pertain to Plaintiff and Putative Class Members, including but not limited to any handbooks or manuals relating to recording hours worked and meal breaks.

**REQUEST NO. 57:**

All documents that show any and all arbitration agreements between Defendant and Putative Collective Members.

**REQUEST NO. 58:**

All documents that show any and all arbitration agreements between Defendant and Putative Class Members.

**REQUEST NO. 59:**

All documents relating to or identifying any claims for unpaid wages or unpaid overtime by Plaintiff and Putative Collective Members, whether internal or filed with any court or government agency.   This request includes, without

1 limitation, a request for production of all documents regarding any investigation of
2 those claims.

3 **REQUEST NO. 60:**

4   All documents relating to or identifying any claims for unpaid wages or
5 unpaid overtime by Plaintiff and Putative Class Members, whether internal or filed
6 with any court or government agency.  This request includes, without limitation, a
7 request for production of all documents regarding any investigation of those claims.

8 **REQUEST NO. 61:**

9   All documents concerning or identifying any investigation of Defendant's
10 compensation or timekeeping policies or practices relating to Plaintiff and Putative
11 Collective Members conducted by any government agency, including, without
12 limitation, the United States Department of Labor and the California Department of
13 Industrial Relations Division of Labor Standards Enforcement, during the FLSA
14 Collective Time Period. This request includes, without limitation, a request for
15 production of any documents turned over to any government agency in response to
16 any investigation.

17 **REQUEST NO. 62:**

18   All documents concerning or identifying any investigation of Defendant's
19 compensation or timekeeping policies or practices relating to Plaintiff and Putative
20 Class Members conducted by any government agency, including, without
21 limitation, the United States Department of Labor and the California Department of
22 Industrial Relations Division of Labor Standards Enforcement, during the Class
23 Time Period. This request includes, without limitation, a request for production of
24 any documents turned over to any government agency in response to any
25 investigation.

26

27

28

**REQUEST NO. 63:**

All documents concerning or identifying all reports, investigations, audits, inspections, examinations, research, or any other review conducted by Defendant relating to Defendant's timekeeping and/or compensation policies applicable to Plaintiff and Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 64:**

All documents concerning or identifying all reports, investigations, audits, inspections, examinations, research, or any other review conducted by Defendant relating to Defendant's timekeeping and/or compensation policies applicable to Plaintiff and Putative Class Members during the Class Time Period.

**REQUEST NO. 65:**

All insurance policies carried by Defendant, including, but not limited to, liability insurance, worker's compensation insurance, business travel insurance, or automobile insurance, under which a colorable claim for coverage in any manner (*e.g.*, primary, pro-rata, or excess liability coverage or medical expense coverage) might be made for unpaid wages, damages, penalties, attorneys' fees, costs, claims, or actions of the nature asserted in this litigation.

**REQUEST NO. 66:**

All documents constituting or relating to Defendant's policies, procedures, or practices concerning the retention and preservation of documents or data pertaining to payroll, timekeeping, personnel, and human resources information during the FLSA Collective Time Period.

**REQUEST NO. 67:**

All documents constituting or relating to Defendant's policies, procedures, or practices concerning the retention and preservation of documents or data pertaining to payroll, timekeeping, personnel, and human resources information during the Class Time Period.

**REQUEST NO. 68:**

All statements, questionnaires, affidavits and/or declarations Defendant has collected from any person or company with respect to this litigation.

**REQUEST NO. 69:**

All documents that Defendant believes support its defenses in this lawsuit.

**REQUEST NO. 70:**

All payroll records, including compensation records, payroll files (hard copy and electronic), pay-stubs, and tax documents (such as W-2s and 1099s) for Named Plaintiff Vladimir Amaraut, as well as all opt-in plaintiffs.

**REQUEST NO. 71:**

All timesheets or time records for Named Plaintiff Vladimir Amaraut, as well as all opt-in plaintiffs.

**REQUEST NO. 72:**

All documents identified in Defendant's initial disclosures and any supplemental disclosures.

**REQUEST NO. 73:**

All documents concerning Defendant's investigations into the allegations asserted in this case.

**REQUEST NO. 74:**

All organizational or flow charts or other documents pertaining to the corporate structure or hierarchy of Defendant, including any documents identifying corporate officers, other managerial employees, subsidiaries, predecessors, and/or parent companies.

**REQUEST NO. 75:**

Any documents relating to Defendant's settlement(s) with any Putative Class Member or Putative Collective Member arising out of wage-and-hour issues that are similar to those raised in Plaintiff's Complaint.

**REQUEST NO. 76:**

Any documents relating to releases of claims alleged in this action signed by Putative Class Members or Putative Collective Members.

**REQUEST NO. 77:**

All documents identified in response to Plaintiff's Interrogatories, Set One propounded on Defendant, or non-privileged documents that relate to the subject matter of those Interrogatories, and any supplemental Interrogatories.

**REQUEST NO. 78:**

All documents relating to Defendant's methodologies for compensating Plaintiff and Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 79:**

All documents relating to Defendant's methodologies for compensating Plaintiff and Putative Class Members during the Class Time Period.

**REQUEST NO. 80:**

All documents relating to Defendant's policies, practices, and procedures for reimbursing Plaintiff and Putative Class Members' business expenses during the Class Time Period.

