UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VLADIMIR AMARAUT, on behalf of
himself and all others similarly situated,
et al.,

                              Plaintiffs,

v.

SPRINT/UNITED MANAGEMENT
COMPANY,

                              Defendant.

Case No.:  3:19-cv-411-WQH-AHG

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS**

**[ECF No. 64]**

Before the Court is Plaintiffs Vladimir Amaraut, Katherine Almonte, Corbin Beltz, Kristopher Fox, Dylan McCollum, and Quinn Myers's (collectively "Plaintiffs") Motion for Sanctions and Corrective Measures pursuant to Federal Rules of Civil Procedure 11 and 16 and Local Rule 83.1. ECF No. 64. This matter was referred to the undersigned by District Judge William Q. Hayes. ECF No. 86. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

1

## I. BACKGROUND

On November 1, 2019, Plaintiffs filed their First Amended Collective and Class Action Complaint against Defendant Sprint/United Management Company ("Defendant"). ECF No. 45-1. There, Plaintiffs brought a hybrid collective and class action: an "opt-in" collective action for FLSA claims and an "opt-out" state-specific class action for state law wage and hour claims. *Id*. The same day, the parties filed a Joint Motion to Conditionally Certify the Collective and Facilitate Notice Pursuant to 29 U.S.C. § 216(b). ECF No. 46. On November 4, 2019, the Court issued an Order granting the Parties' Joint Motion. ECF No. 48 (hereinafter, "Court's November 4th Order"). On November 14, 2019, Plaintiffs filed their Notice of the Proposed Notice Administrator Selection. ECF No. 49. On November 18, 2019, the Court issued an Order appointing Heffler Claims Group for the purpose of facilitating notice to the conditionally-certified Collective. ECF No. 51.

On December 17, 2019, Plaintiffs filed the instant Motion for Sanctions and Corrective Measures. ECF No. 64. Defendant filed a timely Opposition on December 27, 2019, and Plaintiffs filed a timely Reply on January 3, 2020. ECF Nos. 72, 80. On January 23, 2020, Plaintiffs filed a Supplemental Declaration in support of their motion for sanctions (ECF No. 98), and on January 24, 2020, Defendant likewise filed its own Supplemental Declaration in support of its opposition (ECF No. 101). This order follows.

## II. LEGAL STANDARD

"[T]he district court has a broad array of sanctions options at its disposal," including Rules 11 and 16 of the Federal Rules of Civil Procedure and the Court's inherent authority. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) (citing *Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 2001) (holding that sanctions may be imposed under the court's inherent authority for "bad faith" actions by counsel, "which includes a broad range of willful improper conduct")).

By signing, filing, submitting, or later advocating a pleading or motion, an attorney has certified that it was not presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation. FED R. CIV. P. 11(b)(1). If the Court determines that Rule 11 has been violated, the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED R. CIV. P. 11(c)(1). "[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), *superseded by statute on other grounds*. Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id*. (quotation omitted). "Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11." *Christian*, 286 F.3d at 1131.

Rule 11 places "stringent notice and filing requirements on parties seeking sanctions." *Holgate v. Baldwin*, 425 F. 3d 671, 677 (9th Cir. 2005). Rule 11 contains a "safe harbor" provision, which requires a party seeking sanctions "to give the opposing party 21 days to withdraw or otherwise correct the offending paper" before filing the motion for sanctions. *Id.* at 678 (internal quotations omitted); FED. R. CIV. P. 11(c)(1)(A). The Ninth Circuit has warned that "[w]e enforce this safe harbor provision strictly." *Holgate*, 425 F. 3d at 677; *see Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998); *Davis v. San Diego Cty. Sheriff Dep't*, No. 18cv866-WQH-JLB, 2018 WL 3861910, at *4 (S.D. Cal. Aug. 14, 2018) (denying motion for sanctions and explaining that "[t]he Court of Appeals for the Ninth Circuit enforces the safe harbor provision strictly, and must reverse the award of sanctions when the challenging party fails to comply with the safe harbor provisions") (internal quotations and brackets omitted).

Rule 16 of the Federal Rules of Civil Procedure provides, in relevant part, that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C). The court "must order" the party "to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance

with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 16(f)(2). Rule 16(f) does not apply to all court orders; it applies only to a scheduling order or an order issued after a pretrial conference that "recit[es] the action taken [and] controls the course of the action." FED. R. CIV. P. 16(d); *see Canon Solutions Am. v. Gungap*, No. SACV 14-1990-JLS-RNBx, 2016 U.S. Dist. LEXIS 190647, at *11 (C.D. Cal. Feb. 8, 2016) (explaining that a "pretrial order" as defined in Rule 16 is "a specific type of order entered at the close of the pretrial conference that defin[es] and clarif[ies] the issues to be tried, limit[s] the trial to those contested issues, and limit[s] discovery").

Under the Court's inherent power, the court may levy sanctions for "'willful disobedience of a court order'" or when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink*, 239 F.3d at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 776 (1980)); *see also* CivLR 83.1(a) ("Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions"). The Court's "authority to impose sanctions under its inherent powers is broad, but not limitless." *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1132 (9th Cir. 2008). The Court's inherent power "is 'both broader and narrower than other means of imposing sanctions.' [] On the one hand, the inherent power 'extends to a full range of litigation abuses.' On the other, the litigant must have 'engaged in bad faith or willful disobedience of a court's order.'" *Fink*, 239 F.3d at 992 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991)). A "willful" violation of a court order "does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "Before awarding [monetary] sanctions under its inherent powers, however, the court must

make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express*, 447 U.S. at 767). An explicit finding of bad faith "is especially critical when the court uses its inherent powers to engage in fee-shifting." *Primus Auto. Fin. Servs.*, 115 F.3d at 648 (noting that a "court's inherent power to impose attorney's fees as a sanction [is limited] to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders."). Bad faith can be established "by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Id*. (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

## III.  DISCUSSION

On November 4, 2019, the Court granted the Parties' Joint Motion to Conditionally Certify the Collective and Facilitate Notice Pursuant to 29 U.S.C. § 216(b). ECF No. 48. Since the parties' interpretations of the Court's November 4th Order are at issue in the instant motion, the Court will set forth the relevant portions of the order here:

> Within fourteen (14) days of this Order, Defendant shall provide the Notice Administrator with a computer-readable data file containing the names, job titles, last known mailing addresses, personal e-mail addresses on file with the company at sprint.com/careers (to the extent available), and social security numbers (last four digits only) of all Collective members . . . . This information is subject to the Protective Order entered in this action . . . .
> . . .
> The Court will appoint a third-party notice administrator ("Administrator") to mail and email the proposed Notice and Opt-In Consent Form to all persons identified in Defendant's list. Plaintiffs shall propose the Administrator to the Court within five (5) days of the date of this Order and shall meet and confer with Defendant regarding the selection before then . . . . The Notice and Opt-In Consent Form shall be sent by the Administrator via: (1) first class mail, and (2) email . . . .
> . . .
> The Notice and Opt-In Consent Form will not be sent to any individuals who are otherwise within the proposed Collective definition set forth herein who (1) have opted into other FLSA actions encompassing the same claims and time period as in this case; and/or (2) have fully released their FLSA claims as part of class or collective action settlements ("excluded individuals").

