UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VLADIMIR AMARAUT, on behalf of himself and all others similarly situated, et al.,

Plaintiffs,

v.

SPRINT/UNITED MANAGEMENT COMPANY,

Defendant.

Case No.: 3:19-cv-411-WQH-AHG

**ORDER DENYING DEFENDANT'S MOTION FOR ORDER LIMITING PLAINTIFFS' AND PLAINTIFFS' COUNSEL'S COMMUNICATIONS WITH CLASS AND COLLECTIVE MEMBERS**

**[ECF No. 73]**

Before the Court is Defendant Sprint/United Management Company's ("Defendant") Motion for Order Limiting Plaintiffs' and Plaintiffs' Counsel's Communication with Class and Collective Members. ECF No. 73. This matter was referred to the undersigned by District Judge William Q. Hayes. ECF No. 86. For the reasons set forth below, the Court **DENIES** Defendant's motion.

## I.  BACKGROUND

On November 1, 2019, Plaintiffs Vladimir Amaraut, Katherine Almonte, Corbin Beltz, Kristopher Fox, Dylan McCollum, and Quinn Myers's (collectively "Plaintiffs") filed their First Amended Collective and Class Action Complaint against Defendant Sprint/United Management Company ("Defendant"). ECF No. 45-1. There, Plaintiffs brought a hybrid collective and class action: an "opt-in" collective action for FLSA claims and an "opt-out" state-specific class action for state law wage and hour claims. *Id*. On December 12, 2019, Defendant filed a Notice of Settlement in two related actions, *Navarette v. Sprint/United Management Company*, No. 8:19-cv-794-AG-ADS (C.D. Cal.) and *Navarette v. Sprint/United Management Company*, No. 30-2019-01062047-CU-OE-CXC (Orange Cnty. Super. Ct.) (collectively, "*Navarette* lawsuits"), which had settled via private mediation. ECF No. 59. The same day, Defendant filed an Emergency Motion for Temporary Restraining Order (ECF No. 60), requesting that the Court halt notice administration in the instant case in light of the *Navarette* settlement, which Plaintiffs opposed (ECF No. 61) and the Court ultimately denied (ECF No. 62). On December 20, 2019, the parties filed a Joint Motion for Determination of Discovery Dispute, in which Plaintiffs sought to compel production of putative class and collective members' contact information. ECF No. 69. In anticipation that the Court would order Defendant to produce the contact information to Plaintiffs, on December 27, 2019, Defendant filed its Motion for Order Limiting Plaintiffs' and Plaintiffs' Counsel's Communications with Class and Collective Members. ECF No. 73. Though Defendant requested that the Court "consider both issues concurrently when evaluating the discovery motion," (ECF No. 74 at 3), the Court denied Defendant's request to shorten the briefing

schedule on Defendant's motion to limit Plaintiffs' and Plaintiffs' counsel's communications. ECF No. 90. On January 14, 2020, the Court issued its order resolving the parties' discovery dispute and ordered Defendant to produce contact information for the putative class and collective members to Plaintiffs. ECF No. 91. This order follows.

## II.    LEGAL STANDARD

Because of the potential for abuse in class actions, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981); *see* FED. R. CIV. P. 23(d)(1)(C) (providing courts with authority in class actions to "issue orders that . . . impose conditions on the representative parties or on intervenors"); *see also* FED. R. CIV. P. 23 advisory committee's notes to 1966 amendments (explaining that Rule 26(d) is "concerned with the fair and efficient conduct of the action"). As such, courts have the authority to limit communications between litigants and putative class members prior to class certification, subject to restrictions mandated by the First Amendment and the Federal Rules. *Gulf Oil*, 452 U.S. at 100; *Camp v. Alexander*, 300 F.R.D. 617, 620–21 (N.D. Cal. 2014) ("Where communications are misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit, they may be limited by the court, but the orders must be grounded in good cause and issued with a heightened sensitivity for the First Amendment"); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175-MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Pre-certification communications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech. . . . [but c]ourts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made").

For example, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101–02; *see, e.g.*, *In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 496

(S.D. Cal. 2008) (quoting *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997)) ("'To the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened'") (emphasis omitted).

"It is not enough that a potentially coercive situation exists. … The court cannot issue an order [limiting communication with putative class members] without evidence that a potential for serious abuse exists." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. at 496 (quoting *Burrell*, 176 F.R.D. at 244); *see Gulf Oil*, 452 U.S. at 104 (reversing the district court's order limiting communication with putative class members because "the mere possibility of abuses does not justify routine adoption of a communications ban . . . in the absence of a clear record and specific findings of need"); *Cram v. Elec. Data Sys. Corp.*, No. 07cv1842-LAB-NLS, 2008 WL 178449, at *3 (S.D. Cal. Jan. 17, 2008) ("A mere possibility of confusion is insufficient to justify the district court's exercise of supervisory authority over parties' communications with potential class members").