**REQUEST NO. 81:**

All documents reflecting Plaintiff and Putative Class Members' requests for business expense reimbursement during the Class Time Period, including but not limited to Defendant's responses to said requests and any payment(s) Defendant made in response to said requests.

**REQUEST NO. 82:**

All documents relating to Defendant's policies, practices, and procedures for reimbursing Plaintiff and Putative Collective Members' business expenses during the FLSA Collective Time Period.

**REQUEST NO. 83:**

All documents reflecting Plaintiff and Putative Collective Members' requests for business expense reimbursement during the FLSA Collective Time Period, including but not limited to Defendant's responses to said requests and any payment(s) Defendant made in response to said requests.

**REQUEST NO. 84:**

All documents relating to Defendant's policies, practices, and procedures for making deductions from the wages of Plaintiff and Putative Class Members' during the Class Time Period.

**REQUEST NO. 85:**

All documents relating to Defendant's policies, practices, and procedures for making deductions from the wages of Plaintiff and Putative Collective Members' during the FLSA Collective Time Period.

**REQUEST NO. 86:**

All documents relating to Defendant's policies, practices, and procedures for appeals of commission chargebacks by Plaintiff and Putative Class Members' during the Class Time Period.

**REQUEST NO. 87:**

All documents relating to Defendant's policies, practices, and procedures for appeals of commission chargebacks by Plaintiff and Putative Collective Members' during the FLSA Collective Time Period.

**REQUEST NO. 88:**

All policies and procedures related to usage of personal telephones by Putative Collective Members were required to use while working for Defendant during the FLSA Collective Time Period.

**REQUEST NO. 89:**

All policies and procedures related to usage of personal telephones by Putative Class Members were required to use while working for Defendant during the Class Time Period.

**REQUEST NO. 90:**

All security camera footage and/or data of Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 91:**

All security camera footage and/or data of Putative Class Members during the Class Time Period.

**REQUEST NO. 92:**

All security records regarding the arrival and/or departure times for Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 93:**

All security records regarding the arrival and/or departure times for Putative Class Members during the Class Time Period.

**REQUEST NO. 94:**

All documents reflecting attendance at trainings for Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 95:**

All documents reflecting attendance at trainings for Putative Class Members during the Class Time Period.

**REQUEST NO. 96:**

All documents relating to new hire paperwork for Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 97:**

All documents relating to new hire paperwork for Putative Class Members during the Class Time Period.

**REQUEST NO. 98:**

All orientation documents for Putative Collective Members during the FLSA Collective Time Period.

**REQUEST NO. 99:**

All orientation documents for Putative Class Members during the Class Time Period.

**REQUEST NO. 100:**

All electronic communications sent to or sent by Plaintiff or any opt-in plaintiffs during the Relevant Time Periods. This includes, without limitation: all emails sent to email accounts for which Plaintiff or opt-in plaintiffs had sole or shared responsibility, such as company email accounts, email accounts for Plaintiff's or opt-in plaintiffs' work locations, any email accounts assigned to Plaintiff or opt-in plaintiffs by Defendant, or Plaintiff's or opt-in plaintiffs' personal email accounts.

**REQUEST NO. 101:**

All emails and communications to or from any of Defendant's employees (including by Plaintiff, Putative Class Members, and Putative Collective Members), managers, supervisors, executives, principals, or agents that include any of the following terms:

- Overtime
- OT
- Over-time
- Double-time
- "Double time"
- DT
- Pre-shift
- "pre shift"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Post-shift
- "post shift"
- "Off the clock"
- Off-the-clock
- Time w/10 discrepanc!
- Pay! w/10 discrepanc!
- Missing w/10 pay
- Missing w/10 time
- Missing w/10 hour~
- Pay! w/10 issue~
- Pay! w/10 mistake~
- Pay! w/10 problem
- Pay! w/10 adjust!
- Miss! w/10 meal~
- Miss! w/10 break~
- Miss! w/10 rest!
- Miss! w/10 travel
- Meal w/10 "on duty"
- Lunch w/10 "on duty"
- Lunch w/10 "on site"
- Meal w/10 "on site"
- Meal w/10 no!
- Meal w/10 location
- Meal w/10 "time card"
- Meal w/10 "time sheet"
- Meal w/10 sheet
- Meal w/10 card

- Mean w/10 include!
- lunch w/10 location
- lunch w/10 "time card"
- lunch w/10 "time sheet"
- lunch w/10 sheet
- lunch w/10 card
- lunch w/10 include!
- break w/10 location
- break w/10 "time card"
- break w/10 "time sheet"
- break w/10 sheet
- break w/10 card
- break w/10 include!
- Lunch w/10 no!
- Break w/10 "on duty"
- Break w/10 no!
- Break w/10 "on site"
- Payroll w/10 complain!
- Meal w/10 complain!
- Rest w/10 complain!
- Lunch w/10 complain!
- Break w/10 complain!
- Expen! w/10 complain!
- Reimburs! w/10 complain!
- Unpaid w/10 time
- Unpaid w/10 hour~
- Late w/10 work