5

Defendant will identify to Plaintiffs each action in which excluded individuals have opted in and/or released claims, along with the number of excluded individuals per each lawsuit identified.

*Id.* at 5–6.

### A. Rule 11 Sanctions

Plaintiffs allege that, by certifying that "Defendant shall provide the Notice Administrator with . . . personal e-mail addresses on file with the company at sprint.com/careers (to the extent available)" in its Joint Motion for Conditional Certification (ECF No. 46 at 4), Defendant presented a motion to the Court for an improper purpose, in violation of Rule 11. ECF No. 80 at 11. However, the Court need not decide the merits of Plaintiffs' allegations because Plaintiffs have failed to show that they complied with Rule 11's safe harbor provision. *See* ECF No. 64-1 at 29 (certificate of service indicating that the motion was served on Defendant on the same day it was filed).

On November 22, 2019, when Defendant had not yet provided the contact information to the Notice Administrator, Plaintiffs' counsel warned Defendant's counsel: "[i]f Sprint commits any additional violations of [the Court's November 4th] Order, Plaintiff will seek sanctions." ECF No. 64-3 at 368. Plaintiffs' counsel further warned: "based on your email, Plaintiff anticipates seeking monetary and corrective sanctions." *Id.* On Tuesday, December 10, 2019, Plaintiffs' counsel again emailed Defendant's counsel:

"We are finalizing our moving papers in seeking corrective and monetary sanctions for Sprint's refusal to abide by the Parties' stipulation on conditional certification and the Court's Order thereon. We expect to file by no later than close of business on Friday. Before we do, we would like to offer you one final opportunity to resolve the matter informally and without the Court's intervention. By no later than close of business on Thursday, December 12, 2019, let us know whether you will agree to the following corrective measures: . . ."

*Id.* at 402. These informal warnings do not satisfy Rule 11's safe harbor provision. *Barber*, 146 F.3d at 710–11 (reversing an award of sanctions and concluding that, although a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11

sanctions, these warnings did not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing); *see also Wild Game NG, LLC v. Wong's Int'l (USA) Corp.*, 329 Fed. App'x 131, 131 (9th Cir. 2009) (summarily reversing an award of sanctions because "[i]nformal warnings threatening to seek Rule 11 sanctions are not enough" to comply with Rule 11's safe harbor provision); *Heredia v. Allstate Indem. Co*., No. 15cv1642-WQH-RBB, 2015 WL 6828682, at *4 (S.D. Cal. Nov. 6, 2015) (denying motion for sanctions filed on August 25 because, though the defendant's counsel sent a letter on August 13 stating that if plaintiff didn't act by August 18, defendant could move for Rule 11 sanctions, the twelve-day notice via informal letter did not meet the "strict" 21-day safe harbor *service* requirement).

Thus, regardless of whether Defendant filed any paper with the Court that was baseless or filed for an improper purpose, Rule 11 sanctions do not apply. *See, e.g.*, *Holgate*, 425 F. 3d at 677 (reversing an award of sanctions because the movant failed to comply with the safe harbor provision, even though the respondent's filing was frivolous and otherwise sanctionable); *cf. Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (reversing an award of sanctions because the movant failed to comply with the safe harbor provision, and the fact that three months passed between the motion and the Court's Order was insufficient to provide the notice and opportunity to withdraw that Rule 11 requires). Accordingly, Plaintiffs' motion for Rule 11 sanctions is **DENIED**.

**B. Rule 16 Sanctions**

Plaintiffs allege that Rule 16 sanctions are warranted because Defendant violated the Court's November 4th Order, which conditionally certified the collective. ECF No. 48. That Order was issued in response to the Parties' Joint Motion to Conditionally Certify the Collective and Facilitate Notice Pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 46, 48. Thus, it is not a scheduling order or pretrial order. *See Canon Solutions Am.*, 2016 U.S. Dist. LEXIS 190647, at *11 (explaining that a "pretrial order" as defined in Rule 16 is "a specific type of order entered at the close of the pretrial conference"). Accordingly, Rule

16 does not apply and Plaintiffs' motion for Rule 16 sanctions is **DENIED**. *See* Fed. R. Civ. P. 16(d) (applying to only scheduling orders or pretrial orders).

### C. Inherent Authority to Issue Sanctions

Plaintiffs requests that the Court utilize its inherent authority to issue sanctions because Defendants failed to comply with the Court's November 4th Order in two ways: (1) Defendants failed to comply with the timing requirements of the order in not producing personal email addresses to the Notice Administrator by November 18, 2019; and (2) Defendants failed to comply with the substantive requirements of the order and did not produce the personal email addresses "to the extent available." The Court will address these in turn.

### 1. Failure to Comply with Timing Requirements of Court Order

Defendant produced personal email addresses to the Notice Administrator on December 6, 2019. ECF No. 72 at 17. Plaintiffs argue that this action alone warrants sanctions because the email addresses were to be produced to the Notice Administrator by November 18, 2019. ECF No. 64-1 at 17–18. The Court disagrees.

Both Plaintiffs and Defendant failed to comply with the Court's November 4th Order. The first step in the notice-dissemination process, after the Court issued its November 4th Order, was for Plaintiffs to meet and confer with Defendant regarding selection of the notice administrator and to propose the notice administrator to the Court by November 9, 2019. ECF No. 48 at 6. Plaintiffs failed to comply. Plaintiffs did not propose the notice administrator to the Court until November 14, 2019. ECF No. 49. With no opposition from Defendant, the Court approved Heffler Claims Group as notice administrator on November 18, 2019 (ECF No. 51), the same day the Defendant was required to provide personal email addresses of Collective members, among other contact information, to the Notice Administrator. ECF No. 48 at 5. Defendant failed to comply, and did not provide any contact information to the Notice Administrator until December 4, 2019, and did not provide email addresses until December 6, 2019. ECF No. 72 at 17.