Should a court find that clear abuses have taken place, it "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances[,]" i.e., "'giving explicit consideration to the narrowest possible relief which would protect the respective parties.'" *Gulf Oil*, 452 U.S. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)).

## III.  DISCUSSION

Defendant seeks an order from the Court prohibiting Plaintiffs and Plaintiffs' counsel from (1) commenting in any way regarding the settlement of the *Navarrete* lawsuits; (2) providing an opinion of any kind regarding class members' rights as relates to the *Navarrete* lawsuits and settlement of those lawsuits; and (3) encouraging class members in any way to opt-out of the *Navarrete* settlement or to opt-in to the instant action.

ECF No. 73-1 at 3.[1] Plaintiffs contend that the Court should deny Defendant's requests because Defendant's motion is based on speculation and fear, when the Supreme Court requires a clear record and specific findings. ECF No. 97 at 3–4. In response, Defendant asserts that there are specific facts that warrant a limitation on communications. ECF No. 104 at 4–6.

Here, the Court will "evaluate whether Defendant[] ha[s] identified potential or actual abuses sufficient to justify the imposition of" an order limiting communications. *McEwan v. OSP Grp., L.P.*, No. 14cv2823-BEN-WVG, 2016 U.S. Dist. LEXIS 105148, at *4 (S.D. Cal. Aug. 9, 2016).

## A. Whether Defendant has Identified Actual Abuses that Warrant an Order Limiting Communications

In its reply brief, Defendant points to three statements or groups of statements made by Plaintiffs in documents filed in this action: (1) statements implying that class counsel in the *Navarette* lawsuits is ineffectual, (2) statements disparaging the *Navarette* settlement, and (3) statements indicating they plan to encourage putative class members to opt out of the *Navarette* settlement. ECF No. 104 at 6 (citing ECF No. 61 (Plaintiffs' opposition to Defendant's emergency motion for temporary restraining order)). Defendant contends that these statements are the requisite "specific facts" needed to warrant limitations on communication. *Id.*

As a threshold matter, Defendant repeatedly notes that Plaintiffs' allegedly abusive statements were made publicly. *See* ECF No. 74 at 2 ("Plaintiffs' counsel have been very vocal and public about their hostility toward the [*Navarette*] settlement"); ECF No. 104 at 2 (same); ECF No. 74 at 7 (referencing Plaintiffs' comments in "publicly filed pleadings");

---

[1] The Court notes that Plaintiffs and Defendant have cited to the page numbers affixed to the original filings. However, due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

ECF No. 104 at 6 (repeated references to Plaintiffs' comments in "publicly filed papers"); *Id*. at 11 (noting its concern about "Plaintiffs and Plaintiffs' counsel's disparaging and misleading public statements"). The Court notes that Plaintiffs' statements were in publicly-filed court documents, not in more ubiquitous mediums like newspaper articles, television advertisements, or via social media. Moreover, the fact that these statements were made publicly is not enough, on its face, to warrant a limitation on communication. *See, e.g.*, *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683–684, 683 n.24 (3d Cir. 1988)) (holding that the district court had authority to limit communications when the communications at issue were "*directly* with class members," but not with regard to the defendant's other public speech, because the district court made no findings regarding whether the "statements in regulatory and legislative proceedings … or [] communications through the mass media. . . [we]re directed at plaintiff class members, have been misleading in any way, or pose any threat to the fairness or integrity of the litigation") (emphasis in original); *Motisola Malikha Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 674, 679 (N.D. Ga. 1999) (limiting certain direct communications with putative class members, based on previous direct emails, but declining to limit communications based on public communication such as newspapers articles resulting from "in-depth interviews with the named plaintiffs and Plaintiffs' counsel[,]" "so long as no attempts are made by either side to overtly solicit participation or nonparticipation by potential class members"); *Shores v. Publix Super Mkts.*, No. 95-1192-CIV-T-25(E), 1996 WL 859985, at *1 (M.D. Fla. Nov. 25, 1996) (declining to limit communications based on public communications alone, even though "[b]oth parties have sought and obtained extensive free publicity on their respective positions in this suit. . . [including] an aggressive publicity campaign" and class members were exposed to those public communications, leaving determinations of "accuracy, fairness or bias … to the marketplace of ideas," and instead limited *direct* communication after reviewing multiple emails from the defendant to putative members of the class, noting that "there is no marketplace of ideas in the workplace" and concluding that they were "intended to discourage class members from participation in this litigation"). As such, in

examining the substance of Plaintiffs' statements, the Court will not provide undue significance to the fact that those statements were public and will instead address whether the statements were directed at putative class members.

"Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Talavera v. Leprino Foods Co.*, No. 15cv105-AWI-BAM, 2016 U.S. Dist. LEXIS 29633, at *14–*15 (E.D. Cal. Mar. 8, 2016). A court therefore "must examine 'the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *Id*. at *14–*15 (quoting *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1108–09 (D. Colo. 2013)). Therefore, the Court will address Plaintiffs' statements in context.

First, Defendant asserts that "Plaintiffs and Plaintiffs' counsel have already publicly criticized *Navarrete*'s counsel implying they are ineffectual class counsel and that a "reverse auction" occurred." ECF No. 104 at 6 (quoting ECF No. 61 at 21 ("A reverse auction is said to occur when . . .")). However, reading Plaintiffs' entire remark provides important context:

> Moreover, because Sprint has not disclosed any terms of this apparent settlement, Plaintiffs' exclusion from these settlement discussions, and given Sprint's persistent misconduct throughout this case, it is entirely reasonable to infer that a reverse auction has taken place. "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.' It has an air of mendacity about it." *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1099–1100 (9th Cir. 2008) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)).

ECF No. 61 at 21. When viewed in context, this statement does not disparage *Navarrete*'s counsel, but instead explains the potential harm involved when a defendant facing multiple

class actions chooses to settle one of the actions in a secret process that will render the other actions moot.

Second, Defendant asserts that "Plaintiffs and Plaintiffs' counsel have already misrepresented and disparaged the *Navarrete* settlement as 'collusive, reverse-auction endeavors' that 'Sprint has apparently engineered' and as 'secretive and collusive settlement discussions.'" ECF No. 104 at 6 (citing ECF No. 61 at 4, 5, 9[2]). For context, Plaintiffs' comments are provided in full[3] below:

> (1)  "Sprint has not provided any information that would suggest its collusive, reverse-auction endeavors will be endorsed by the *Navarrete* Court, and there is no basis to believe this apparent tentative settlement – whatever it may be – will be upheld." ECF No. 61 at 5.

> (2)  "Thus, even assuming the *Navarrete* Court were to, six or so months from now, approve the reverse-auction Sprint has apparently engineered – a dubious proposition, as explained in greater detail below – it cannot impact significant California-centric aspects of this case." *Id*. at 5.

> (3)  "For one, as discussed below, supra Section III.B.2, such collusive, reverse-auctioned settlements are highly unlikely to be approved. Unless another Court endorses this surreptitious, collusive settlement, no other notice will go out." *Id*. at 9.

Plaintiffs go on to cite *Litty v. Merril Lynch*, where the court denied preliminary approval of the class settlement because "while there is no evidence of overt misconduct, it is troubling that plaintiff and defendant in addition to settling plaintiff's individual claims are also sweeping into the settlement two separate cases without involving plaintiffs' counsel

---

[2] Defendant cited to "ECF No. 61, 2:14–17; 3:9–11; 3:18–19; 17:10–12." ECF No. 104 at 6. As noted above, due to discrepancies between original and imprinted page numbers, the Court has matched up Defendant's citations and has cited to page numbers imprinted by the court's electronic case filing system.

[3] Plaintiff's statement in ECF No. 61 at 4:14–17 is omitted from this list, since it is discussed below.

in those cases. Thus, on that basis alone, there is a question of whether the Settlement Agreement is the product of informed, arms-length negotiations between the parties." *Litty v. Merrill Lynch & Co.*, No. CV-14-0425-PA-PJWx, 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015); *see* ECF No. 61 at 21–22.[4]

Third, Defendant asserts that "Plaintiffs and Plaintiffs' counsel have already indicated that they will encourage the *Navarrete* putative class to opt out of the *Navarrete* settlement." ECF No. 104 at 6. There, Defendants quote one sentence written by Plaintiffs, which stated that, once putative class members receive notice of this case, they will have to make a "simple choice: allow *Navarette* to extinguish their claims, or opt out, and continue to pursue their claims in this case." *Id*. (citing ECF No. 61 at 4) (added emphasis omitted). However, reading Plaintiffs' entire remark provides important context: in their opposition to Defendant's emergency motion for temporary restraining order, Plaintiffs argue that Defendants have not met the required elements needed to obtain injunctive relief, such as that it will "suffer irreparable harm in the absence of preliminary relief[.]" ECF