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-MDD

| | |
|---|---|
| • Back w/10 pay | • "time card" w/10 change! |
| • Retro w/10 pay | • Card w/10 change! |
| • "Premium pay" | • "time sheet" w/10 change! |
| • "Per diem" | • Sheet w/10 change! |
| • "Second meal" | • "time card" w/10 alter |
| • "Travel time" | • Card w/10 alter |
| • "Drive time" | • "time sheet" w/10 alter |
| • "On call" | • Sheet w/10 alter |
| • On-call | • "time sheet" w/10 reduc! |
| • Retaliation | • Sheet w/10 reduc! |
| • Retaliate | • "time card" w/10 reduc! |
| • Reimburs! w/10 expen! | • Card w/10 reduc! |
| • Business w/10 expen! | • Travel w/10 expense |
| • Expense w/10 report | • Chargeback! |
| • "time card" w/10 complain! | • Reimb! w/10 expense! |
| • Card w/10 complain! | • Reimb! w/10 telephone |
| • "time sheet" w/10 complain! | • Reimb! w/10 phone |
| • Sheet w/10 complain! | • Reimb! w/10 mileage |

Date: June 25, 2019

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Carolyn H. Cottrell
David C. Leimbach
Scott L. Gordon

Attorneys for Plaintiff and the Putative

PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-MDD

1    Collective and Class
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-MDD

**EXHIBIT A:**
**PRODUCTION FORMAT AND METADATA**

1.    **Production Components.**   Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2.    **Search Parameters.** Scanned images must be OCR'd to ensure they are searchable prior to any keyword searching.  "OCR" means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a document into machine-encoded text so that the text can be indexed and searched for specific characters, words or phrases. For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.

3.    **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

4.    **Metadata Fields and Metadata File.**  Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian) |
| ALL CUSTODIAN | A semi-colon delimited list of all custodians in possession of a document |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY HH:MM:SS) |
| TO | All recipients that were included on the "To" line of the email |

| FROM | The name and email address of the sender of the email |
|---|---|
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| MD5HASH | MD5 hash value of the file |
| LOCATION | Original file path showing where the document was stored. For email, this should be the email folder path (e.g. johndoe.pst\Inbox\). For loose files, this should be the path to the file (e.g. Johndoe\Desktop\My Documents\) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment) |
| FILETYPE | The document file type (e.g. MS Word, Excel) |
| TEXTLINK | Searchable Text File Link |

EXHIBIT A TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*, Case No. 3:19-cv-00411-WQH-MDD

| NATIVELINK | Native File Link (Native Files only) |
|---|---|

5.      **TIFFs.**  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Unless exempted below, documents that exist as ESI shall be converted and produced as TIFFs.  Unless exempted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for All data and documents.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.   Each image shall be branded according to the Bates number and the agreed upon confidentiality designation.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

6.      **Text Files.**  A single text file containing OCR or extracted text shall be provided for each document, and the filename should match its respective TIFF filename.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all unsearchable, scanned or hard copy documents. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

7.      **Image Load Files / Data Load Files.**  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.  The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.   The total number of documents in a production should match the total number of records in the data load file.

8.      **Bates Numbering.**   All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

9.    **Confidentiality Designation.**  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

10.    **Redaction of Information.**  If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

11.    **Native File Productions.**  Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format.  TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files.  If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied.  Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in the Metadata list above.  A TIFF placeholder indicating that the document was provided in native format should accompany the database record.  If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

12.    **Proprietary Files.**  To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information.  The parties shall meet and confer to finalize the appropriate production format.

1     13.    **Production Media.**  Documents shall be produced on external hard

2 drives, readily accessible computer(s) or other electronic media ("Production

3 Media").  Each piece of Production Media shall identify a production number

4 corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as

5 the volume of the material in that production (e.g. "-001," "-002").  Each piece of

6 Production Media shall also identify: (1) the producing party's name; (2) the

7 production date; (3) the Bates Number range of the materials contained on the

8 Production Media; and (4) the set(s) of requests for production for which the

9 documents are being produced.

7

EXHIBIT A TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, SET ONE
*Amaraut v. Sprint/United Management Company*, Case No. 3:19-cv-00411-WQH-MDD

# EXHIBIT "9"

Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

Attorneys for Plaintiff and the Putative
Collective and Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR AMARAUT, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>Sprint/United Management Company,<br><br>     Defendants. | Case No.: 3:19-cv-00411-WQH-WMD<br><br>**PLAINTIFF'S SPECIAL INTERROGATORIES TO DEFENDANT, SET ONE**<br><br><br>Date action filed: February 28, 2019<br>Judge: William Q. Hayes |

| | |
|---|---|
| PROPOUNDING PARTY: | Plaintiff Vladimir Amaraut |
| RESPONDING PARTY: | Sprint/United Management Company |
| SET NO.: | One |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Vladimir Amaraut, on behalf of himself and all others similarly situated ("Plaintiff"), hereby requests that Defendant Sprint/United Management Company ("Defendant") respond to Plaintiff's Special Interrogatories, Set One, by serving its written responses and any objections upon Plaintiff's Counsel at the offices of Schneider Wallace Cottrell Konecky Wotkyns LLP, 2000 Powell Street, Suite 1400, Emeryville, California 94608, to the attention of Carolyn Hunt Cottrell, within thirty days after being served with these interrogatories.

## INSTRUCTIONS

1.     Nothing in these interrogatories should be construed as expanding or limiting the responding party's discovery obligations under Federal Rules of Civil Procedure 26 or 33, including Defendant's initial and supplemental disclosure obligations under Rule 26.