Defendant argues that it did not violate the Court's November 4th Order. Defendant contends that the Court's November 4th Order required Defendants to produce the contact information to the Notice Administrator within fourteen days after two conditions precedent had been satisfied: (1) appointment of the Notice Administrator, and (2) entry of a protective order. ECF No. 72 at 13–17. Defendants argue that, since the Notice Administrator was appointed on November 18, 2020 (ECF No. 51), and the protective order was entered on November 26, 2019 (ECF No. 54), its production of contact information on December 6, 2019, ten days after the protective order was entered, was well within the Court's deadline.[1] ECF No. 72 at 15–17. The Court disagrees. The issuance of a protective order was not a precondition to Defendant providing the Notice Administrator with the Collective data. ECF No. 48 at 5 (implementing requirements of *how*, not when, the Collective data would be used, i.e., pursuant to a protective order and used only by the Notice Administrator for dissemination of notice).

---

[1] The Court notes that Defendant has held inconsistent positions on this issue. In a November 20, 2019 email to Plaintiffs' counsel, Defendant's counsel stated:

> Based on the Joint Motion [for conditional certification] the parties filed, it was our understanding that the 14-days to produce the collective list would be triggered from the day the Court appoints an Order assigning the Notice Administrator. The term "Order" was not defined, and due to the structure of the paragraphs, we scheduled our timeline based on this understanding. This logically makes sense, as we can't produce a collective list to a Notice Administrator if there is no Notice Administrator assigned. Accordingly, we are operating on a production deadline of **December 2, 2019** (e.g., 14 days from the November 18 order date).

ECF No. 64-3 at 369 (emphasis added). Defendant later noted that it "will need [a protective order] filed and granted by the Court before anything is produced." *Id*. at 370. That protective order was entered on November 26, 2019, well before their envisioned deadline. *See* ECF No. 54.

However, based on Plaintiffs' delay in proposing the notice administrator to the Court, and Defendant's production of the Collective data shortly after the protective order was in place, the Court cannot determine that Defendant acted with "bad faith" in providing the Collective data to the Notice Administrator on December 4 and 6, 2019. Accordingly, Plaintiffs' motion for sanctions regarding Defendant's delayed production of personal email addresses to the Notice Administrator is **DENIED**.

### 2. Failure to Comply with Substantive Requirements of Court Order

By ordering Defendant[2] to produce personal email addresses "to the extent available," the Court required Defendant to produce personal email addresses *in its possession, custody, or control*, not just those that were readily accessible. To have possession, custody, or control does not require *actual* possession, custody, or control. *See TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14cv2021-W-BLM, 2017 WL 1008788, at *2 (S.D. Cal. Mar. 15, 2017); *Soto v. City of Concord*, 162 F.R.D. 603, 619–20 (N.D. Cal. 1995). "Property is deemed within a party's possession, custody, or control if the party has . . . the legal right to obtain the property on demand." *Stone v. Vasquez*, No. 05cv1377-JAT, 2009 WL 2581338, at *1–*2 (E.D. Cal. Aug. 20, 2009) (quoting *Thomas v. Hickman*, No. 06cv215-AWI-SMS, 2007 WL 4302974, at *13–*14 (E.D. Cal. 2007)); *see United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents on demand"); *Goolsby v. County of San Diego*, No. 17cv564-WQH-NLS, 2019 WL 3891128,

---

[2] The Court notes that in its November 4th Order, it ordered production of personal email addresses "to the extent available" *to Defendant*, not to Defendant's counsel. ECF No. 48. Thus, any argument that personal email addresses were unavailable because telephone numbers were not provided to Defendant's counsel will not be considered. *See, e.g.*, ECF No. 101 at 2 (representing that "[p]rior to the production of telephone numbers [on January 16, 2020, in response to the Court's order granting Plaintiffs' motion to compel], *Defendant's counsel* only had employee ID numbers, names, and last known addresses from the Collective List to match personal emails from the sprint.com/career repository.") (emphasis added).

3:19-cv-411-WQH-AHG

at *4 (S.D. Cal. Aug. 19, 2019) (same). For example, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *TetraVue, Inc.*, 2017 WL 1008788, at *2 (quoting *Soto*, 162 F.R.D. at 619–20).

Moreover, "the fact that Defendant may have to expend time and energy to retrieve the documents does not make the documents inaccessible or outside of Defendant's control." *Nutrition Distrib. LLC v. PEP Research, LLC*, No. 16cv2328-WQH-BLM, 2018 WL 1245052, at *6 (S.D. Cal. Mar. 9, 2018). A party "is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control." *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006).

By December 6, 2019, Defendant provided the Notice Administrator personal email addresses for 7,983 of the over 33,000 Collective members. ECF No. 98 at 3. Before the Parties filed the Joint Motion to Conditionally Certify the Collective and Facilitate Notice (ECF No. 46), counsel for Plaintiffs made clear that notice by either email or text message is "non-negotiable." ECF No. 64-3 at 243 (stating that "[i]f there are email addresses for the Collective, we will agree to mail and email notice, and forego text message notice. If there are not sufficient email addresses for the Collective as you say, or for some reason Sprint will have difficulty obtaining this information, then notice must go out by mail and text message. But we require either text or email notice"). Counsel for Defendant confirmed "that [Defendant] can obtain personal emails from sprint.com/careers repository,"[3] and Defendant would "agree to produce those e-mails to the Notice

---

[3] The Court notes that Defendant originally held a hardline position, now proven false, that it did not have personal email addresses. On October 10, 2019, in negotiations over conditional certification, counsel for Defendant told counsel for Plaintiffs that "Sprint does not ask for or have personal e-mail addresses." ECF No. 64-3 at 143. On October 17, 2019, counsel for Plaintiffs responded: "[w]e know this is incorrect. Sprint's standard employment application, available on Sprint's main webpage, asks for [personal email addresses]." *Id*. at 156. In response, counsel for Defendant reiterated that, "[b]ased on our understanding, Sprint does not keep track of employee's personal e-mail addresses." *Id*. at

Administrator." *Id*. On December 3, 2019, however, counsel for Defendant told counsel for Plaintiffs that Defendant would likely be able to produce personal email addresses for a "severely limited" number of Collective members, for reasons including that "[t]he sorting process has proven to be very cumbersome, as there is no unique identifier to match the applicant with the putative collective member[.]" *Id*. at 391. Defendant represents that, at the time of the November 4th Order, Defendant's counsel only had access to employee ID numbers, names, and last known addresses from the Collective List. ECF No. 101 at 2. Since using names and last known addresses did not yield "certainty" in matching personal email addresses to the appropriate individual, the "employee IDs were the only unique identifier in both datasets that guaranteed the correct email address was being matched to the appropriate individual." ECF No. 101 at 3. Thus, in December 2019, Defendant's data analytics team prepared the personal email list for the Notice Administrator pursuant to the Court's November 4th Order, using employee ID numbers to match personal emails from the sprint.com/careers repository. *Id*. at 2–3.