---

[4] Plaintiff went on to argue:

> The same analysis will ultimately apply in these cases. Sprint concealed its attempt to settle the claims of California employees. Sprint delayed conditional certification proceedings for months, refused to comply with the terms of conditional certification when it was eventually entered, all in furtherance of a single goal: prevent Collective members from pursuing their claims or knowing about these proceedings until Sprint could settle their claims through a case that has not even been conditionally certified. In achieving this end, Sprint excluded counsel for Plaintiffs in this case – two law firms with decades of experience litigating hundreds, if not thousands, of wage and hour class actions – and instead sought to settle these claims with a law firm named James Hawkins ALPC: a firm that does not even have a website. Sprint should not be rewarded for its reverse-auction endeavors by now preventing Collective members from knowing that another case is pending that will adequately protect their interests, and stopping the statute of limitations from running on their claims.

ECF No. 61 at 22.

No. 61 at 3. In arguing that there will be no harm if the notices are sent out, Plaintiffs asserted, "Collective members will suffer no injury or confusion by receiving the Court-ordered notice." *Id*. at 3. Plaintiffs went on to argue:

> Simply, Sprint's argument that Collective member confusion will be so overwhelming as to outweigh the fact that these individuals are losing claims [due to the statute of limitations continuing to run] – property rights – on a daily basis is nonsensical. [¶] Once these individuals receive notice of these proceedings and opt in, they will also have the opportunity to review the reverse-auctioned settlement apparently reached in *Navarette*, and make a simple choice: allow *Navarette* to extinguish their claims, or opt out, and continue to pursue their claims in this case. But there is no "injury" to Collective members by allowing them to make this entirely ordinary choice. And there is certainly no harm to Sprint, which is all that matters.

*Id*. at 4.

Though it agrees that Plaintiffs' words are often strong, the Court finds that, in context, the aforementioned statements by Plaintiffs are neither abusive, misleading, or coercive. *See Finder v. Leprino Foods Co.*, No. 13cv2059-AWI-BAM, 2017 U.S. Dist. LEXIS 8346, at *16 (E.D. Cal. Jan. 20, 2017) ("While the Court acknowledges that Plaintiff's counsel's comments may consist of insinuations that cast Defendants and the supporting declarants in a negative light, those comments do not mislead employees about their rights as potential class members. [His] comments do not create confusion or seek to influence whether members opt-in or opt-out of the class"). Further, Defendant presents no evidence that Plaintiffs' statements were directed at putative class members or that the putative class members read Plaintiffs' brief (ECF No. 61), and if so, that they were confused or felt coerced. *See id.* at *6, *14, *17–*18 (declining to limit communications based on counsel's posts in a public Facebook group, which insinuated that supervisors were given promotions in exchange for providing perjured declarations in the case, because there was not evidence that members of the Facebook group were directly affected by the posts or that a chilling effect on litigation actually occurred, noting that "[plaintiff's counsel] is an advocate for his position in this law suit; a position that members can freely

take or leave"); *Camp*, 300 F.RD. at 620, 626 (declining to limit communications when the defendant had sent a letter to all employees stating that "the lawsuit is motivated by greed and other improper factors" and that the plaintiff's "attorney is seeking a very large sum of money by attempting to convince other employees to join the lawsuit," because "[a]lthough the inflammatory nature of the Employee Letter is clear on its face, Plaintiffs have not provided evidence that any particular putative class member was coerced, and the Supreme Court calls for a clear record and specific findings in order to limit communications"). The Court also notes that zealously representing their clients, alone, is not abusive, and "[u]ltimately, however, case law does not require that communications to potential class members be objective and neutral." *Finder*, 2017 U.S. Dist. LEXIS 8346, at *16 (citing *Babbitt v. Albertson's Inc.*, No. C-92-1883 SBA-PJH, 1993 WL 150300, at *3–*7 (N.D. Cal. Mar. 31, 1993)); *see Domingo v. New England Fish Co.*, 727 F.2d 1429, 1440–41, 1440 n.8 (9th Cir. 1984) (reversing district court's order limiting communications because, although "counsel may have overstepped ethical bounds in [] zealousness[,]" i.e., courtroom testimony that was inaccurate or exaggerated due to prior interviews with counsel, "[t]he advocacy system is designed to correct for excesses through response from opposing counsel, rather than through court-imposed restrictions which interfere with legal assistance to class members").

After considering Plaintiffs' statements in context, and given that there is no evidence Plaintiffs' statements directly coerced or mislead putative class members, the Court finds that Defendant has not identified actual abuses that warrant an order limiting communications.