2.     Defendant shall answer each interrogatory separately and fully under oath.  If Defendant objects to any part of the following interrogatories, Defendant shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable.

3.     All grounds for an objection to an interrogatory shall be stated with specificity.   Any ground not stated in a timely objection is waived unless Defendant's failure to object is excused by the Court for good cause shown.

4.     If an interrogatory is defined using a term of art or other term that Defendant believes to be incorrect but Defendant understands the nature of the information requested, Defendant shall respond to the interrogatory notwithstanding the semantic or definitional error.

1    5.    For any response that Defendant requests be derived or ascertained
2  from Defendant's business records, Defendant shall specify the records from which
3  the answer may be derived or ascertained with sufficient detail to permit Plaintiff to
4  locate and to identify the information as readily as Defendant is able to do.   In
5  addition, Defendant must afford Plaintiff reasonable opportunity to examine, audit,
6  or inspect such records and to make copies, compilations, abstracts, or summaries
7  based on the same.

8    6.    Defendant's responses shall be signed by the person making them and
9  the objections signed by the attorney making them.

10    7.    These interrogatories are continuing in nature, so as to require you to
11  file supplementary answers as and when you obtain further or different information.

12                              **DEFINITIONS**

13    The following terms shall have the following meanings:

14    1.    "Any" includes and encompasses all.

15    2.    "Plaintiff" means Vladimir Amaraut.

16    3.    "Defendant" means Sprint/United Management Company and/or any
17  managers, directors, administrators, officers, executives, agents, contractors,
18  fiduciaries, or other representatives of Defendant.

19    4.    "Putative Class Members" means all current and former non-exempt
20  hourly employees of Defendant working in Defendant's retail establishments
21  throughout the State of California during the time period from four years prior to
22  the filing of the complaint (February 28, 2015) until resolution of this action.

23    5.    "Putative Collective Members" means all current and former non-
24  exempt, hourly employees of Defendant working in Defendant's retail
25  establishments throughout the United States during the time period from three years
26  prior to the filing of the complaint (February 28, 2016) until resolution of this
27  action.

28

6.    "Person(s)" means any natural person or other legal entity, including, without limitation, any corporation, partnership, business, trust, agency, joint venture, or governmental organization, department, or entity.

7.    "Identify," when used in relation to a natural person, means to provide sufficient information about the person to identify that person and make arrangements for service of a subpoena, including the person's (a) full name; (b) last known employer and occupation; (c) last known business address and telephone number; (d) title and dates of service; (e) last known residence address and telephone number; and (f) last known personal email address.

8.    "Identify," when used in relation to an entity, means to provide sufficient information about the entity to identify the entity and make arrangements for service of a subpoena, including the (a) full name of the entity; (b) legal form of the entity (whether it is a corporation, partnership, etc.); (c) state of incorporation (if any); (d) date of incorporation or the date the business relationship was established; (e) address and telephone number of the headquarters; (f) address and telephone number of the principal place of business; (g) person designated for service of process; and (h) address designated for service of process.

9.    "Identify," when used in relation to a document, means to either (a) furnish a clear and legible copy of the document in question; or (b) describe the document with sufficient particularity such that a formal request or subpoena for its production may be made, including (1) the identity of the document's custodian; (2) the date(s) that the document was signed; (3) the date the document was produced (if it was not signed); (4) the identity of the document's author; (5) a summary of the nature of the document's contents; and (6) the identity of the Person whose testimony could be used to authenticate each document and who could lay the foundation for its introduction into evidence.

10.   "Describe" means to identify, express, explain, set forth, relate, recount, depict, and/or delineate.   A description of an oral or written communication includes an identification of the communicators, the date(s) of the communication, and the substance of the communication.

11.   "Relating to" means supporting, tending to support, refuting, tending to refute, or concerning (including mentioning, stating, discussing, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, comprising, reporting, pertaining to, or having any connection with or bearing upon), directly or indirectly, the matter in question.

12.   "Meal break" means any 30-minute meal period or lunch period Defendant must authorize, permit, and/or make available to its non-exempt, hourly employees to take pursuant to California Labor Code §§ 226.7 and 512 and Industrial Welfare Commission ("IWC") Wage Orders 4-2001 and 7-2001.

13.   "Rest Break" means any 10-minute rest period Defendant must authorize, permit, and/or make available to its non-exempt, hourly employees to take pursuant to California Labor Code §§ 226.7 and 512 and IWC Wage Orders 4-2001 and 7-2001.

14.   "Overtime" means any work in excess of 8 hours in a day.   It also means any work in excess of 40 hours in a week.

15.   "Double time" means any hours worked in excess of 12 hours in any workday and in excess of eight hours on the seventh consecutive workday.

16.   "Class Time Period" means the time period from February 28, 2015 to final resolution of this action.

17.   "FLSA Collective Time Period" means the time period from February 28, 2016 to final resolution of this action.

1    18.    The Class Time Period and FLSA Collective Time Period are

2  collectively referred to as the "Relevant Time Periods."

3                          **SCOPE OF DISCOVERY**

4    1.    Unless otherwise stated in a specific discovery request, these requests

5  shall be deemed to cover the time period from February 28, 2015 to final resolution

6  of this action to the extent these requests pertain to Putative Class Members; and the

7  time period from February 28, 2016 to final resolution of this action to the extent

8  these requests pertain to Putative Collective Members.