However, there was another way that Defendant could have matched the applicant with the putative collective member: using employee ID numbers and telephone numbers. Defendant represents that, in January 2020, by using telephone numbers in addition to employee ID numbers, it was able to match an additional 18,962 personal email addresses. *Id*. at 3. Defendant contends that the telephone numbers had not been pulled in December because "they were not required to be provided to the Notice Administrator," and the corresponding personal email addresses found using those telephone numbers were therefore "not available." *Id*. at 2–3. The reason these telephone numbers were pulled in

218. However, a few days later, "[a]fter additional scrutiny regarding the issue, Sprint confirmed that it can obtain personal emails from sprint.com/careers repository. We will agree to produce those e-mails to the Notice Administrator." *Id*. at 214. As discussed below, this conduct, combined with its representations regarding its production of 26,945 personal email addresses in compliance with the Court's order granting Plaintiff's motion to compel, demonstrates a desire to avoid or delay production of personal email addresses.

January was because the Court granted Plaintiffs' motion to compel and ordered Defendant to produce them. *Id.* at 2; ECF No. 91.

The Court finds that the additional personal email addresses were, in fact, available to Defendant. First, in ordering Defendant to produce personal email addresses to the Notice Administrator "to the extent available," the Court ordered Defendant to make a reasonable inquiry to locate information in its possession, custody, or control. *See A. Farber & Ptnrs., Inc.*, 234 F.R.D. at 189 (concluding that the defendant had not made a reasonable inquiry and therefore had not produced all documents in his possession, custody, or control). It is clear that Defendant did not make a reasonable inquiry. The Court ordered Defendant to provide the Notice Administrator with personal email addresses within fourteen days. ECF No. 48. However, it only took two days to pull telephone numbers for the entire Collective List, and another four days to use those telephone numbers to match personal email addresses. ECF No. 101 at 2–3 (pulling telephone numbers on January 16, 2020 after being ordered to on January 14, 2020, and matching email addresses on January 21, 2020 after giving those telephone numbers to the data analytics group on January 17, 2020). Therefore, it only took six days, less than half of the fourteen days allowed by the Court, to match the personal email addresses. This shows that the personal email addresses were reasonably accessible, relatively easy to locate, and fell within the Court's "to the extent available" caveat.

Second, Defendant's argument that these additional personal email addresses were "newly acquired" is unavailing. Because the telephone numbers had not been pulled as of December 2019,[4] does not make the matching personal email addresses unavailable.

---

[4] Plaintiffs propounded discovery requests for, among other things, telephone numbers on June 25, 2019. ECF No. 69-1 at 3. In its order compelling production, finding that Defendant had no legal basis to have withheld production, the Court stated that Defendant's failure to demonstrate how *Williams* was distinguishable from this case "le[ft] the Court with the distinct impression that Defendant's objection was based on a desire to delay production, and not a good faith belief or argument that *Williams* can in fact be

*Nutrition Distrib.*, 2018 WL 1245052, at *6 ("the fact that Defendant may have to expend time and energy to retrieve the documents does not make the documents inaccessible or outside of Defendant's control"). Even had the Court not ordered Defendant to produce the telephone numbers to Plaintiffs in its order granting Plaintiffs' motion to compel, the telephone numbers (and by proxy, the personal email addresses) were still available, and were within Defendant's possession, custody, or control. *See Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d at 1452 ("Control is defined as the legal right to obtain documents on demand."). Here, Defendant's January 21, 2020 production of 26,945 personal email addresses on from members of the Collective shows that these email addresses were in its control. *See, e.g.*, *Nutrition Distrib.*, 2018 WL 1245052, at *6 (concluding that the defendant's representation that it was "engaged in the process of obtaining additional information it can from third parties" indicated "that there are responsive documents over which Defendant has control or legal right to access"). Though, at that time, Defendant had not been ordered to provide telephone numbers to the Notice Administrator, it could have easily used them to provide the required email addresses.

Here, by failing to make a reasonable inquiry to find personal email addresses clearly within its possession, custody, and control, Defendant failed to comply with that portion of the Order. The next point in the Court's analysis is whether Defendant's failure is sanctionable.

The "court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith. A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions." *Evon*, 688 F.3d at 1035.

---

distinguished." ECF No. 91 at 12, 15 n.5. Additionally, the Court notes that using the telephone numbers to obtain personal email addresses does not require production of those telephone numbers to Plaintiffs or the Notice Administrator.

Defendant cites *Korff v. City of Phoenix* for the proposition that "sanctions are inappropriate where—as here—a party's actions were based on a reasonable interpretation of a court order."[5] ECF No. 72 at 26 (citing *Korff v. City of Phoenix*, No. 13cv2317-PHX-ESW, 2016 WL 1242523, at *4 (D. Ariz. Mar. 29, 2016)). There, a party misinterpreted the court's scheduling order, which allowed for updating and supplementing expert reports, and attempted to secure additional discovery from a non-party after the deadline to conduct discovery had passed. *Id*. The Court gave the party "the benefit of the doubt as to her interpretation of the Court's Order[,]" and did not award attorney fees sanctions. *Id*. However, *Korff* is distinguishable from the case at bar and thus is not persuasive to this Court. First, and most importantly, the sanctions at issue in *Korff* were based on Rule 16, the failure to comply with a scheduling order, and not the Court's inherent authority, as is the case here. *Id*. at *3–*4. Second, though Defendant's late production may have been based on a reasonable interpretation of the Court's November 4th Order, its failure to produce personal email addresses that were clearly available to Defendant via reasonable inquiry was not.

Defendant also cites *Gomez v. Vernon* for the proposition that the Court's "inherent authority applies *only* in cases of 'willful disobedience of a court order or when the losing

---

[5] Similarly, Defendant cites *SolarCity v. Doria* for the proposition that "*denying sanctions where* 'Plaintiff failed to establish by clear and convincing evidence that Defendant Doria's disclosure was not based on a good faith interpretation of the Protective Order.'" ECF No. 72 at 26 (quoting *SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 4204024, at *10 (S.D. Cal. Sept. 4, 2018)) (emphasis added). Though terminating sanctions, Rule 11, and Rule 30 sanctions were denied in that case, they were not denied because of the defendant's good faith interpretation of a protective order. *SolarCity Corp.*, 2018 WL 4204024, at *2–*6, *9–*10, *13. The quotation used by Defendant was instead taken from the court's denial to find the defendant *in contempt* of court, which requires satisfying three elements: (1) the contemnor violated a court order, (2) the contemnor did not substantially comply with the order, and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order. *Id*. at *9. As with *Korff*, the sanctions at issue in *SolarCity* are distinguishable from the sanctions based on the Court's inherent authority in the instant case, and thus *SolarCity* is not persuasive to this Court.