## B. Whether Defendant has Identified Potential Abuses that Warrant an Order Limiting Communications

Having decided that Plaintiffs' statements were not abusive, misleading, or coercive, the Court will address Defendant's argument that there is a high risk of abuse.

Since "Plaintiffs' counsel have been very vocal and public about their hostility toward the [*Navarette*] settlement[,]" Defendant worries about Plaintiffs' "unfettered

channels of communication with class and collective members who have rights in the *Navarrete* settlement." ECF No. 73-1 at 2. Further, Defendant worries that "Plaintiffs will rob the class and collective members of that opportunity to make that independent choice [to decide whether to opt in to the instant case and whether to opt out or stay in the *Navarrete* settlement] if they are allowed to discuss the *Navarrete* settlement. . . If Plaintiffs are permitted to discuss the *Navarrete* lawsuits and/or settlement of those lawsuits, class and collective members will undoubtedly be subjected to misleading and/or coercive communications regarding their rights." *Id*. at 5.

Defendant's arguments harken to prior cases where the parties moving for relief failed to provide any evidence beyond mere speculation that the challenged communications with prospective class members had actual potential to be abusive, misleading, or coercive. *See, e.g.*, *Gulf Oil*, 452 U.S. at 104 (reversing the district court's order limiting communication with putative class members because "the mere possibility of abuses does not justify routine adoption of a communications ban . . . in the absence of a clear record and specific findings of need"); *Finder*, 2017 U.S. Dist. LEXIS 8346, at *16–*17 (denying request to limit communications, in part because "Defendants' purely speculative concerns regarding the prejudicial effect on employees [] therefore do not convince the court that judicial intervention is necessary here"); *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 WL 8609402, at *12 (D. Or. May 9, 2011) (declining to rule on whether to limit communications, because "at this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture"); *Cram*, 2008 WL 178449, at *3–*4 ("A mere possibility of confusion is insufficient to justify the district court's exercise of supervisory authority over parties' communications with potential class members . . . . Plaintiffs' conjecture offers no basis for specific findings the court must make before it may properly compel or restrict [] communications, particularly when they were not inherently abusive nor coercive and do not appear to have compromised the state law rights of any potential class member"); *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D.

696, 697 n.3 (S.D. Ala. 2003) ("No matter how abusive a particular communication might be if it occurs, there cannot be a 'likelihood of serious abuse' unless there is a likelihood that the feared communication will in fact occur"); *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184-K-4, 2002 WL 272384, at \*1, \*4 (E.D. La. Feb. 22, 2002) (declining to limit communications when the plaintiffs insisted that "any communication with potential class members initiated by [defendant] will misrepresent the status, purpose and effect of the action and will create impressions tending to reflect adversely on the plaintiffs' cause of action[,]" because they "provided no evidence, other than speculation, that [defendant] is attempting to coerce its employees to not participate in or opt out of the suit"); *Barnes v. Julien J. Studley, Inc.*, No. 88-1849, 1989 WL 27405, at \*2 (D.D.C. Mar. 13, 1989) (declining to limit communications based on the "possibility of abusive tactics" because, since the plaintiff had not yet contacted any potential class member, "the abuse of which [defendant] complains remains potential, and has yet to take any concrete form" and thus the claim was "premature").

Defendant's reliance on speculation is exacerbated by its intentional omission of *Gulf Oil*'s specificity requirement from its briefing. *Compare* ECF No. 73-1 (Defendant's motion, which includes no mention of the Supreme Court's requirement of a "clear record and specific findings," or the like) *with* ECF No. 104 (only after Plaintiffs' opposition brief explained the Supreme Court's specificity requirement, Defendant's reply brief seeks to provide "specific facts"). For example, Defendant repeatedly cites *Camp v. Alexander* for the proposition that "'[w]here communications are misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit, they may be limited by the court. . .'" ECF No. 73-1 at 3–4, 8 (ellipses in original) (quoting *Camp*, 300 F.R.D. at 621). However, the rest of the quoted sentence provides important context: "they may be limited by the court, *but the orders must be grounded in good cause and issued with a heightened sensitivity for the First Amendment*." *Camp*, 300 F.R.D. at 621

(emphasis added).[5] In fact, the court in *Camp* denied the motion to limit communications with putative class members, finding that "although the Court is troubled by Defendants' communication with putative class members via the Employee Letter,[6] the severity and likelihood of the harm is not so great as to warrant a complete ban on communications about the case at this time. Although the inflammatory nature of the Employee Letter is clear on its face, Plaintiffs have not provided evidence that any particular putative class member was coerced, and the Supreme Court calls for a clear record and specific findings in order to limit communications." *Camp*, 300 F.R.D. at 626. As such, the Court finds *Camp* persuasive *against* limiting communications in this case.