9    2.    All interrogatories phrased in either the disjunctive ("or") or

10  conjunctive ("and") or both, should be interpreted in the manner that makes

11  Defendant's response inclusive rather than exclusive.

12    3.    Pursuant to Federal Rule of Civil Procedure 26(e), these requests are

13  continuing requests and require production of all responsive information discovered

14  or prepared after your initial response to this request.

15                          **INTERROGATORIES**

16  **INTERROGATORY NO. 1:**

17    Identify all Putative Class Members, stating each individual's (a) full name;

18  (b) title and dates of employment with Defendant; (c) employment location(s) at

19  which the individual worked for Defendant; (d) last known residence, telephone

20  number, and cellular phone number; and (e) last known personal email address.

21  **INTERROGATORY NO. 2:**

22    Identify all Putative Collective Members, stating each individual's (a) full

23  name; (b) title and dates of employment with Defendant; (c) employment

24  location(s) at which the individual worked for Defendant; (d) last known residence,

25  telephone number, and cellular phone number; and (e) last known personal email

26  address.

27

28

5

PLAINTIFF'S SPECIAL INTERROGATORIES TO DEFENDANT, SET ONE,
*Amaraut v. Sprint/United Management Company*; Case No. 3:19-cv-00411-WQH-MDD

**INTERROGATORY NO. 3:**

List all job titles held by Plaintiff, Putative Class Members, and Putative Collective Members employed by Defendant in the United States during the Relevant Time Periods.

**INTERROGATORY NO. 4:**

Identify and describe, by job title, all duties performed by Plaintiff, Putative Class Members, and Putative Collective Members in the United States during the Relevant Time Periods.

**INTERROGATORY NO. 5:**

Identify all job sites within the United States where Plaintiff, Putative Class Members, and Putative Collective Members worked for Defendant during the Relevant Time Periods.

**INTERROGATORY NO. 6:**

Identify all managers, supervisors, and other individuals with supervisory authority over Plaintiff, Putative Class Members, and Putative Collective Members during the Relevant Time Periods, including the locations at which the managers, supervisors, and other individuals with supervisory authority worked, and the dates thereon.

**INTERROGATORY NO. 7:**

Describe all methods, procedures, and/or systems, electronic or otherwise, used by Defendant to record the number of hours worked by Plaintiff, Putative Class Members, and Putative Collective Members during the Relevant Time Periods.

//

//

//

**INTERROGATORY NO. 8:**

Describe Defendant's policies, practices, and procedures regarding the verification of hours worked by Plaintiff, Putative Class Members, and Putative Collective Members during the Relevant Time Periods.

**INTERROGATORY NO. 9:**

Describe all methods used to monitor whether meal breaks are made available to Plaintiff and Putative Class Members.

**INTERROGATORY NO. 10:**

Describe all methods used to monitor whether rest breaks are made available to Plaintiff and Putative Class Members.

**INTERROGATORY NO. 11:**

Describe Defendant's policies, practices, and procedures relating to the calculation of compensation, including but not limited to compensation at the regular/hourly rate, piece rate, per diem, overtime rate, minimum wage, premium pay, training time, travel time, commissions, bonuses, and work-related expenses, for Plaintiff, Putative Class Members, and Putative Collective Members during the Relevant Time Periods.

**INTERROGATORY NO. 12:**

Describe Defendant's policies, practices, and procedures relating to Plaintiff, Putative Class Members, and Putative Collective Members clocking in and out for their shifts when they work opening and closing shifts at Defendant's retail establishments, during the Relevant Time Periods.

**INTERROGATORY NO. 13:**

Describe Defendant's policies, practices, and procedures relating to chargebacks of commissions paid or owing to Plaintiff, Putative Class Members, and Putative Collective Members during the Relevant Time Periods, including but

1  not limited to Defendant's policies, practices, and procedures pertaining to
2  challenges or appeals of chargebacks of commissions.

3  **INTERROGATORY NO. 14:**

4       Describe Defendant's policies, practices, and procedures relating to
5  submission of reimbursement requests for work-related expenses borne by Plaintiff,
6  Putative Class Members, and Putative Collective Members during the Relevant
7  Time Periods.

8  **INTERROGATORY NO. 15:**

9       Identify each denial of an allegation and each special or affirmative defense
10  set forth in Defendant's Answer to Plaintiffs' Collective and Class Action
11  Complaint and for each: (a) state all facts upon which the denial or special or
12  affirmative defense is based; (b) state the name, address, and telephone number of
13  all persons who have knowledge of those facts; (c) identify all documents and all
14  other tangible things, that support Defendant's denial or special affirmative defense;
15  and (d) state the name, address, and telephone number of the person who has each
16  document.

17  **INTERROGATORY NO. 16:**

18       Identify all complaints, investigations, and reviews (including, but not limited
19  to, investigations, audits, inspections, examinations, research, and/or any other
20  internal reviews) regarding Defendant's timekeeping, overtime work, meal and rest
21  breaks, and wage policies and/or practices applicable to Plaintiff, Putative Class
22  Members, and Putative Collective Members during the Relevant Time Periods. For
23  each, identify: (1) who initiated the complaint, investigation, or review (i.e.,
24  employee, manager); (2) the details of the complaint, investigation, or review
25  (including the subject, cause, scope, and purpose); (3) the store location and job
26  titles that were involved; (4) the dates of the complaint, investigation, or review;
27  and (5) the outcome or resolution of the complaint, investigation, or review.