15

party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as well as for willful abuse of the judicial processes.'" ECF No. 72 at 26 (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001)) (emphasis added). However, this is not entirely correct. In *Gomez*, the Ninth Circuit affirmed the sanctions imposed by the district court and went on to explain "that inherent-power sanctions [must] be preceded by a finding of bad faith, or conduct tantamount to bad faith. [] Under this standard, although recklessness, of itself, does not justify the imposition of sanctions, sanctions are available when recklessness is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.' [] Sanctions, then, are justified 'when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection.'" *Gomez*, 255 F.3d at 1134 (quoting *Fink*, 239 F.3d at 992–94). Here, the Court finds that, in blatantly failing to comply with the Court's November 4th Order, Defendant acted recklessly. Further, the record indicates that Defendant's failure to make a reasonable inquiry and provide personal email addresses that were within its possession and control was done for an improper purpose: to delay proceedings and gain a tactical advantage over Plaintiffs with regard to the *Navarette* Settlement. For example, Defendant's misrepresentations regarding ability to produce personal email addresses (*see supra* n.3), combined with its representations regarding its production of 26,945 personal email addresses in compliance with the Court's January order granting Plaintiff's motion to compel, demonstrates a desire to avoid or delay production of personal email addresses. The Court finds that Defendant's reckless disregard for the Court's Order and improper purpose are tantamount to bad faith. Therefore, sanctions are appropriate.

Alternatively, even if the Court had not found that Defendant's actions were tantamount to bad faith, sanctions would still be appropriate because Defendant violated the Court's November 4th Order willfully. "[I]t is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon*, 688 F.3d at 1035 (finding that sanctions were appropriate because the party acted willfully: "Dahlberg knew that the

protective order was in place . . . Dahlberg, himself, sought the protective order . . . Dahlberg characterizes the failure to comply with the sanctions order as 'inadvertent' but what he really means is that on the day of the filing, he realized that compliance with the protective order would cause him additional time and work, and he chose not to comply"). Here, as in *Evon*, Defendant negotiated with Plaintiffs to craft their joint motion for conditional certification and thus the terms were of its own making. However, when faced with difficulty, Defendant deliberately chose not to provide all the personal email addresses in its possession, custody, or control by using telephone numbers it had access to.

Further, it is clear from the record that Plaintiffs held a hardline position that either personal email notice or text message notice was mandatory, and in accepting Defendant's offer of providing personal email addresses, it would forgo requesting text message notice. ECF No. 80 at 5. While negotiating the terms of the joint motion for conditional certification, Defendant confirmed that it could obtain personal email addresses, so Plaintiff withdrew their request for text message notice. ECF No. 64-3 at 214 (on October 23, 2019, Defendant's counsel represented that, "[a]fter additional scrutiny regarding the issue, Sprint confirmed that it can obtain personal emails from sprint.com/careers repository. We will agree to produce those e-mails to the Notice Administrator"). However, after the Court conditionally certified the Collective based upon the parties' negotiated joint motion, Defendant willfully tried to delay notice dissemination by withholding personal email addresses, which would force notice to be disseminated only by U.S. Mail. For example, on December 3, 2019, counsel for Defendant explained to counsel for Plaintiffs that the reason Defendant would only be able to produce personal email addresses for a "severely limited" number of Collective members was because "there is no unique identifier to match the applicant with the putative collective member[.]" ECF No. 64-3 at 391; *see also* ECF No. 64-3 at 377 (on November 20, 2019, Defendant's counsel also represented that "[d]ue to the repository not assigning a unique identifier to applicants when they apply for a position, Sprint cannot use an EE ID# [] to pull personal e-mails"). This representation was false: there were at least two ways to match personal email

addresses with certainty. First, Defendant's counsel's own declaration to the Court states that "employee IDs were the only unique identifier in both datasets that guaranteed the correct e-mail address was being matched to the appropriate individual." ECF No. 101 at 3. Second, Defendant's counsel also declared that "by using both employee IDs and telephone numbers, Defendant's counsel was able to match . . . personal e-mails with certainty." *Id*. at 3. The Court finds that Defendant's behavior was willful, and thus sanctionable, but also as noted above, its actions were for an improper purpose of delaying notice.

Therefore, the Plaintiffs' motion for sanctions regarding Defendant's failure to produce personal email addresses "to the extent available" is **GRANTED**.

### 3. Sanctions and Corrective Measures

Since the Court has deemed that sanctions are appropriate regarding Defendant's willful defiance of a Court Order and failure to produce personal email addresses "to the extent available," the Court will next address the type of sanctions to be imposed. "Under their inherent authority, courts have broad discretion to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Voskanyan v. L.A. Sheriffs Dep't*, No. 15cv62559-MWF-KES, 2019 U.S. Dist. LEXIS 108106, at *3 (C.D. Cal. June 27, 2019) (quoting *Chambers*, 501 U.S. at 44–45). Though "it is important for courts to have sufficient tools to control the behavior of litigants[,] . . . '[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.'" *Mendez*, 540 F.3d at 1133 (quoting *Roadway Express*, 447 U.S. at 764). Therefore, the Court will narrowly tailor its corrective measures to the Defendant's sanctionable conduct.

Defendants argue that corrective or coercive measures are unnecessary. ECF No. 72 at 27. Plaintiffs request the Court order that (1) Defendant immediately provide the Notice Administrator with all personal email addresses in its possession; (2) Defendant immediately provide the notice administrator with work email addresses for current employees for whom Defendant does not have personal email addresses; (3) all Collective

18

members receive text message notice, or that notice be given via text message to all individuals that are not current employees and for whom Defendant does not have personal email addresses; (4) the claims of Collective members are tolled from the date full notice was to be disseminated, on November 25, 2019, until the date that email and/or text notice is completed; (5) the opt-in period for Collective members does not begin until email and/or text notice is completed; (6) Defendant is deemed to have waived any argument that any Collective members should be excluded from receiving notice as a result of a prior settlement and must immediately provide the notice administrator with contact information for the 2,121 excluded individuals; (7) Defendant bear any additional costs of notice administration authorized by the Court; and (8) monetary sanctions be imposed against Defendant, comprised of attorney fees and costs. ECF No. 64-1 at 27–28. The Court will address these in turn.