Next, Defendant claims that "the class and collective members will not receive accurate and impartial information about the *Navarrete* lawsuit and settlement from Plaintiffs' counsel because they have an interest to diminish the size of the *Navarrete*

---

[5] Similarly, Defendant cites *In re School Asbestos Litigation* for the proposition that the court's authority "generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are ... within a district court's discretion to regulate." ECF No. 104 at 8 (ellipses in original) (quoting *In re Sch. Asbestos Litig.*, 842 F.2d at 683). However, the rest of the quoted sentence provides important context: "Certainly communications that seek or threaten to influence the choice of remedies are, *in some instances, subject to the strictures of Gulf Oil and are therefore* within a district court's discretion to regulate." *In re Sch. Asbestos Litig.*, 842 F.2d at 683) (emphasis added). As with its citation to *Camp*, Defendant omits the Supreme Court's requirement of specificity and not speculation from its citation to *In re School Asbestos Litigation*. *See Gulf Oil*, 452 U.S. at 104 ("the mere possibility of abuses does not justify routine adoption of a communications ban . . . in the absence of a clear record and specific findings of need").

[6] In *Camp*, several former employees sued their employer for wage-and-hour violations as a putative class action; thereafter, the employer sent a letter to its employees, stating that "the lawsuit is motivated by greed and other improper factors," "Margot's attorney is seeking a very large sum of money by attempting to convince other employees to join the lawsuit," and "a long legal battle would jeopardize the ongoing viability of the [business]" and their jobs, and attached an opt-out form. *Camp*, 300 F.R.D. at 620.

class." ECF No. 73-1 at 6. Defendant argues that Plaintiffs' "statements unequivocally demonstrate their bias and negative view of the *Navarrete* settlement and as a threat to the success of their own lawsuit. [] Plaintiffs obviously harbor deep contempt for the *Navarrete* settlement and cannot reasonably be expected to provide an unbiased opinion about it." *Id.* at 7. As the Court explained earlier, parties' communications with putative class members need not be objective and neutral. *Finder*, 2017 U.S. Dist. LEXIS 8346, at *16 (citing *Babbitt*, 1993 WL 150300, at *3–*7); *see also Finder*, 2017 U.S. Dist. LEXIS 8346, at *13 ("[plaintiff's counsel] is an advocate for his position in this law suit; a position that members can freely take or leave").

Additionally, Defendant likens the instant circumstance to that of an employer being precluded from communicating with employees regarding a class action of employees against the employer. *See* ECF No. 73-1 at 6–7 ("Plaintiffs' communications about the *Navarrete* settlement is analogous to the situation when courts restrict a defendant employer's communications with class members due to the risk of defendant employer discouraging class members from participating in a class action"). The Court is not persuaded by this analogy. "[C]aselaw nearly universally observes that employer-employee contact is particularly prone to coercion." *Camp*, 300 F.R.D. at 624; *see, e.g.*, *Talavera*, 2016 U.S. Dist. LEXIS 29633, at *15 ("The context here is of particular concern, as an employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect"). *Employer*-employee communications have a heightened potential for coercion and a chilling effect on litigation because of the ongoing business relationship between employers and employees and the resulting imbalance of power in decisions effecting the employee's livelihood, and courts have routinely limited defendant-employer's communications for these reasons. *See, e.g.*, *Camp*, 300 F.R.D. at 621–22 (collecting cases); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-982-EMC, 2012 WL 2239797, at *2, *4, *6 (N.D. Cal. June 15, 2012) (limiting defendant-employer's communications with putative class members because their communications, "comments about how Plaintiffs' lives will be subject to

public scrutiny as a result of the litigation—including [current and] future employers[,]" could chill participation in the litigation); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 488 (C.D. Cal. 2006) (limiting defendant-employer's communications with putative class members and noting that "[t]he danger of improper tampering is only enhanced when, as here, the class and the class opponent are involved in an ongoing business relationship. . . . here the relationship is even more potentially coercive where Defendants are the individuals' employers and there is evidence that implicit and explicit threats were made linking participation in the lawsuit with job security"); *Mevorah*, 2005 WL 4813532, at *4–*5 (limiting defendant-employer's communications with putative class members, explaining that "Defendant[-employer]'s statements [] have a heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive") (internal quotations omitted); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (limiting defendant-employer's communications with putative class members because "[defendant-employer] exploited this [employment] relationship by preying upon fears and concerns . . . and by suggesting that this action could affect the potential class members' employment"); *cf. Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 515, 517–519 (N.D. Cal. 2010) (invalidating opt-outs where defendant-employer communicated with putative class members, finding "workplace meetings coercive," noting that employees "fear[ed] their work assignments will be reduced or they will be terminated outright," and explaining that employers "cannot force its workers to choose between continuing to work and participating in this case"). However, here, *Plaintiffs* do not have the employer-employee relationship with putative class members, so Defendant's concerns regarding a heightened likelihood for coercion are not persuasive.