28

1    **INTERROGATORY NO. 17:**

2       Identify and describe any all changes Defendant has made to its policies,

3 practices, and procedures for Putative Class Members and Putative Collective

4 Members relating to timekeeping, meal and rest breaks, and work performed during

5 opening and closing shifts since the resolution of *Guilbaud v. Sprint* (Northern

6 District of California, Case No. 3:13-cv-04357), *Bui v. Sprint* (Eastern District of

7 California, Case No. 2:14-cv-02461-TLN-AC), *Rubio v. Sprint* (Central District of

8 California, Case No. 2:17-cv-02231-SVW-GJS), and any other wage and hour class

9 and collective actions filed against Defendant in the last 10 years.

10

11    Date: June 25, 2019           Respectfully submitted,

12                        SCHNEIDER WALLACE

13                        COTTRELL KONECKY
                       WOTKYNS LLP

14

15

16                        Carolyn H. Cottrell

17                        David C. Leimbach
                       Scott L. Gordon

18

19                        Attorneys for Plaintiff and the Putative
                       Collective and Class

20

21

22

23

24

25

26

27

28

PLAINTIFF'S SPECIAL INTERROGATORIES TO DEFENDANT, SET ONE,
*Amaraut v. Sprint/United Management Company*, Case No. 3:19-cv-00411-WQH-MDD

# EXHIBIT "10"

1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    OLIVIA GUILBAUD, et al.,

8              Plaintiffs,                          **Lead Case**

9         v.                                        Case No.  13-cv-04357-VC

10   SPRINT/UNITED MANAGEMENT CO.,
     INC.,

11             Defendant.

12

13   MICHAEL SMITH,                                 *Consolidated with*

14             Plaintiff,                           Case No.  14-cv-02642-VC

15        v.

16   SPRINT/UNITED MANAGEMENT          **ORDER GRANTING IN PART**
     COMPANY,                          **PLAINTIFFS' MOTION FOR**
17                                     **CONDITIONAL CERTIFICATION**
               Defendant.             Re: Dkt. No. 53

18

19

20

21         The plaintiffs in these consolidated cases, current and former staff at Defendant

22   Sprint/United Management Company ("Sprint") retail stores, move for conditional certification to

23   proceed as an opt-in collective action pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards

24   Act ("FLSA").  The motion is granted in part.

25         Certification of collective actions under the FLSA generally proceed in two stages.  At

26   the initial stage, the Court determines only whether the plaintiffs are "similarly situated," deciding

27   whether a collective action should be certified for the purpose of sending notice of the action to

28   potential class members. *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1203 (N.D. Cal.

United States District Court
Northern District of California

2013).

> Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. The court then must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.

*Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (citations omitted).

"Because [FLSA] class members must opt-in, the standards for certifying a conditional FLSA class are considerably less stringent than those for Rule 23 classes." *Brewer v. Gen. Nutrition Corp.*, 11-CV-03587 YGR, 2013 WL 100195, at *2 (N.D. Cal. Jan. 7, 2013); *see also Ramirez*, 941 F. Supp. 2d at 1203 (explaining that "[e]ven at that second stage, the showing that must be made for collective actions is less stringent than what is required under Federal Rule of Civil Procedure Rule 23."). Although certification is not automatic, the plaintiffs' burden is nonetheless a light one. *See Ramirez*, 941 F. Supp. 2d at 1205. "Courts typically require nothing more than substantial allegations, supported by declarations or discovery, to establish that the putative class members were together the victims of a single decision, policy, or plan." *Brewer*, 2013 WL 100195, at *3 (internal quotation marks omitted); *see also Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (explaining that the determination whether to certify a conditional class "is made based on a fairly lenient standard").

Here, the plaintiffs have satisfied their burden of making "substantial allegations" and a "modest factual showing" that Sprint retail store sales staff were subject to a common practice or policy that violated the FLSA. *See Brewer*, 2013 WL 100195, at *3. The plaintiffs allege that Sprint required staff in its retail stores to perform work before clocking in, during scheduled unpaid meal breaks, and after clocking out, for which they were not compensated. In support of these allegations, the plaintiffs submitted declarations from Retail Consultants, Lead Retail Consultants, and Assistant Store Managers who worked in Sprint retail stores in California, Florida, Illinois, Maryland, New York, Ohio, and Virginia. They also submitted the declaration of a former District Manager who was responsible for between 8 to 12 Sprint retail stores in Northern

United States District Court
Northern District of California

2

California.  Each of these workers stated in his or her declaration that he or she was forced to

perform uncompensated work before, during, and/or after his or her shift.  These declarants

uniformly stated that they received no training on how to adjust their reported time to account for

this additional work and/or that they had never seen any written policy that allowed Sprint

employees to complain about discrepancies in their pay or to obtain adjustments based on work

performed off the clock.  *See Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp. 2d 987,

996 (C.D. Cal. 2008) ("The consistency of the statements in the various declarations submitted by

Plaintiffs is sufficient to satisfy a modest factual showing that they were similarly situated, in that

they routinely worked unpaid overtime in violation of the FLSA.").  And the former District

Manager stated in his declaration that Sprint retail store employees were regularly required to

perform work before they could clock in for the day, and that, "[w]hile there was a method by

which Store Managers could edit their subordinates' timesheets to account for uncompensated pre-

shift duties, if they made too many of such 'manual' changes, they would appear on a 'manual

override' warning report, which led to questioning by either me or the District Store Operations

Manager."  Anglin Decl. ¶ 6.