### a. Plaintiffs' Request that Defendant Immediately Provide the Notice Administrator with all Personal Email Addresses in its Possession

For the reasons set forth above, to facilitate complete compliance with the Court's November 4th Order, the Court **ORDERS** Defendant to produce all personal email addresses within its possession, custody, or control (including, but not limited to, the 26,945 personal email addresses produced to Plaintiff pursuant to the Court's order granting Plaintiffs' motion to compel) to the Notice Administrator by **April 6, 2020.** In accordance with the Court's November 4th Order, the Notice and Opt-In Consent Form shall be sent by the Notice Administrator via these personal email addresses "within seven (7) days of receipt of the [contact information], or as soon thereafter as practicable. The Notice shall provide a website address where persons identified in Defendant's list may obtain an electronic version of the Notice and submit an electronic version of the Opt-In Consent Form." ECF No. 48 at 6.

/ /

/ /

### b. Plaintiffs' Request that Defendant Immediately Provide the Notice Administrator with Work Email Addresses for Current Employees for whom Defendant does not have Personal Email Addresses

On December 20, 2019, days after the instant motion was filed, Defendant produced work email addresses for current employees within the Collective to the Notice Administrator. ECF No. 80 at 6. Therefore, Plaintiff's request is **DENIED AS MOOT**.

On December 30, 2019, the Notice Administrator disseminated notice to 32,976 work email addresses provided by Defendant. ECF No. 98 at 4. However, of those produced, 8,408 were delivered, while 24,568 were undeliverable. *Id.* Currently, Defendant has produced 26,945 personal email addresses to Plaintiffs out of the 35,000-member Collective, excluding 2,121. ECF No. 98 at 4; ECF No. 64-1 at 17. This leaves approximately 5,934 Collective members for whom notice will potentially only be achieved through U.S. Mail. Plaintiff failed to provide information with regard to whether the 8,408 operating work email addresses gave notice to the 5,934 potentially-left-out Collective members. Without more, the Court declines to grant this corrective measure, and instead denies it as moot without prejudice.

### c. Plaintiffs' Request that all Collective Members Receive Text Message Notice, or that Notice be Given via Text Message to All Individuals that are not Current Employees and for whom Defendant does not have Personal Email Addresses

"The FLSA requires the Court to provide potential class members 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate[,]'" using "the best notice practicable under the circumstances." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492 (E.D. Cal. 2006) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); FED. R. CIV. P. 23(c)(2)(B). "The Court has authority and discretion to monitor the preparation and distribution of the notice[.]" *Cuevas v. ConAm Mgmt. Corp.*, No. 18cv1189-GPC-LL, 2019 WL 5320544, at *6 (S.D. Cal. Oct. 21, 2019) (quoting *Hoffmann-La Roche, Inc.*, 493 U.S. at 172).

"Now, email [is] regularly utilized by the masses, and may, in fact, be more reliable than mailing addresses, particularly for former employees who may have moved residences." *Knight v. Concentrix Corp.*, No. 18cv7101-KAW, 2019 WL 3503052, at *5 (N.D. Cal. Aug. 1, 2019). Accordingly, courts are increasingly requiring an alternative method of notice to U.S. Mail. *Id.* at *5–*6 (ordering that notice "be disseminated using both U.S. Mail and e-mail" and noting call center employees' transient nature); *Deatrick v. Securitas Sec. Servs. USA*, No. 13cv5016-JST, 2014 WL 5358723, at *5 (N.D. Cal. Oct. 20, 2014) ("The Court is persuaded that notice by mail, including the issuance of reminder postcards and telephone numbers to facilitate tracing potential class members if mailings are returned as undeliverable, is the most appropriate method to effectuate notice in this case"); *Benedict v. Hewlett-Packard Co.*, No. 13cv1119-LHK, 2014 U.S. Dist. LEXIS 18594, at *60, *63 (N.D. Cal. Feb. 13, 2014) (ordering that notice be disseminated "via first-class mail and email," rejecting the defendant's argument that "anyone who wanted to join or be contacted could have done so or could do so in response to a mailed notice"). However, not all courts require email or alternative notice. *See, e.g.*, *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015) (ordering that notice be provided by U.S. Mail, and not via email, because "mailing addresses will provide the best means of contact"); *Hart v. U.S. Bank NA*, No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *6 (D. Ariz. Nov. 8, 2013) ("the Court sees no reason why sending notice exclusively via U.S. mail (and not also by email) would not be appropriate in this case. . . . Here, the best practicable notice is first class mail. The Court sees no reason why such notice is inadequate. . . . As a result, the Court does not authorize Plaintiff to send notice via email, as Plaintiff requests").

In light of the Court's order above that at least 18,962 more Collective members be notified via their personal email address (26,945 in total), the Court finds that sending text messages to all Collective members would be duplicative and not narrowly tailored. The standard is to provide "the best notice practicable under the circumstances," and Plaintiff does not argue that text messages are better than personal emails, in fact, Plaintiffs

considered them interchangeable. *See, e.g.*, ECF No. 64-3 at 345 (stating that "[i]f Sprint agrees to notice by e-mail, we will not seek notice by text message"). Thus, Plaintiff's request all Collective members receive text message notice is **DENIED**.

The parties extensively negotiated their joint motion for conditional certification. *See* ECF No. 64-3. Though email or text message notice was a "non-negotiable" for Plaintiffs, they did not include any backups or alternatives in the joint motion should the personal email addresses not be available. *See e.g.*, *Deatrick*, 2014 WL 5358723, at *5 (fashioning notice to be "by mail, including the issuance of reminder postcards and telephone numbers to facilitate tracing potential class members if mailings are returned as undeliverable"). However, the Court appreciates Plaintiffs' argument that "it would not [have] ma[d]e the concessions it made with Defendant in the stipulation to conditional certification if notice would not be given via either personal email or text message." ECF No. 64-1 at 21–22; *see* ECF No. 64-3 at 243 (stating that "[i]f there are email addresses for the Collective, we will agree to mail and email notice, and forego text message notice. If there are not sufficient email addresses for the Collective as you say, or for some reason Sprint will have difficulty obtaining this information, then notice must go out by mail and text message. But we require either text or email notice"). Given Defendant's evasive tactics regarding email notice (*see, e.g.*, ECF No. 64-3 at 143, 156, 214, 218) and willful behavior in withholding personal email addresses within its possession, custody, and control, Plaintiffs' request that notice be given via text message to all individuals that are not current employees and for whom Defendant does not have personal email addresses is **GRANTED**. The Court **ORDERS** Defendant to produce phone numbers of Collective members who are both (1) not current employees and (2) for whom Defendant does not have personal email addresses, to the Notice Administrator by **April 6, 2020.** In accordance with the Court's November 4th Order, the Notice and Opt-In Consent Form shall be sent by the Notice Administrator via text message to these phone numbers "within seven (7) days of receipt of the [contact information]. The Notice shall provide a website address

3:19-cv-411-WQH-AHG

where persons identified in Defendant's list may obtain an electronic version of the Notice and submit an electronic version of the Opt-In Consent Form." ECF No. 48 at 6.