The Court finds that Defendant has presented only speculative concerns and, as such, Defendant has not identified adequate potential abuses that warrant an order limiting communications.

/ /

## C.    Additional Considerations

In requesting that Plaintiffs and Plaintiffs' counsel be prevented from commenting or providing an opinion "regarding the settlement of the *Navarette* class action and PAGA lawsuit," Defendant implicitly asserts that Plaintiffs know information about the *Navarette* settlement. ECF No. 73-1 at 4; ECF No. 104 at 2, 4. The Court is persuaded by Plaintiff's citation to the Court's order denying Defendant's motion for temporary restraining order. ECF No. 97 at 7–8 (quoting ECF No. 62 at 5). There, the Court noted that:

> the record is not sufficient to determine that the *Navarrete* settlement would affect the California collective members in the case. Neither the *Navarette* nor the *Navarette–PAGA* actions include FLSA claims. Although Defendant contends that the *Navarette* settlement will be conditioned on the release of all state and federal claims—including FLSA claims—the parties have not yet drafted a settlement agreement. Any settlement is in the early stages and is subject to court approval.

ECF No. 62 at 5. Further, no motions for preliminary approval of settlement have been filed in either *Navarette* action, although the December 12, 2019 notice of settlement filed in the lawsuits represents that the motion would be filed in approximately 60 days and double that length of time has passed. *See Navarette v. Sprint*, 8:19cv794-JLS-ADS, C.D. Cal., ECF No. 18 at 2. The Court agrees with Plaintiff that "Defendant has failed to establish [] any actual settlement in *Navarette* about which Plaintiffs or their counsel could communicate[.]" ECF No. 97 at 7

Furthermore, Defendant devotes an entire section of its reply brief to the argument that "the case law cited by Plaintiffs is distinguishable." ECF No. 104 at 9 (capitalized letters omitted). That is, to put it mildly, a strained reading of those cases.

For example, Defendant contends that *Cedano v. Thrifty Payless* is "completely distinguishable from this case" and that it "do[es] not implicate the issue of limitations as to communications with the putative class at issue here." ECF No. 104 at 9 (citing *Cedano*, 2011 WL 8609402). The Court disagrees. In *Cedano*, the court compelled production of contact information for the putative class members, but it also addressed the defendant's

concerns "that if this court orders the production of contact information of the [contact information], then it must regulate the communications between Plaintiff's counsel and putative class members to ensure there is no improper solicitation of new named plaintiffs or other inappropriate statements." *Cedano*, 2011 WL 8609402, at *11; *compare with* ECF No. 73-1 at 2–3 ("If the Court grants Plaintiffs' motion to compel production of class and collective contact lists in this action, Plaintiffs will have unfettered channels of communication . . . . [so their] communications with class and collective members must be limited to avoid misleading, confusing, and threatening communications with class and collective members"). In *Cedano*, the court explained that "[w]hile this court recognizes its authority to regulate communications with putative class members, it also recognizes that such authority is warranted 'based on a clear record and specific findings . . .' [] At this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture, especially in light of the fact that the parties have failed to even assert that any abuse in communications has occurred." *Cedano*, 2011 WL 8609402, at *12 (quoting *Gulf Oil*, 452 U.S. at 101). The Court finds this case on point, and its reasoning persuasive against limiting communications.

As another example, Defendant contends that *Wellens v. Daiichi Sankyo* is "completely distinguishable from this case" and "is irrelevant as it dealt with a discovery dispute involving plaintiffs' request that the court require defendant [to] produce class information but does not address the issue of limiting communications." ECF No. 104 at 9 (citing *Wellens v. Daiichi Sankyo, Inc.*, No. 13cv581-WHO-DMR, 2014 U.S. Dist. LEXIS 29794, at *12–*13 (N.D. Cal. Mar. 5, 2014)). Again, the Court disagrees, and notes that *Wellens* is on point and persuasive. There, as in *Cedano* and here, the defendant sought to withhold production of contact information to the plaintiffs because they feared that, if plaintiffs were to possess the contact information, they would use it to solicit class membership through direct communication. *Wellens*, 2014 U.S. Dist. LEXIS 29794, at *12; *compare with* ECF No. 74 at 3–4 (arguing that "[w]hile Defendant vehemently

maintains that Plaintiffs are not entitled to that information," "in the event that Plaintiffs' Discovery Motion is granted, Plaintiffs and Plaintiffs' counsel will have access to tens of thousands of putative class and collective individuals contact information . . . [and could engage in] confusing, misleading, and threatening communications [with] class members"). In *Wellens*, the court concluded that "[t]here is no evidence that Plaintiffs have or will behave improperly with respect to soliciting class membership. The court will not preemptively deny Plaintiffs discovery to which they are entitled based on Defendant's speculative concern that Plaintiffs will use it improperly, especially when other measures (e.g. sanctions) exist to discourage such behavior." *Wellens*, 2014 U.S. Dist. LEXIS 29794, at *12–*13 (citing *Gulf Oil*, 452 U.S. at 104).

Here, Defendants provide no evidence that Plaintiffs have communicated with putative class members to convince them to opt-out of the *Navarette* settlement. *See* ECF No. 104 at 6 (arguing that Plaintiffs "already indicated that they will encourage the Navarrete putative class to opt out of the *Navarrete* settlement[,]" citing a sentence in Plaintiffs' brief that does not support this assertion, and providing no other evidence to the contrary or that such encouragement is imminent). As in *Wellens* and *Cedano*, here, the Court declines to limit communications on such speculative concerns.

Moreover, the Court is highly skeptical of Defendant's professed concern for the class members. Defendant has an obvious interest in limiting the number of opt-outs from the *Navarette* class as much as possible, because if a person is a class member in *Navarette* and in this case, that person will potentially lose their claim in this case if they do act affirmatively to opt out of *Navarette*. A court order restricting Plaintiffs' counsel from even communicating with these persons about the *Navarette* settlement would greatly increase the likelihood that they will lose their rights in this case, even after taking the affirmative step of opting in, merely by operation of the notice period in *Navarette*. This does present a potentially confusing circumstance for these persons, albeit one created by Defendant by the way it chose to handle settlement negotiations. The best way to address any confusion of overlapping class members is to allow them to ask their counsel – who have ethical and

fiduciary duties to these class members, and whom they have chosen to represent them by opting in to this case – to discuss the settlement and their options with them. Having created the confusion in the first place, Defendant should not complain that Plaintiffs' counsel may be called to straighten it out by explaining class members' options to them in an ethical manner.

**D.** **In the Alternative, Communications are Already Sufficiently Limited**

Alternatively, had the Court found that Defendant sufficiently demonstrated that there was a clear record and specific findings of abusive, misleading, or coercive communications, as opposed to mere speculation, any limitation narrow enough to the circumstance is already in place here.

In the Court's order resolving joint determination for discovery dispute, the Court ordered that Defendant produce the contact information to Plaintiffs, subject to a limited protective order, which included the following provisions: "(3) The information shall be used solely in this litigation and not for any other purpose without an order from the Court. (4) Plaintiffs' counsel must inform each contacted individual that he or she has the right not to talk to counsel and, upon a declination, counsel will immediately terminate the conversation." ECF No. 91 at 26. Additionally, the Court notes that, "[w]hen engaging in precertification communications, as is equally true with any communication, a member of the State Bar of California must comply with the requirements of the Rules of Professional Conduct." *Mevorah*, 2005 WL 4813532, at *5; *see, e.g.*, *Hernandez v. Best Buy Stores, L.P.*, No. 13cv2587-JM-KSC, 2015 WL 7176352, at *8 (S.D. Cal. Nov. 13, 2015); *Parris v. Super. Ct. of L.A. Cnty.*, 109 Cal. App. 4th 285, 298 n.6 (2003) (observing that counsel for plaintiff must abide by rule 1-400's prohibitions on false, misleading, and deceptive messages in pre-certification communications with prospective clients). Thus, the Court finds it duplicative to limit communications in the same manner here.

/ /

/ /

/ /

## IV.    CONCLUSION

The Court finds that Defendants have not shown that actual abuse has occurred or that there is a high potential for abuse, and instead based its motion on speculation. Accordingly, for the reasons set forth above, the Court **DENIES** Defendant's Motion for Order Limiting Plaintiffs' and Plaintiffs' Counsel's Communication with Class and Collective Members. ECF No. 73.

**IT IS SO ORDERED.**

Dated:  April 10, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:19-cv-411-WQH-AHG