　　　　In response, Sprint submitted declarations from a number of retail store employees stating

that, throughout their employment with Sprint, they were correctly paid for all the time they

worked, and that they were able to adjust their time to account for any work performed during

times when they were clocked out.  Sprint also submitted declarations from managers who stated

that it is Sprint's policy to pay for all time worked, and to make adjustments for any off-the-clock

work.  Sprint also submitted documents detailing Sprint's official policies with respect to pay

practices and timekeeping training.  But at this early stage, the allegations and the evidence

submitted by the plaintiffs raise sufficient questions about whether Sprint deviated, as a matter of

common practice, from its official policies such that plaintiffs have met their burden for

conditional certification.  Sprint may resubmit its declarations at the second stage.  It is at "that

point [that] the court must make a [more rigorous] factual determination as to the propriety and

scope of the class." *Ramirez*, 941 F. Supp. 2d at 1203 (internal quotation marks omitted).

　　　　However, the Court agrees with Sprint that the plaintiffs' proposed class is overbroad.  The

United States District Court
Northern District of California

3

United States District Court
Northern District of California

plaintiffs seek conditional certification of a collection of employees defined as "All current and former non-exempt hourly employees of Defendant working in Defendant's retail establishments throughout the United States during the time period three years prior to the filing of the original complaint, September 19, 2013, until resolution of this action." Consol. Compl. at ¶ 44. But while the allegations in plaintiffs' Consolidated Complaint refer generally to Sprint's treatment of non-exempt hourly employees working in its retail stores, the declarations that the plaintiffs submitted in support of their motion for conditional certification speak only to the treatment of retail *sales* staff, whereas Sprint also employs hourly-paid technical employees in its retail stores. The plaintiffs have offered no evidence to support their allegations that all hourly retail store employees—including both sales and technical staff—were subject to the same treatment by Sprint. Absent even a modest factual showing to support the allegations in the Consolidated Complaint with respect to technical support staff, the plaintiffs are unable to make the required showing to certify an FLSA class with respect to these job categories.

Accordingly, the Court grants in part the motion to certify a FLSA collective action. The Court's certification of the class is conditional and is for purposes of notification only. Under the FLSA, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). For collective actions, a cause of action is considered to be "commenced" for opt-in plaintiffs on the date when "written consent to become a party plaintiff is filed in the court." 29 C.F.R. § 790.21. Therefore, the Court certifies a collective covering a period extending back three years from the date of this Order.[1]

In order to facilitate notice, the plaintiffs request the names of potential collective members, along with their last known mailing addresses, email addresses, telephone numbers, and social security numbers. The plaintiffs have not adequately explained why telephone numbers or

---

[1] The plaintiffs have requested that the Court toll the statute of limitations for opt-in plaintiffs as of June 30, 2014, the date by which Plaintiffs requested that Sprint provide the proposed collective members' identities and contact information. However, federal courts extend equitable tolling only sparingly, typically in situations "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The Court does not find that Sprint's objection to the plaintiffs request for the proposed collective members' contact information constituted misconduct. The Court therefore declines to equitably toll the statute of limitations at this stage.

4

United States District Court
Northern District of California

1   social security numbers would be necessary to provide notice to potential collective members, and

2   the Court finds that names, last known mailing addresses, and email addresses will be sufficient.

3   Sprint must provide this information for all current and former hourly-paid sales staff who worked

4   at a Sprint retail store at any time during the three-year collective period.  If Sprint possesses both

5   personal and work email addresses for the potential collective members, it should provide both.

6   The opt-in period shall be 90 days from the date the notice is sent.

7          Parties shall meet and confer and attempt to agree upon a joint proposed notice in

8   conformance with the Court's decision on this motion.  If the parties fail to agree on a proposed

9   notice, they may submit separate proposals no later than October 10, 2014.   The plaintiffs shall

10  bear the full cost of disseminating the notice.

11

12          **IT IS SO ORDERED**.

13  Dated:  October 3, 2014

14  _____

15  VINCE CHHABRIA
    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

5

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 3:13-cv-04357-VC Guilbaud et al v. Sprint Nextel Corporation et al Order on Motion to Certify Class |
| **Date:** | Friday, October 03, 2014 2:59:13 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

## U.S. District Court

## California Northern District

### Notice of Electronic Filing

The following transaction was entered on 10/3/2014 at 2:58 PM and filed on 10/3/2014
**Case Name:** Guilbaud et al v. Sprint Nextel Corporation et al
**Case Number:** 3:13-cv-04357-VC
**Filer:**
**Document Number:** 79

**Docket Text:**
**ORDER by Judge Vince Chhabria granting in part and denying in part [53] Motion to Certify Class (knm, COURT STAFF) (Filed on 10/3/2014)**