### d. Plaintiffs' Request that the Claims of Collective Members are tolled from the Date Full Notice was to be Disseminated, on November 25, 2019, until the Date that Email and/or Text Notice is Completed

The FLSA provides for a two-year statute of limitations for FLSA violations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In a FLSA collective action, statute of limitations runs until a valid consent is filed. 29 U.S.C. § 256(b).

"Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiffs control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). "Equitable tolling is extended sparingly[.]" *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). District courts are split on the issue of whether, in the context of a FLSA collective-action, a defendant's refusal to provide contact information for potential plaintiffs is a sufficient reason to equitably toll the statute of limitations. *Compare, e.g.*, *Adedapoidle-Tyehimba v. Crunch, LLC*, No. 13-cv-00225-WHO, 2013 WL 4082137, at *8 (N.D. Cal. Aug. 9, 2013) (finding that defendants' refusal to provide contact information for potential plaintiffs was not a basis for equitably tolling the statute of limitations) *with Ribot v. Farmers Ins. Group*, No. CV 11-02404-DDP-FMOx, 2013 WL 3778784, at *16–*17 (C.D. Cal. July 17, 2013) (finding equitable tolling appropriate where the defendant refused to provide potential plaintiffs' contact information). "Applying equitable tolling . . . counters the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment. Faultless potential plaintiffs should not be deprived of their legal rights on the basis of a defendant's delay, calculated or otherwise." *Ribot*, 2013 WL 3778784, at *17 (quoting *Adams*, 242 F.R.D. at 543).

"[T]hose courts that find equitable tolling is appropriate usually rely on the fact that potential plaintiffs, through no fault of their own, did not receive notice of the pending action as a result of the defendant's refusal to provide contact information." *Margulies v. Tri-County Metro. Transp. Dist. of Or.*, No. 13cv475-PK, 2013 WL 5593040, at *17 (D. Or. Oct. 10, 2013). Here, though the majority of potential plaintiffs, through no fault of their own, did not receive notice *via their personal email addresses*, they still received notice via U.S. Mail, which was disseminated in December 2019. Thus, the justifications that "[t]he potential plaintiffs in this case have yet to receive notice of the action due to defendant's refusal to supply potential plaintiffs' contact information" do not apply here. *See Adams*, 242 F.R.D. at 543. Accordingly, the Court **DENIES** Plaintiff's request to toll the statute of limitations until email or text notice is completed.

### e. Plaintiffs' Request that the Opt-In Period for Collective Members does not Begin until Email and/or Text Notice is Completed

In its November 4th Order, the Court ordered that "[e]ligible persons shall be given sixty (60) days from the date on which the Notice and Opt-In Consent Form is sent via first class mail in which to return their Opt-In Consent Form." ECF No. 48 at 6. Notice was disseminated to the Collective by mail on December 13, 2019. Thus, the 60-day deadline has since passed.

Since the Court is ordering that Defendant provide the Notice Administrator with all personal email addresses within its possession, custody, or control, and phone numbers of Collective members who are not current employees and for whom Defendant does not have personal email addresses, in the interests of justice, the Court **GRANTS** Plaintiffs' request and extends the Opt-In Period, but **only** for those Collective members whose personal email addresses or phone numbers were produced to the Notice Administrator pursuant to this Order. Given the possibility they were already served via U.S. Mail, the Court **ORDERS** that eligible persons shall be given sixty (60) days from the date on which the Notice and Opt-In Consent Form is sent via email or text in which to return their Opt-In Consent Form.

3:19-cv-411-WQH-AHG

**f. Plaintiffs' Requests that Defendant is Deemed to have Waived Any Argument that Any Collective Members should be Excluded from Receiving Notice as a Result of a Prior Settlement and Must Immediately Provide the Notice Administrator with Contact Information for the 2,121 Excluded Individuals**

In its November 4th Order, the Court required that notice would not be disseminated to certain members of the collective that opted into certain FLSA actions or fully released their FLSA claims. ECF No. 48 at 6. The Court ordered Defendant to "identify to Plaintiffs each action in which excluded individuals have opted in and/or released claims, along with the number of excluded individuals per each lawsuit identified." ECF No. 48 at 6. Plaintiffs concede that Defendant complied with this order by providing Plaintiffs with a list of the names of 2,121 individuals that it excluded from the Collective roster, a list identifying the actions the individuals opted into or fully released their claims, and the number of individuals in each lawsuit. ECF No. 64-1 at 17, 17 n.1. Upon an *in camera* review of the spreadsheet sent by Defendant, and a review of the record, the Court confirms that Defendant adhered to the procedural requirements of the Court's November 4th Order. *See* Email to Chambers, March 9, 2020; ECF No. 64-3 at 381 (on December 4, 2019, Defendant's counsel emailed Plaintiff's counsel the total number of excluded individuals from four lawsuits and eleven individual settlements, including case name, court, and case number); ECF No. 72 at 23–24.

However, Plaintiffs' main contention is that Defendant did not adhere to the substantive requirements of the Court's order, and improperly excluded "a vast majority" of the individuals listed. ECF No. 64-1 at 17 n.1. Plaintiffs surmise that Defendant excluded every individual who may have released a portion of their claims, as opposed to their entire claims. *Id*. Notably, Defendant does not dispute whether it properly or improperly excluded individuals, and instead focuses its argument on whether its email to Plaintiffs complied with the Court's November 4th Order. ECF No. 72 at 24. However, Defendant does state that it "is still waiting to meet and confer on this issue, so that the Parties could determine the logistics of relaying the information[.]" *Id*.

Based on the contentions of both parties, the Court cannot determine whether Defendant complied with the substantive requirements of the Court's November 4th Order. ECF No. 48 at 6 (requiring that notice would not be disseminated to certain members of the collective that opted into certain FLSA actions or *fully released* their FLSA claims). However, upon a review of the four lawsuits at issue,[6] the Court has the impression that Plaintiffs' allegations are plausible.

The conditionally certified FLSA "class period" in the instant case spans from "three years prior to the filing of the complaint [i.e., February 28, 2016] until resolution of this action." ECF No. 48 at 3, 5. Upon a cursory review of *Drouillard*,[7] *Oliphant*,[8] *Rubio*,[9] and *Tharpe*,[10] the Court notes that the releases in the three settled cases do not include future

---

[6] The four lawsuits from which Defendant seeks to exclude members from the Collective are: (1) *Drouillard v. Sprint/United Management Company*, No. 16cv624-ADS-ATK (E.D.N.Y) (hereinafter, "*Drouillard*"); (2) *Oliphant v. Sprint/United Management Company*, No. 18cv353-JMG-MDN (D. Neb.) (hereinafter, "*Oliphant*"); (3) *Rubio v. Sprint/United Management Company*, No. 17cv2231-SVW-GJS (C.D. Cal.) (hereinafter, "*Rubio*"); and (4) *Tharpe v. Sprint/United Management Company*, No. BC644645 (L.A. Super. Ct.) (hereinafter, "*Tharpe*").