**3:13-cv-04357-VC Notice has been electronically mailed to:**

**Carolyn Hunt Cottrell** ccottrell@schneiderwallace.com, efilings@schneiderwallace.com, nsmith@schneiderwallace.com

**John Glugoski** jglugoski@righettilaw.com

**John Arthur Van Hook** jvanhook@mcguirewoods.com, dsoto@mcguirewoods.com

**Matthew Righetti** matt@righettilaw.com, jglugoski@righettilaw.com, joan@righettilaw.com, melissa@righettilaw.com, mike@righettilaw.com, stella@righettilaw.com

**Matthew C. Kane** mkane@mcguirewoods.com, dsoto@mcguirewoods.com, revey@mcguirewoods.com, rmorrissette@mcguirewoods.com

**Michael C. Righetti** mike@righettilaw.com

**Michael David Mandel** mmandel@mcguirewoods.com, dsoto@mcguirewoods.com, rmorrissette@mcguirewoods.com

**Nicole Nellessen Coon** ncoon@schneiderwallace.com

**Richard A. Hoyer** rhoyer@hoyerlaw.com

**Ryan L. Hicks** rhicks@hoyerlaw.com

**Sabrina Alexis Beldner**     sbeldner@mcguirewoods.com,
mwhitney@mcguirewoods.com

**Todd Michael Schneider**     tschneider@schneiderwallace.com,
efilings@schneiderwallace.com

**Truc T Nguyen**     tnguyen@mcguirewoods.com,
rmorrissette@mcguirewoods.com

**3:13-cv-04357-VC Please see Local Rule 5-5; Notice has NOT been
electronically mailed to:**

**The following document(s) are associated with this transaction:**

**Document description:Main Document**
**Original filename:G:\VCALL\_ECFReady\13-cv-04357-vc-
order_granting_plaintiffs_motion_for_class_cert_final.635472904871083763.pdf**

**Electronic document Stamp:**
**[STAMP CANDStamp_ID=977336130 [Date=10/3/2014]
[FileNumber=11050277-0]
[5996a2f246e0d70cad68f108c3865eeedd4d497db04cc80ddff7f4e33e039b89dc1b**

**04a64684aee9434f48e99b781eac4f5158812d8b476a5fa8b2d664cf74c3]]**

# EXHIBIT "11"

| | |
|---|---|
| **From:** | Nalbandyan, Hovannes "Hovik" |
| **To:** | "David C. Leimbach"; "Scott L. Gordon"; "Carolyn H. Cottrell"; "Gregg Shavitz"; "Michael Palitz"; "Tamra Givens" |
| **Cc:** | Patajo, Emily T. |
| **Subject:** | RE: Amaraut, et al. v. Sprint - List of Individual to Be Excluded From Receiving FLSA Notice |
| **Date:** | Wednesday, December 4, 2019 4:07:00 PM |
| **Attachments:** | image001.png |
| | image003.png |

Counsel:

The list of excluded individuals from the Collective List will be sent shortly by Secure FTP.

The relevant actions, with the number of excluded individuals, are as follows:

1. *Drouillard v. Sprint/United Management Company*, U.S. District Court, Eastern District of New York, Case. No. 2:16-cv-00624(ADS)(ATK) – **106 individual excluded**;
2. *Oliphant v. Sprint/United Management Company,* U.S. District Court, Nebraska District Court, Case No.: 8:18-cv-00353 – **56 individuals excluded**;
3. *Tharpe v. Sprint/United Management Company,* Los Angeles County Superior Court, Case No. BC644645 – **1,600 individuals excluded**;
4. *Rubio v. Sprint/United Management Company,* U.S. District Court, Central District of California, Case No. 2:17-cv-02231-SVW-GJS – **348 individuals excluded** ; and
5. Individual Settlements (please refer to the list) – **11 individuals excluded.**

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071

---

**From:** Nalbandyan, Hovannes "Hovik"
**Sent:** Wednesday, December 4, 2019 12:41 PM
**To:** 'David C. Leimbach' <DLeimbach@schneiderwallace.com>; Scott L. Gordon <sgordon@schneiderwallace.com>; Carolyn H. Cottrell <ccottrell@schneiderwallace.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Michael Palitz <mpalitz@shavitzlaw.com>; Tamra Givens <tgivens@shavitzlaw.com>
**Cc:** Patajo, Emily T. <EPatajo@littler.com>
**Subject:** Amaraut, et al. v. Sprint - List of Individual to Be Excluded From Receiving FLSA Notice

Dear Counsel:

Subject to the Court's order (Dckt. #48, relevant excerpt below), we will shortly forward the list of individuals who have opted in and/or released claims in prior actions,  the name of the underlying actions, along with the number of excluded individuals per lawsuit identified.

The Notice and Opt-In Consent Form will not be sent to any individuals who are otherwise within the proposed Collective definition set forth herein who 1) have opted into other FLSA actions encompassing the same claims and time period as in this case; and/or (2) have fully released their FLSA claims as part of class or collective action settlements ("excluded individuals"). Defendant will identify to Plaintiffs each action in which excluded individuals have opted in and/or release claims, along with the number of excluded individuals per each lawsuit identified.

We will have it for you later today. Thank you.

Sincerely,

Hovik

**Hovannes "Hovik" Nalbandyan**
Attorney at Law
213.443.4279 direct, 213.947.1328 fax
HNalbandyan@littler.com



Labor & Employment Law Solutions | Local Everywhere
633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071