[7] In *Drouillard*, where plaintiffs alleged FLSA wage-and-hour claims (e.g., failure by Defendant to pay wages, minimum wages, or overtime), the lawsuit commenced on February 5, 2016, and the class period lasted from February 5, 2010 to March 28, 2019. *Drouillard* ECF No. 114 at 2.

[8] In *Oliphant*, plaintiffs allege FLSA wage-and-hour claims (e.g., unpaid wages and overtime pay). *Oliphant* ECF No. 25 at 3–4. On May 20, 2019, the FLSA collective was conditionally certified, to include employees who worked for Defendant beginning in May 20, 2016. *Oliphant* ECF No. 46 at 7; *Oliphant* ECF No. 51.

[9] In *Rubio*, where plaintiffs alleged FLSA wage-and-hour claims (e.g., failure to pay wages, minimum wages, or overtime, and off-the-clock work), the lawsuit commenced on December 9, 2016, and the class period lasted from December 9, 2012 to March 3, 2017. *Rubio* ECF No. 34 at 3; *Rubio* ECF No. 27-2 at 34, 37.

[10] In *Tharpe*, the class action complaint, filed in the state court, does not allege any FLSA claims; instead it alleges a variety of California Labor Code violations and PAGA claims. *Tharpe* ECF No. 20. The lawsuit commenced on December 22, 2016, and the Class Settlement was approved on April 11, 2018. *Tharpe* ECF No. 3. The Court questions

3:19-cv-411-WQH-AHG

claims, and only include claims during their respective "class periods." *See, e.g*, *Rubio* ECF No. 34 at 6; *Drouillard* ECF No. 114 at 2. As an example, the class period in *Rubio* only overlaps with the instant case for approximately one year. *Compare* ECF No. 48 at 3, 5 (February 28, 2016 to present) *with Rubio* ECF No. 27-2 at 34 (December 9, 2012 to March 3, 2017). Thus, an employee who released her claim in *Rubio* but continued to work for Defendant would *not* be excluded from the Collective in this case because she did not *fully* release her FLSA claim. Additionally, the Court notes that the FLSA provides for a two-year statute of limitations (three years for willful violations), which further narrows the overlap of the claims here. *See* 29 U.S.C. § 255(a). Without more, the Court does not reach the merits of whether Plaintiffs' requested sanctions should be imposed. Therefore, Plaintiffs' requests are **DENIED WITHOUT PREJUDICE**.

Regarding whether Defendant properly excluded members from the Collective, the parties shall meet and confer in an attempt to resolve this issue by **March 30, 2020**. Should the parties not be able to resolve their dispute, they must jointly e-mail chambers at efile_goddard@casd.uscourts.gov by **April 1, 2020** to schedule a telephonic conference, including short, neutral summaries of each party's position and at least three proposed times mutually agreed upon by the parties for the telephonic conference.

### g. Plaintiffs' Request that Defendant Bear Any Additional Costs of Notice Administration Authorized by the Court

In its November 4th Order, the Court stated that "Plaintiffs shall pay the costs of the [Notice] Administrator, subject to claiming the costs as a reimbursable litigation expense." ECF No. 48 at 6. Had Defendant produced the personal email addresses during the first round of notice administration, the costs of notice administration would have been borne by Plaintiffs. Thus, the Court finds that ordering the Defendant to bear additional notice administrations costs is unnecessary. Accordingly, Plaintiff's request is **DENIED**.

———————————————

whether a non-FLSA settlement would include terms releasing Defendants from FLSA liability.

27

### h. Plaintiffs' Request that Monetary Sanctions be Imposed Against Defendant

In light of the corrective measures imposed above, the Court declines to issue monetary sanctions at this time. Thus, Plaintiff's request is **DENIED**. *See, e.g.*, *Mendez*, 540 F.3d at 1133 (noting that a court's inherent powers "must be exercised with restraint and discretion").

## IV.    CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    Plaintiffs' motion for Rule 11 sanctions is **DENIED**.

2.    Plaintiffs' motion for Rule 16 sanctions is **DENIED**

3.    Plaintiffs' motion for sanctions pursuant to the Court's inherent authority, regarding Defendant's delayed production of personal email addresses to the Notice Administrator, is **DENIED**.

4.    Plaintiffs' motion for sanctions pursuant to the Court's inherent authority, regarding Defendant's failure to produce personal email addresses "to the extent available," is **GRANTED**.

5.    The Court **ORDERS** Defendant to produce all personal email addresses within its possession, custody, or control (including, but not limited to, the 26,945 personal email addresses produced to Plaintiff pursuant to the Court's order granting Plaintiffs' motion to compel) to the Notice Administrator by **April 6, 2020.** The Notice and Opt-In Consent Form shall be sent by the Notice Administrator via these personal email addresses within seven (7) days of receipt of the contact information, or as soon thereafter as practicable. The Notice shall provide a website address where persons identified in Defendant's list may obtain an electronic version of the Notice and submit an electronic version of the Opt-In Consent Form.

6.    The Court **ORDERS** Defendant to produce phone numbers of Collective members who are both (1) not current employees and (2) for whom Defendant

does not have personal email addresses, to the Notice Administrator by **April 6, 2020**. The Notice and Opt-In Consent Form shall be sent by the Notice Administrator via these personal email address within seven (7) days of receipt of the contact information, or as soon thereafter as practicable. The Notice shall provide a website address where persons identified in Defendant's list may obtain an electronic version of the Notice and submit an electronic version of the Opt-In Consent Form.

7.   The Court **ORDERS** that eligible persons (those Collective members whose personal email addresses or phone numbers were produced to the Notice Administrator pursuant to this Order) shall be given sixty (60) days from the date on which the Notice and Opt-In Consent Form is sent via email or text in which to return their Opt-In Consent Form.

8.   The Court **ORDERS** the parties to meet and confer regarding whether Defendant properly excluded members from the Collective by **March 30, 2020**. Should the parties not be able to resolve their dispute, they must jointly e-mail chambers at efile_goddard@casd.uscourts.gov by **April 1, 2020** to schedule a telephonic conference, including short, neutral summaries of each party's position and at least three proposed times mutually agreed upon by the parties for the telephonic conference.

**IT IS SO ORDERED.**

Dated:  March 23, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge