Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

Gregg I. Shavitz (*pro hac vice*)
Michael Palitz (*pro hac vice*)
Tamra C. Givens (*pro hac vice*)
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Telephone: (800) 616-4000
Facsimile: (561) 447-8831
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com
mpalitz@shavitzlaw.com

Attorneys for Plaintiffs and the
Collective and Putative Classes

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR AMARAUT, KATHERINE ALMONTE, MARISSA PAINTER, KRISTOPHER FOX, DYLAN MCCOLLUM, and QUINN MYERS, on behalf of themselves and all others similarly situated,<br><br>　　　Plaintiffs,<br><br>v.<br><br>Sprint/United Management Company,<br><br>　　　Defendant. | Case No. 3:19-cv-00411-WQH-MDD<br><br>**SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint filed: February 28, 2019 |

Plaintiffs Vladimir Amaraut, Katherine Almonte, Marissa Painter, Kristopher Fox, Dylan McCollum, and Quinn Myers, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their attorneys, bring this lawsuit against Defendant Sprint/United Management Company ("Sprint" or "Defendant") seeking to recover for Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and applicable state wage and hour laws. Plaintiffs complain and allege as follows:

## INTRODUCTION

1. This is a collective and class action complaint against Sprint to challenge its policies and practices of: (1) failing to pay non-exempt employees who work in retail stores for all hours worked; (2) failing to pay required minimum wages; (3) failing to pay required overtime wages; (4) failing to authorize, permit, and/or make meal and rest periods available, and failing to pay premium pay for these missed breaks; (5) failing to pay all wages after termination of employment; and (6) failing to provide accurate, itemized wage statements.

2. Plaintiffs are former non-exempt employees who worked in salespersons roles at Sprint retail stores. In these roles, Plaintiffs sold cellular phones, phone accessories, service plans, and other products and services to Defendant's customers. Plaintiffs seek to represent other current and former non-exempt employees of Defendant who work in retail stores in California, Arizona, Colorado, New York, Ohio, and Washington, and elsewhere in the United States, including but not limited to Retail Consultants, Lead Retail Consultants, and Assistant Store Managers. Plaintiffs allege Defendant has engaged in unlawful patterns and practices of failing to meet the requirements of the FLSA and applicable state wage and hour laws.

3. Plaintiffs and putative Collective and Class Members perform off-the-clock work for which they are not adequately compensated. If they are working an opening shift, Plaintiffs and putative Collective and Class Members have to disengage Sprint's alarm systems and unlock the store's doors, all of which occurs off-the-clock. They then have to log in to the Sprint computer system and load the necessary application before they are able to clock in for work via Defendant's timekeeping system. If they are working a closing shift, Plaintiffs and putative Collective and Class

SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Amaraut, et al. v. Sprint/United Management Company*

Members are required to spend additional time working off-the-clock. Typically, between two and three employees work the closing shift, and under Sprint's policy and practice, they are all required to leave together. The workers must clock out and remain under Defendant's control until one of them locks the door and sets the alarm.

4. Moreover, Plaintiffs and putative Collective and Class Members routinely take work-related calls and text messages outside of their shifts from Defendant and its employees, including via group mobile messaging applications, without pay. Plaintiffs and putative Collective and Class Members spend significant amounts of time working off-the-clock for Defendant's benefit in responding to these calls and text messages.

5. Plaintiffs and putative Collective and Class Members are also required to work off-the-clock to submit expense reports, complete other job-related paperwork, and attend meetings, outside of their schedule shifts and without pay.

6. Based upon this off-the-clock work, Defendant  fails to pay Plaintiffs and putative Collective and Class Members for all hours worked, including minimum wage and overtime. Ultimately, the daily time that Defendant requires Plaintiffs and putative Collective and Class Members to work without compensation deprives them of substantial amounts of pay to which they are entitled under Federal law and applicable state wage and hour laws.

7. As Plaintiffs and putative Collective and Class Members regularly work in excess of eight hours per day and forty hours per week, at least some of this off-the-clock work is compensable at overtime rates. However, Defendant fails to pay for any of this off-the-clock work time, including the required overtime premiums, in violation of the FLSA and applicable state wage and hour laws.

8. Plaintiffs and other putative Collective and Class Members regularly work in excess of six hours per days and are routinely denied timely and compliant meal and rest periods, and the requisite pay for working through such breaks.

9. As a result of understaffing and Defendant's unremitting pressure to keep labor costs downs, Defendant routinely refuses to authorize, permit, and/or make available full, timely, uninterrupted meal breaks  as required by applicable state laws. Even when they do receive some

1  form of timely meal break, it is often interrupted and Plaintiffs and putative Collective and Class

2  Members are required to perform work during the break for which they are not compensated.

3      10.  Defendant likewise routinely refuses to authorize or permit Plaintiffs and putative

4  Collective and Class Members to take ten-minute rest periods as required by applicable state laws.

5      11.  As a result of the above violations, Defendant fails to provide Plaintiffs and putative

6  Collective and Class Members with accurate, itemized wage statements. Defendant has also failed

7  to pay all wages after these employees, like Plaintiffs, voluntarily or involuntarily terminated their

8  employment with Defendant.

9      12.  Plaintiffs seek full compensation on behalf of themselves and putative Class

10  Members for all unpaid wages, unpaid overtime, liquidated damages, noncompliant meal and rest

11  periods, waiting time penalties, and premium pay, as well as penalties under the California Private

12  Attorney General Act ("PAGA").  Plaintiff also seeks declaratory and injunctive relief, including

13  restitution.  Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA, and

14  applicable state laws.  Plaintiff seeks damages in an amount that exceeds $75,000.00

15  **PARTIES**

16      13.  Plaintiff Vladimir Amaraut worked for Sprint from approximately February 2016

17  through August 2018 at retail store locations in San Diego, California. He held the positions of

18  Retail Consultant and Lead Retail Consultant, in both of which his primary job assignment was to

19  sell cellular telephones, plans, and related products and services to Defendant's customers.

20      14.  Plaintiff Amaraut resides in the State of California and is over eighteen years of age.

21  Plaintiff was a resident of the State of California at all relevant times described herein.

22      15.  Plaintiff Dylan McCollum worked for Sprint from approximately February 2011

23  through January 2019 at retail store locations in Tucson, Arizona. Plaintiff McCollum held the

24  positions of Retail Consultant, Lead Retail Consultant, and Assistant Manager, in which his primary

25  job assignment was to sell cellular telephones, plans, and related products and services to

26  Defendant's customers.

27      16.  Plaintiff Quinn Myers worked for Sprint from approximately January 2016 through

28  March 2018 at retail store locations in Fountain, Colorado and Colorado Springs, Colorado.

Plaintiff Myers held positions including Keyholder, in which his primary job assignment was to sell cellular telephones, plans, and related products and services to Defendant's customers.

17.     Plaintiff Katherine Almonte worked for Sprint from approximately August 2017 through May 2018 at a retail store location in Bay Plaza, Bronx, New York. Plaintiff Almonte held the position of Assistant Manager, in which her primary job assignment was to sell cellular telephones, plans, and related products and services to Defendant's customers.

18.     Plaintiff Kristopher Fox worked for Sprint from approximately May 2016 through September 2018 at a retail store location in Fairlawn, Ohio. Plaintiff Fox held positions including Keyholder, in which his primary job assignment was to sell cellular telephones, plans, and related products and services to Defendant's customers.

19.     Plaintiff Marissa Painter worked for Sprint from approximately October 2016 through March 2019 at a retail store location in Lakewood, Washington. Plaintiff Painter held the position of Retail Consultant, in which her primary job assignment was to sell cellular telephones, plans, and related products and services to Defendant's customers.

20.     Defendant Sprint/United Management Company is a Kansas corporation with principal place of business in Kansas. On information and belief, Defendant is a wholly owned subsidiary of Sprint Corporation and its headquarters are located at 6200 Sprint Parkway, Overland Park, Kansas 66251.  Defendant does business in California and throughout the United States and has over 4,500 retail store locations.

21.     At all relevant times, Defendant has done business under the laws of California, Arizona, Colorado, New York, Ohio, and Washington. Defendant has places of business in the State of California, including in this judicial district, and has employed Putative Class Members in this judicial district.  Defendant is a "person" as defined in California Labor Code § 18 and California Business and Professions Code § 17201.  Defendant is an "employer" within the meaning of the FLSA, and the laws of California, Arizona, Colorado, New York, Ohio, and Washington.

## JURISDICTION AND VENUE

22.     The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). This Court has original federal question

1  jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law

2  claims under 28 U.S.C. § 1367(a) because they are so related to this action that they form part of

3  the same case or controversy.

4      23.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b). At all material times

5  Defendant has been actively conducting business in the State of California and within the

6  geographic area encompassing the Southern District of California judicial district.

7                              **RELATION BACK**

8      24.    This Second Amended Collective and Class Action Complaint relates back to

9  Plaintiff Amaraut's original Complaint filed on February 28, 2019, with regards to all applicable

10  claims herein, pursuant to Federal Rule of Civil Procedure 15(c).

11                            **FACTUAL ALLEGATIONS**

12      25.    Defendant is in the business of selling mobile telephone devices and services at its

13  retail stores. Defendant operates its retail stores in all fifty states, including California, Arizona,

14  Colorado, New York, Ohio, and Washington.

15      26.    Plaintiffs are former non-exempt employees of Defendant, who worked in positions

16  including, but not limited to, Retail Consultant and Lead Retail Consultant. Plaintiffs were paid

17  approximately $10 to $15 per hour, plus potential commissions that they could earn based on sales.

18  Plaintiffs' duties included, but were not limited to, selling and setting up cellular phones, devices,

19  accessories, and related service plans, assisting customers with phone and service issues,

20  troubleshooting equipment issues, making repairs to broken phones and devices, processing

21  insurance claims, and monitoring customer traffic within the store.

22      27.    Similar to Plaintiffs, the putative Collective and Class Members are current and

23  former non-exempt  employees who work, or have worked, at Defendant's retail stores. As Sprint

24  employees, putative Collective and Class Members are expected to sell Sprint's products and

25  services to customers in Sprint's retail locations. Plaintiffs are informed, believe, and thereon allege

26  that the policies and practices of Defendant have at all relevant times been similar for Plaintiffs and

27  the putative Collective and Class Members, regardless of store location in the United States.

28

**OFF-THE-CLOCK WORK**

28.     During Plaintiffs' tenure with Defendant, they typically were scheduled to work seven to eight hours per day, five to six days a week, for a total of approximately 40 hours per week. Plaintiffs in fact worked these scheduled hours. However, Plaintiffs also were regularly required by management to work additional hours beyond this scheduled time. On some days, including but not limited to around the holidays or other peak sales periods, Plaintiffs worked nine to ten hours per day. Additionally, while Defendant would often schedule Plaintiffs to have a meal break each day, Plaintiffs were regularly unable to take a meal break at the scheduled time, and would otherwise have to perform work and be under Defendant's control. For numerous workweeks, Plaintiffs worked more than 40 hours per week.

29.     Defendant requires Plaintiffs and Collective and Class Members to perform work tasks before the beginning and after the end of their paid shifts.[1] This requirement results in Sprint's non-exempt employees performing off-the-clock work, including overtime work, which goes unrecorded and unpaid by Defendant.

30.     Specifically, Defendant requires its employees to arrive at the store prior to the start of their paid shifts to perform work activities. Under Defendant's company-wide practice, Defendant requires Plaintiffs and putative Collective and Class Members to log in to the company's computer system by entering their credentials. The workers then log in to a Sprint timekeeping application to clock in for their shift. This task alone routinely takes three to five minutes or more, particularly due to the recurrent slow speeds and technical problems with Sprint's computer systems. This time is unpaid.

31.     The off-the-clock work is exacerbated when Plaintiffs and putative Collective and Class Members work opening and closing shifts. When the employees work an opening shift, they have to physically open, or unlock the store for the day, and disengage the alarm. They then have

---

[1] For ease of reading, the allegations with respect to Plaintiffs' employment are presented in the present tense, even though they are former employees.

to log in to the Sprint computer system and load the necessary application to clock in for work via Defendant's timekeeping system. By the time they are "on-the-clock," Plaintiffs and putative Collective and Class Members have spent approximately five to ten minutes performing work-related duties. This time is unpaid.

32.     When they are working a closing shift, Plaintiffs and putative Collective and Class Members are required to spend additional time working off-the-clock. The workers must clock out, and then they are required to set the alarm and lock the door, which is uncompensated time. After they clock out, Plaintiffs and putative Collective and Class Members spend approximately five to ten minutes performing work for Defendant's benefit in these situations. Moreover, two or more employees often work the closing shift together. Under Sprint's policy and practice, these workers are required to leave the store together. The workers must clock out, and then when all workers have clocked out, one or more of them sets the alarm and locks the doors. Oftentimes, however, the workers do not all clock out at the same time. The workers who clock out first must wait for the other workers to clock out and set the alarm, and they are unable to leave the store during that period. In these situations, Plaintiffs and putative Collective and Class Members regularly spend approximately ten minutes or more under Defendant's control after they have clocked out, even when they do not have to set the alarm and/or lock the door. This time is unpaid.

33.     Defendant requires its non-exempt employees to conduct additional off-the-clock work. Defendant requires non-exempt employees to take calls and respond to text messages from its managers and employees outside of their scheduled shifts and during meal breaks. Moreover, Defendant's managers and employees use group mobile messaging applications to send messages to non-exempt employees when they are off-the-clock. These calls and messages typically result from Defendant's inability to efficiently and effectively hand off customers from one salesperson to another. For example, a customer will establish a relationship with a particular retail employee when they enter the store to purchase Sprint's goods and services. These interactions regularly take upwards of one hour, as they involve expensive, important purchases of cellular phones and related services that the customer will use on a daily basis for several years. If the customer returns to the store for follow-up purchases, changes, or questions, the initial salesperson is often not working at

that time or is on a break period; based on the pre-existing relationship, the remaining managers and employees in the store routinely have questions for the non-working employee. The result is a call or text message to that employee during non-work hours. These calls and messaging occur regularly and with Defendant's knowledge. Plaintiffs and putative Collective and Class Members routinely spend 30 to 90 minutes per week on such calls and text messages, outside of their scheduled shifts and during meal breaks. They are not compensated for this time that Defendant requires, suffers, and/or permits them to work.

34.     Defendant also requires Plaintiffs and putative Collective and Class Members to work off-the-clock to submit expense reports, complete other job-related paperwork, and attend meetings, again outside of their schedule shifts and without pay.

35.     In particular, Defendant suffers, requires, and/or permits Plaintiffs and putative Collective and Class Members to work off-the-clock if they wish to attempt to obtain payment for expenses that they incurred for Sprint and to challenge Sprint's chargebacks of commissions. Defendant's systems and processes in this regard are extremely time-consuming and difficult to use, but Defendant nevertheless requires Plaintiffs and putative Collective and Class Members to use them in order to obtain the compensation that they are owed. However, Defendant's managers do not permit these workers to spend the significant amounts of time required to attempt to enter expense reports and chargeback appeals during their normal duty hours. As a result, these workers regularly stay late, come in on their days off, and otherwise work off-the-clock to attempt to submit their expenses and chargeback appeals, with Defendant's knowledge.

36.     Plaintiffs and putative Collective and Class Members regularly use their personal vehicles to pick up and deliver goods including phones and accessories. They are permitted to submit expense reports through Sprint's web-based reimbursement system, but under Sprint's policies and practices, the reports are frequently rejected and the employees must spend large amounts of time revising them to Sprint's precise specifications if they want to be repaid for the expenses that they incurred for Sprint. Plaintiffs and putative Collective and Class Members spend large amounts of time completing, submitting, and revising the necessary submissions and paperwork in order to be reimbursed for expenses that they incur on Sprint's behalf. This work is

regularly performed off-the-clock and without compensation, with the knowledge of Sprint and its managers. Plaintiffs and putative Collective and Class Members perform such work in approximately one-third of their workweeks. They are not compensated for this time that Defendant requires, suffers, and/or permits them to work.

37.     Likewise, Plaintiffs and putative Collective and Class Members spend time completing, submitting, and revising the necessary submissions and paperwork in order to appeal Sprint's chargebacks of commissions. Under Sprint's system for recording and processing employee commissions, amounts paid as commissions to Plaintiffs and putative Class Members are clawed back from these workers when customers cancel, change, or fail to pay for their cellular phone plans and products. If the customer later makes payment and brings the account current, or if the chargeback is otherwise incorrect, the commission should be reinstated. However, under Sprint's policy, it is the retail employee's burden to seek an "appeal" to make this happen. The appeal process is so difficult to use, laden with malfunctions, and lacking in technical and managerial support, that Plaintiffs and putative Class Members must spend their own time to simply attempt to obtain the commissions they are owed. This process can and does take several hours. This work is performed off-the-clock and without compensation, with the knowledge of Sprint and its managers.

38.     Defendant also requires Plaintiffs and putative Collective and Class Members to attend mandatory meetings, which often occur on their days off. When a meeting occurs on an employee's off-day, Defendant nonetheless requires the employee to attend the meeting without pay. This results in further off-the-clock work by Plaintiffs and putative Collective and Class Members.

39.     All of this time that Defendant requires Plaintiffs and putative Collective and Class Members to work without compensation deprives them of substantial amounts of pay to which they are entitled under Federal, California, Arizona, Colorado, New York, Ohio, and Washington law. Depending upon how many hours Plaintiff and putative Collective and Class Members work in a day, this unpaid time is owed to them at both straight-time and overtime rates.

**MEAL AND REST BREAK VIOLATIONS**

40.     Moreover, Defendant routinely denies timely and compliant off-duty meal periods and routinely refuses to authorize or permit Plaintiffs and putative Class and Collective Members to take compliant rest periods.  Plaintiffs and similarly situated non-exempt employees typically work at least six-to-seven-hour days, yet are routinely denied meal and rest periods for two reasons: (1) Defendant does not authorize, permit, and/or make available timely meal and rest breaks for Plaintiffs and putative Collective and Class Members; and (2) Defendant knows or has reason to know that Plaintiffs and putative Collective and Class Members are too busy with work during the day to have time to take bona fide meal and rest breaks. Specifically, Plaintiffs and putative Collective and Class Members are often too busy or not able to take meal and rest periods because their managers would instruct them to help on the retail floor or eat while working. Management interrupts them with other work requests as well and also directs them to answer work-related calls on their telephones.

41.     As a result, Plaintiffs and putative Collective and Class Members regularly work past the fifth hour of work without the opportunity to take a meal break. Often, they are working with a customer in a lengthy interaction when the fifth hour of work strikes, but they are unable to hand off the customer to another employee so that they can take their break. On information and belief, Defendant and its managers routinely manipulate the timecards of these workers to make it appear that they took a timely meal break, in order to avoid required premium payments.

42.     Even when they do receive some form of meal break, it is often interrupted and Plaintiffs and putative Collective and Class Members are required to perform work during the break. As a result of these issues, Plaintiffs and putative Collective and Class Members spend time performing work for Sprint even though they are off-the-clock on a meal break in Defendant's timekeeping records.

43.     Plaintiffs and putative Collective and Class Members are routinely denied full, timely, uninterrupted meal periods and rest periods. Defendant denies compliant meal periods to these workers on most workdays, and virtually never provides compliant rest periods.

SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Amaraut, et al. v. Sprint/United Management Company*

44.     When Plaintiffs and putative Collective and Class Members experience untimely or interrupted meal and rest breaks, or do not receive these breaks at all, Defendant fails to pay them the required premium pay.

45.     Defendant's off-the-clock and meal and rest break violations are borne of its policies and practices regarding labor hours and overtime in its stores. Defendant enforces strict labor budgets in its stores, in which headcounts and labor hours are allocated and closely monitored as a means to keep labor costs down. Defendant's managers, including but not limited to District Managers, keenly monitor and enforce headcounts and the amount of hours worked by each employee in each store. Bonuses for store managers, District Managers, and other managerial employees are based, in part, on meeting Defendant's labor goals. When labor exceeds Sprint's budgeting, Defendant's managers demand immediate explanations and corrective action from the respective store-level managers. Under this structure, Defendant routinely implements "zero overtime policies."

46.     As a result of Defendant's labor budgeting policies and practices, there are regularly insufficient employees in the retail stores to handle all customer traffic while allowing the non-exempt employees to obtain pay for all hours worked and to take the meal and rest breaks to which they are entitled.

## OTHER VIOLATIONS

47.     Defendant does not provide Plaintiffs and putative Collective and Class Members with accurate wage statements as required by California law. These workers receive wage statements that do not reflect all hours worked, premium pay for missed meal and rest breaks, and applicable overtime premiums.

48.     Defendant does not provide Plaintiffs and putative Collective and Class Members with full payment of all wages owed at the end of employment. These workers are owed wages and premium pay for all time worked, overtime, and missed meal and rest breaks when their employment ends. These amounts remain unpaid after voluntary and involuntary termination. As a consequence, Defendant is subject to waiting time penalties under the California Labor Code.

**DEFENDANT'S CONDUCT IS KNOWING, WILLFUL, AND UNIFORM**

49.     Defendant is aware that it maintains policies and practices that deprive its non-exempt employees of compensation for time worked, including overtime compensation, and of the fact that its non-exempt employees do not get the meal and rest periods to which they are entitled. In fact, Sprint has been involved in similar litigation in the past yet continues to engage in these practices. Therefore, the denial of wages and compliant meal and rest periods to Plaintiffs and putative Class Members is knowing and willful.

50.     Plaintiffs are informed, believe, and thereon allege that Defendant's unlawful conduct has been widespread, repeated, and consistent as to the putative Collective and Class members and throughout Defendant's operations in the United States.

51.     Defendant's conduct was knowing, willful, carried out in bad faith, and caused significant damages to Plaintiffs and putative Collective and Class members in an amount to be determined at trial.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

52.     Plaintiffs bring the First Count (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and a proposed collection of similarly situated employees defined as:

> All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action (the "FLSA Collective").

53.     Plaintiffs, individually and on behalf of other similarly situated persons defined above, seek relief on a collective basis challenging Defendant's policies and practices of failing to accurately record all hours worked and failing to properly pay for all hours worked, including overtime compensation and required minimum wages. The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from Defendant's records, and potential opt-ins may be easily and quickly notified of the pendency of this action.

54.     Plaintiffs' claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to § 216(b) of the FLSA because Plaintiffs' FLSA claims are similar to the claims of the members of the Collective.

55.     The members of the FLSA Collective are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that requires them to perform work "off-the-clock" and without compensation in violation of the FLSA.

56.     Plaintiffs are representatives of the members of the FLSA Collective and are acting on behalf of their interests as well as their own interests in bringing this action.

57.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the FLSA Collective.  Plaintiffs have retained counsel competent and experienced in employment and wage and hour class action and collective action litigation.

58.     The similarly-situated members of the FLSA Collective are known to Defendant, are readily identifiable, and may be located through Defendant's records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

59.     Plaintiffs contemplate providing a notice or notices to all of the employees, as approved by the Court, to be delivered via United States Mail. The notice or notices shall, among other things, advise each of the FLSA employees that they shall be entitled to "opt in" to the FLSA Action if they so request by the date specified within the notice, and that any judgment on the FLSA Action, whether favorable or not, entered in this case will bind all FLSA collective members who timely request inclusion in the class.

## CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P. 23

60.     Plaintiffs brings the Second through Nineteenth Counts (the state law claims) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23.

61.     The putative California Class that Plaintiff Amaraut seeks to represent is defined as:

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of California during the time period from February 28, 2015 until resolution of this action (the "California Class").

62. The putative Arizona Class that Plaintiff McCollum seeks to represent is defined as:

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of Arizona during the time period from February 28, 2018 until resolution of this action (the "Arizona Class").

63. The putative Colorado Class that Plaintiff Myers seeks to represent is defined as:

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of Colorado during the time period from February 28, 2016 until resolution of this action (the "Colorado Class").

64. The putative New York Class that Plaintiff Almonte seeks to represent is defined as:

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of New York during the time period from February 28, 2013 until resolution of this action (the "New York Class").

65. The putative Ohio Class that Plaintiff Fox seeks to represent is defined as:

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of Ohio during the time period from February 28, 2016 until resolution of this action (the "Ohio Class").

66. The putative Washington Class that Plaintiff Painter seeks to represent is defined as

All current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the State of Washington during the time period from February 28, 2016 until resolution of this action. (the "Washington Class").

67. **Numerosity**:   Defendant has employed potentially thousands of non-exempt employees in its retail stores during the applicable statutory period. The number of putative Class Members are therefore far too numerous to be individually joined in this lawsuit.

68. **Existence and Predominance of Common Questions**:  There are questions of law and fact common to Plaintiffs and putative Class Members that predominate over any questions affecting only individual members of the Classes.  These common questions of law and fact include, without limitation:

a. Whether Defendant fails to compensate putative Class Members for all hours worked, including minimum wages and overtime compensation, in violation of the California Labor Code and Wage Orders; the Arizona Wage Act; the Colorado

Wage Act and Minimum Wage Orders; New York Labor Law §§ 190 *et seq.*, 650 *et seq.*, and the New York Wage Theft Prevention Act; the Ohio Minimum Fair Wage Standards Act, Ohio Constitution, Article II, Section 34a, and the Ohio Prompt Pay Act; and <u>RCW 49.46.020</u> and <u>RCW 49.46.130</u>;

b.  Whether Defendant fails to compensate putative Class Members for all hours worked in violation of <u>California Business and Professions Code §§ 17200</u> *et seq.*;

c.  Whether Defendant has a policy and/or practice of requiring putative Class Members to perform work off-the-clock and without compensation;

d.  Whether Defendant fails to authorize and permit, make available, and/or provide putative Class Members meal periods to which they are entitled in violation of the California Labor Code and Wage Orders, the Colorado Minimum Wage Orders, New York Labor Law § 162, and Washington Administrative Code 296-126-092

e.  Whether Defendant fails to authorize and permit, make available, and/or provide putative Class Members meal periods to which they are entitled in violation of <u>California Business and Professions Code §§ 17200</u> *et seq.*;

f.  Whether Defendant fails to authorize and permit, make available, and/or provide putative Class Members rest periods to which they are entitled in violation of the California Labor Code and Wage Orders, the Colorado Minimum Wage Orders, and Washington Administrative Code 296-126-092;

g.  Whether Defendant fails to authorize and permit, make available, and/or provide putative Class Members rest periods to which they are entitled in violation of <u>California Business and Professions Code §§ 17200</u> *et seq.*;

h.  Whether Defendant fails to provide putative Class Members with timely, accurate itemized wage statements in violation of the California Labor Code and Wage Orders and New York Labor Law § 195(3);

i.  Whether Defendant fails to pay putative Class Members all wages due upon the end of their employment in violation of the California Labor Code and Wage Orders;

j.  Whether Defendant's failure to pay putative Class Members all wages due upon the end of their employment has been an unlawful, unfair, or fraudulent business act or practice in violation of <u>California Business and Professions Code §§ 17200</u> *et seq.*;

k.  Whether Defendant is liable for penalties to putative Class Members under the PAGA; and

l.   The proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the putative Class Members as alleged herein.

69.   **Typicality**:  Plaintiffs' claims are typical of the claims of the Classes they seek to represent.  Defendant's common policies, practices, and course of conduct in violation of law as alleged herein have caused Plaintiffs and the putative Class Members to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Classes they seek to represent.

70.   **Adequacy**:  Plaintiffs will fairly and adequately represent and protect the interests of the Classes they seek to represent because Plaintiffs' interests do not conflict with the interests of the members of the Classes they seek to represent.  Plaintiffs have retained Counsel competent and experienced in complex employment and wage and hour class action litigation, and intend to prosecute this action vigorously.  Plaintiffs and their Counsel will fairly and adequately protect the interests of the Classes.

71.   **Superiority**:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all putative Class Members is not practicable, and questions of law and fact common to Plaintiffs and putative Class Members predominate over any questions affecting only individual members of the Classes.  The injury suffered by each Putative Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Individualized litigation increases the delay and expense to all Parties and the Court. By contrast, class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

72.   In the alternative, the Classes may be certified because the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, and, in turn, would establish incompatible standards of conduct for Defendant.

73.   Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

74. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

75. Plaintiffs intend to send notice to all putative Class Members to the extent required under applicable class action procedures. Plaintiff contemplates providing a notice or notices to the California, Arizona, Colorado, New York, Ohio, and Washington Classes, as approved by the Court, to be delivered through the United States Mail. The notice or notices shall, among other things, advise the Class Members that they shall be entitled to "opt out" of the class certified for the applicable state law claims if they so request by a date specified within the notice, and that any judgment on the applicable state law claims, whether favorable or not, entered in this case will bind all putative Class Members except those who affirmatively exclude themselves by timely opting out.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**(By Plaintiff and the FLSA Collective)**

76. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

77. The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation at not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week. 29 U.S.C. § 207(a)(1).

78. At all times material herein, Plaintiffs and the FLSA Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA.

79. Defendant is a covered employer required to comply with the FLSA's mandates.

80. Defendant has violated the FLSA with respect to Plaintiffs and the Collective, by, inter alia, failing to compensate Plaintiffs and the FLSA Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage. See 29 U.S.C. § 206; 29 U.S.C. § 207 (a), (g); 29 C.F.R. § 531.35. Defendant has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiffs and the FLSA Collective. 29 U.S.C. § 211(c).

81.     Plaintiffs and the FLSA Collective are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt  employees of Defendant, working in their retail establishments throughout the United States.

82.     Plaintiffs and the FLSA Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the original complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

83.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and the FLSA Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

84.     As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendant from Plaintiffs and the FLSA Collective.  Accordingly, Defendant is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

85.     Wherefore, Plaintiffs and the FLSA Collective request relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**Failure to Compensate for All Hours Worked**
**(By Plaintiff Amaraut and the California Class)**

86.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

87.     This claim is brought by Plaintiff Amaraut against Defendant on behalf of the California Class.

88.     Plaintiff Amaraut alleges that Defendant willfully engaged and continues to engage in a policy and practice of not compensating Plaintiff Amaraut and putative California Class

1  Members for all hours worked or spent in Defendant's control. Detailed above, Defendant required,

2  suffered, and/or permitted Plaintiff Amaraut and the putative California Class to perform work for

3  the benefit of Defendant without compensation, with Defendant's knowledge.

4      89.    California Labor Code § 200 defines wages as "all amounts for labor performed by

5  employees of every description, whether the amount is fixed or ascertained by the standard of time,

6  task, piece, commission basis or other method of calculation."

7      90.    California Labor Code § 204(a) provides that "[a]ll wages … earned by any person

8  in any employment are due and payable twice during each calendar month…."

9      91.    California Labor Code § 1194(a) provides as follows:

10         Notwithstanding any agreement to work for a lesser wage, any
           employee receiving less than the legal minimum wage or the legal
11         overtime compensation applicable to the employee is entitled to
           recover in a civil action the unpaid balance of the full amount of this
12         minimum wage or overtime compensation, including interest thereon,
           reasonable attorneys' fees, and costs of suit.
13

14      92.    IWC Wage Orders 7-2001(2)(G) and 4-2001(2)(K) define hours worked as "the time

15  during which an employee is subject to the control of an employer, and includes all the time the

16  employee is suffered or permitted to work, whether or not required to do so…."

17      93.    In violation of California law, Defendant knowingly and willfully refuses to perform

18  its obligation to provide Plaintiff Amaraut and putative California Class Members with

19  compensation for all time worked. Therefore, Defendant committed, and continues to commit, the

20  acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Amaraut's and

21  putative California Class Members' rights. Plaintiff Amaraut and putative California Class

22  Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest,

23  attorneys' fees, expenses and costs of suit.

24      94.    As a proximate result of the aforementioned violations, Plaintiff Amaraut and the

25  putative California Class have been damaged in an amount according to proof at time of trial.

26      95.    Wherefore, Plaintiff Amaraut and the putative California Class request relief as

27  hereinafter provided.

28

1

2

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wage**
**(By Plaintiff Amaraut and the California Class)**

3   96.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

4   herein.

5   97.   This claim is brought by Plaintiff Amaraut against Defendant on behalf of the

6   California Class.

7   98.   Defendants have maintained policies and procedures that force Plaintiff Amaraut and

8   putative California Class Members to work off the clock, without compensation – let alone the

9   minimum wage. Due to Defendant's systematic denial of payment for all hours worked, Plaintiff

10   Amaraut and putative California Class Members are routinely compensated at a rate that is less than

11   the statutory minimum wage.

12   99.   During the applicable statutory period, Labor Code §§ 1182.11, 1182.12, and 1197,

13   and the Minimum Wage Order were in full force and effect and required that employees receive the

14   minimum wage for all hours worked at the rate of eight dollars ($8.00) per hour commencing

15   January 1, 2008, at the rate of nine dollars ($9.00) per hour commencing July 1, 2014, and at the

16   rate of ten dollars ($10.00) per hour commencing January 1, 2016 and ending December 31, 2016.

17   For employers with 26 or more employees, the minimum wage for all hours worked was ten dollars

18   and fifty cents ($10.50) per hour from January 1, 2017 to December 31, 2017, inclusive; eleven

19   dollars ($11.00) per hour from January 1, 2018 to December 31, 2018, inclusive; and twelve dollars

20   ($12.00) per hour from January 1, 2019 to the present.

21   100.   IWC Wage Orders 4-2001(2)(K) and 7-2001(2)(G) define hours worked as "the time

22   during which an employee is subject to the control of an employer, and includes all the time the

23   employee is suffered or permitted to work, whether or not required to do so."

24   101.   Labor Code § 1194(a) provides as follows:

25   Notwithstanding any agreement to work for a lesser wage, any
    employee receiving less than the legal minimum wage or the legal
26   overtime compensation applicable to the employee is entitled to
    recover in a civil action the unpaid balance of the full amount of this
27   minimum wage or overtime compensation, including interest thereon,
    reasonable attorneys' fees, and costs of suit.

28

102.    Labor Code § 1194.2 provides that, in any action under § 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the Commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

103.    By failing to maintain adequate time records as required by Labor Code § 1174(d) and IWC Wage Orders 4-2001(7) and 7-2001(7), Defendant makes it difficult to calculate the minimum wage compensation due to Plaintiff Amaraut and putative California Class Members.

104.    As a direct and proximate result of Defendant's unlawful acts and/or omissions, Plaintiff Amaraut and putative California Class Members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

105.    Wherefore, Plaintiff Amaraut and the putative California Class request relief as hereinafter provided.

### FOURTH CAUSE OF ACTION
**Failure to Pay Overtime Wages**
**(By Plaintiff Amaraut and the California Class)**

106.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

107.    This claim is brought by Plaintiff Amaraut against Defendant on behalf of the California Class.

108.    Defendant does not properly compensate Plaintiff Amaraut and putative California Class Members with appropriate overtime premiums, including time-and-a half premiums based on their regular rate of pay, as required by California law.

109.    California Labor Code § 510(a) provides as follows:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at

the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

110.    California Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

111.    California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."   All such wages are subject to California's overtime requirements, including those set forth above.

112.    Defendant's policies and practices of requiring Plaintiff Amaraut and the putative California Class Members to perform work off-the-clock before and after their paid shifts are unlawful.  Even absent this off-the-clock work, many of Defendant's non-exempt employees who work in retail stores, including Plaintiff Amaraut and putative California Class Members, have worked over eight hours in a day and/or over forty hours in a week. Accordingly, as a result of Defendant's unlawful policy alleged herein of requiring Plaintiff Amaraut and putative California Class Members to perform off-the-clock work before the beginning of their paid shifts, while clocked out on meal breaks, and at other times, Plaintiff Amaraut and putative California Class Members have worked overtime hours for Defendant without being paid overtime premiums in violation of the California Labor Code, applicable IWC Wage Orders, and other applicable law.

113.    Defendant has knowingly and willfully refused to perform its obligations to compensate Plaintiff Amaraut and putative California Class Members for all premium wages for overtime work.  Defendant is liable to Plaintiff Amaraut and putative California Class Members alleged herein for the unpaid overtime and civil penalties, with interest thereon.  Furthermore,

Plaintiff Amaraut and putative California Class Members are entitled to an award of attorneys' fees and costs as set forth below.

114.    As a proximate result of the aforementioned violations, Plaintiff Amaraut and the putative California Class have been damaged in an amount according to proof at time of trial.

115.    Wherefore, Plaintiff Amaraut and the putative California Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
### Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods
### (By Plaintiff Amaraut and the California Class)

116.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

117.    This claim is brought by Plaintiff Amaraut against Defendant on behalf of the California Class.

118.    Defendant failed to make available and prevented full, timely, uninterrupted, compliant meal and rest breaks for Plaintiff Amaraut and putative California Class Members, and required them to continue working during these breaks.

119.    Defendant also failed to pay Plaintiff Amaraut and putative California Class Members one hour of premium pay for missed breaks.

120.    California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Orders require Defendant to authorize, permit, and/or make available timely and compliant meal and rest periods to its employees.  Labor Code §§ 226.7 and 512 and the IWC Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours, or major fraction thereof of work, and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

121.     Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted and/or not made available.   Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

122.     Despite these requirements, Defendant has knowingly and willfully refused to perform its obligations to authorize and permit and/or make available to Plaintiff Amaraut and the putative California Class Members the ability to take the timely and compliant off-duty meal and rest periods to which they are entitled.

123.     Defendant has also failed to pay Plaintiff Amaraut and the putative California Class Members one hour of pay for each timely, compliant, off-duty meal and/or rest period that they are denied.

124.     Defendant's conduct described herein violates California Labor Code §§ 226.7 and 512 and the applicable Wage Orders.   Therefore, pursuant to Labor Code § 226.7(b), Plaintiff Amaraut and the putative California Class Members are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses, and costs of suit.

125.     As a proximate result of the aforementioned violations, Plaintiff Amaraut and the putative California Class Members have been damaged in an amount according to proof at time of trial.

126.     Wherefore, Plaintiff Amaraut and the putative California Class request relief as hereinafter provided.

### SIXTH CAUSE OF ACTION
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**(By Plaintiff Amaraut and the California Class)**

127.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

128.   This claim is brought by Plaintiff Amaraut against Defendant on behalf of the California Class.

129.   Plaintiff Amaraut and some putative California Class Members have left their employment with Defendant during the statutory period, at which time Defendant owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working outside of their scheduled and paid shifts, including opening the store and logging into computer system, answering business calls completing paperwork and submissions in order to obtain pay and reimbursements, working through meal periods, performing other work-related activities, as well as unpaid overtime compensation.

130.   <u>California Labor Code § 201</u> provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

131.   Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

132.   Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

133.   Defendant willfully refused, and continues to refuse, to provide Plaintiff Amaraut and the putative California Class with pay for off-the-clock work, including but not limited to work performed while clocked out during meal periods, and with meal and rest period premium pay.  In particular, as alleged above, Defendant knew and continues to know that Plaintiff Amaraut and the putative California Class Members performed off-the-clock work before and after their scheduled or paid shifts, but refuses to pay Plaintiff Amaraut and the putative Class Members for the off-the-

1   clock work performed.  Defendant is aware Plaintiff Amaraut and the putative California Class

2   Members miss or have interrupted their meal and rest breaks as a result of Defendant's unlawful

3   policies and practices, but Defendant nevertheless refuses to pay for work performed during meal

4   breaks or to authorize premium pay for missed or interrupted meal and rest periods.

5        134.   Accordingly, Defendant willfully refused and continues to refuse to pay Plaintiff

6   Amaraut and those members of the putative California Class that left their employment with

7   Defendant all the wages that were due and owing them upon the end of their employment.  As a

8   result of Defendant's actions, Plaintiff Amaraut and the putative California Class Members have

9   suffered and continue to suffer substantial losses, including lost earnings and interest.

10        135.   Defendant's willful failure to pay the former employees the wages due and owing

11   them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendant is liable to them for

12   all penalties owing pursuant to Labor Code §§ 201-203.

13        136.   Labor Code § 203 provides that an employee's wages will continue as a penalty up

14   to thirty days from the time the wages were due.  Therefore, Plaintiff Amaraut and the putative

15   California Class Members are entitled to such penalties pursuant to Labor Code § 203, plus interest.

16        137.   As a proximate result of the aforementioned violations, Defendant is liable to Plaintiff

17   Amaraut and putative California Class Members alleged herein for the amounts described, with

18   interest thereon, in an amount according to proof at time of trial.

19        138.   Wherefore, Plaintiff Amaraut and the putative California Class request relief as

20   hereinafter provided.

21   **SEVENTH CAUSE OF ACTION**
**Violations of Labor Code § 226 – Itemized Wage Statements**
22   **(By Plaintiff Amaraut and the California Class)**

23        139.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

24   herein.

25        140.   This claim is brought by Plaintiff Amaraut against Defendant on behalf of the

26   California Class.

27        141.   Defendant does not provide Plaintiff Amaraut and putative California Class Members

28   with accurate itemized wage statements as required by California law.

142.    <u>California Labor Code § 226(a)</u> provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

143.    The IWC Wage Orders also establish this requirement. (See IWC Wage Orders 4-2001(7) and 7-2001(7)).

144.    Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff Amaraut seeks to recover actual damages, costs, and attorneys' fees under this section.

145.    Defendant fails to provide timely, accurate, itemized wage statements to Plaintiff Amaraut and the putative California Class in accordance with Labor Code § 226(a) and the IWC Wage Orders.  In particular, the wage statements the Defendant provides its employees, including to Plaintiff Amaraut and the putative California Class, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.  This is because, in part, Defendant does not count as "hours worked" the off-the-clock time its non-exempt employees who work in

retail stores spend performing certain work activities outside of their scheduled paid shifts answering business calls on their mobile phone, logging into the computer system, and other work-related activities.

146. Defendant's failure to comply with Labor Code § 226(a) was and continues to be knowing and intentional.  Although, as alleged herein, Defendant was aware that Plaintiff Amaraut and the putative California Class Members performed off-the-clock work outside of their scheduled and paid shifts, Defendant systematically fails to include this time worked in their wage statements.

147. Plaintiff Amaraut and putative California Class Members have suffered injury as a result of Defendant's knowing and intentional failure to provide timely, accurate itemized wage statements to them in accordance with Labor Code § 226(a).  In particular, the injury stemming from Defendant's violations is evidenced by this live and active dispute regarding unpaid wages, including overtime pay, between the Parties. As a result of Defendant's violations, Plaintiff Amaraut and the putative California Class are required to undertake the difficult and costly task of attempting to reconstruct Defendant's incomplete and inaccurate time and pay records to ensure that they are paid for all hours worked as required by California law.

148. As a proximate result of the aforementioned violations, Defendant is liable to Plaintiff Amaraut and putative California Class Members alleged herein for the amounts described, with interest thereon, in an amount according to proof at time of trial. Furthermore, Plaintiff Amaraut is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e)

149. Wherefore, Plaintiff and the putative California Class request relief as hereinafter provided.

### EIGHTH CAUSE OF ACTION
**Violation of <u>California Business and Professions Code §§ 17200</u>, *et seq*.**
**(By Plaintiff Amaraut and the California Class)**

150. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

151. This claim is brought by Plaintiff Amaraut against Defendant on behalf of the California Class.

152.     The UCL, <u>California Business and Professions Code §§ 17200</u>, et seq., prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

153.     Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

154.     Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

155.     Beginning at an exact date unknown to Plaintiff Amaraut and the putative California Class, but at least since the date four years prior to the filing of this suit, Defendant has committed acts of unfair competition as defined by the UCL by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.   violations of Labor Code §§ 200, 204, 1194, and 1198 and applicable IWC Wage Orders pertaining to the payment of wages for all hours worked;

    b.   violations of Labor Code § 510 and applicable IWC Wage Orders pertaining to overtime;

    c.   violations of Labor Code §§ 226.7 and 512 and applicable IWC Wage Orders pertaining to meal and rest breaks;

    d.   violations of Labor Code §§ 201-203; and

    e.   violations of Labor Code § 226 regarding accurate, timely itemized wage statements.

156.     The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages and discouraging overtime labor underlying them, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, et seq.

157.     The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, UCL. Among other things, the acts and practices have

1   taken from Plaintiff Amaraut's and putative California Class Members' wages rightfully earned by

2   them, while enabling the Defendant to gain an unfair competitive advantage over law-abiding

3   employers and competitors.

4   158.   Business and Professions Code § 17203 provides that the Court may make such

5   orders or judgments as may be necessary to prevent the use or employment by any person of any

6   practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate to

7   prevent Defendant from repeating the unlawful, unfair and fraudulent business acts and practices

8   alleged above.

9   159.   As a direct and proximate result of the aforementioned acts and practices, Plaintiff

10   Amaraut and putative California Class Members have suffered a loss of money and property, in the

11   form of unpaid wages which are due and payable to them.

12   160.   Business and Professions Code § 17203 provides that the Court may restore to any

13   person in interest any money or property which may have been acquired by means of such unfair

14   competition.  Plaintiff Amaraut and putative California Class Members are entitled to restitution

15   pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld

16   from employees during the four-year period prior to the filing of this Complaint.

17   161.   Plaintiff Amaraut's success in this action will enforce important rights affecting the

18   public interest and, in that regard, Plaintiff Amaraut sues on behalf of himself and others similarly

19   situated.  Plaintiff and putative California Class Members seek and are entitled to unpaid wages,

20   declaratory relief, and all other equitable remedies owing to them.

21   162.   Plaintiff Amaraut herein take it upon himself to enforce these laws and lawful claims.

22   There is a financial burden involved in pursuing this action, the action is seeking to vindicate a

23   public right, and it would be against the interests of justice to penalize Plaintiff Amaraut by forcing

24   him to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant

25   to Code of Civil Procedure § 1021.5 and otherwise.

26   163.   Wherefore, Plaintiff Amaraut and the putative California Class request relief as

27   hereinafter provided.

28

**NINTH CAUSE OF ACTION**
**Violation of the Arizona Wage Act, <u>A.R.S. §§ 23-350</u>, *et seq.***
**(By Plaintiff McCollum and the Arizona Class)**

164.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

165.    This claim is brought by Plaintiff McCollum against Defendant on behalf of the Arizona Class.

166.    The foregoing conduct, as alleged, violates the Arizona Wage Act, <u>A.R.S. § 23-350.</u>, *et seq*.

167.    At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of <u>A.R.S. § 23-350(3)</u>.  Plaintiff McCollum and members of the Arizona Class are "employees" within the meaning of <u>A.R.S. § 23-350(2)</u>.

168.    "Wages," as defined by <u>A.R.S. § 23-350(7)</u>, means "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

169.    Section 23-351(A) of The Arizona Wage Act, <u>A.R.S. § 23-351(A)</u>, provides:

> Each employer in this state shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees.

170.    Section 23-351(C) of The Arizona Wage Act, <u>A.R.S. § 23-351(C)</u>, provides, in pertinent part:

> Each employer, on each of the regular paydays, shall pay to the employees all wages due the employees up to such date, except… [o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

171.    Section 23-352 of The Arizona Wage Act, <u>A.R.S. § 23-352</u>, prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages," unless certain circumstances apply.

172.    Section 23-353(A) and (B) of The Arizona Wage Act, <u>A.R.S. § 23-353(A)</u> and <u>(B)</u>, provide, in pertinent part:

(A) When an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner.

(B) When an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred.

173.    As a result of Defendant's policy and practice of unlawfully failing to pay Plaintiff McCollum and Arizona Class Members for all hours worked, including overtime compensation, Defendant failed to timely pay all overtime wages owed to Plaintiff McCollum and the Arizona Class in violation of A.R.S. §§ 23-351(C) and 23-252.  For this same reason, Defendant failed to timely pay all overtime wages owed to Plaintiff McCollum and members of the Arizona Class who were discharged from or quit their employment with Defendant during the statutory period in violation of A.R.S. § 23-353(A) and (B).

174.    By intentionally failing to pay for all hours worked, including overtime compensation, Defendant willfully failed and refused to timely pay all overtime compensation due to Plaintiff McCollum and the Arizona Class in violation of A.R.S. §§ 23-351 - 23-353.

175.    As a result of Defendant's unlawful acts, Plaintiff McCollum and the Arizona Class are entitled to the statutory remedies provided by A.R.S. § 23-355(A), including treble damages.

176.    Wherefore, Plaintiff McCollum and the putative Arizona Class request relief as hereinafter provided.

## TENTH CAUSE OF ACTION
### Failure to Compensate for All Hours Worked at Colorado Minimum Wage and Overtime Rates
### (By Plaintiff Myers and the Colorado Class)

177.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

178.    This claim is brought by Plaintiff Myers against Defendant on behalf of the Colorado Class.

179.    Plaintiff Myers alleges that Defendant willfully engaged and continues to engage in a policy and practice of not compensating Plaintiff Myers and putative Colorado Class Members

1  for all hours worked or spent in Defendant's control, including at the appropriate Colorado

2  minimum wage and overtime rates. Detailed above, Defendant required, suffered, and/or permitted

3  Plaintiff Myers and the putative Colorado Class to perform work for the benefit of Defendant

4  without compensation, with Defendant's knowledge.

5       180.    Defendant's policies and practices of requiring Plaintiff Myers and the putative

6  Colorado Class Members to perform work off-the-clock before and after their paid shifts are

7  unlawful. Due to Defendant's systematic denial of payment for all hours worked, Plaintiff Myers

8  and putative Colorado Class Members are routinely compensated at a rate that is less than the

9  statutory minimum wage.  Even absent this off-the-clock work, many of Defendant's non-exempt

10  employees who work in retail stores, including Plaintiff Myers and putative Colorado Class

11  Members, have worked over forty hours in a week. Accordingly, as a result of Defendant's unlawful

12  policy alleged herein of requiring Plaintiff Myers and putative Colorado Class Members to perform

13  off-the-clock work before and after their paid shifts, while clocked out on meal breaks, and at other

14  times, Plaintiff Myers and putative Colorado Class Members have worked overtime hours for

15  Defendant without being paid overtime premiums in violation of the Colorado law.

16       181.    The Colorado Wage Act, C.R.S. §§ 8-4-101, *et seq*.; and the Colorado Minimum

17  Wage Order No. 35, 7 C.C.R. § 1103-1, require non-exempt employees to be compensated for all

18  hours worked, including at the Colorado minimum wage rate, and inclusive of overtime wages

19  worked in excess of forty (40) hours in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 7 Colo.

20  Code Regs. § 1103-1:4. The Colorado Wage Act and the Colorado Minimum Wage Orders were in

21  full force an effect during the applicable statutory period.

22       182.    The Colorado Wage Act, C.R.S. § 8-4-101(14), defines "wages" and "compensation"

23  as follows:

24         (a) "Wages" or "compensation" means: (I) All amounts for labor or service
       performed by employees, whether the amount is fixed or ascertained by the standard

25         of time, task, piece, commission basis, or other method of calculating the same or
       whether the labor or service is performed under contract, subcontract, partnership,

26         subpartnership, station plan, or other agreement for the performance of labor or
       service if the labor or service to be paid for is performed personally by the person

27         demanding payment. No amount is considered to be wages or compensation until

28         such amount is earned, vested, and determinable, at which time such amount shall be

payable to the employee pursuant to this article. (II) Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee; (III) Vacation pay earned in accordance with the terms of any agreement. If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.

183.    Colorado Minimum Wage Order No. 35, 7 C.C.R. § 1103-1(2), provides:

Time Worked: the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work whether or not required to do so. Requiring or permitting employees to remain at the place of employment awaiting a decision on job assignment or when to begin work or to perform clean up or other duties "off the clock" shall be considered time worked and said time must be compensated.

184.    Colorado Minimum Wage Order No. 35, 7 C.C.R. § 1103-1 and Article XVIII, Section 15, of the Colorado Constitution provide that employees receive the minimum wage for all hours worked at the rate of $8.31 per hour from January 1, 2016 and to December 31, 2016; $9.30 per hour from January 1, 2017 to December 31, 2017; $10.20 per hour from January 1, 2018 to December 31, 2018; and $11.10 per hour from January 1, 2019 to the present.

185.    Colorado Minimum Wage Order No. 35, 7 C.C.R. § 1103-1(4) provides:

Overtime Rate: employees shall be paid time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. Hours worked in two or more workweeks shall not be averaged for computation of overtime.

186.    The Colorado Wage Act, C.R.S. § 8-4-110, allows plaintiffs in wage and compensation disputes to recover reasonable costs and attorney fees in successful wage actions.

187.    In violation of Colorado law, Defendant knowingly and willfully refuses to perform its obligation to provide Plaintiff Myers and putative Colorado Class Members with compensation for all time worked, including at applicable Colorado minimum wage and overtime rates. Therefore, Defendant committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Myers's and putative Colorado Class Members' rights.

1   Plaintiff Myers and putative Colorado Class Members are thus entitled to recover nominal, actual,

2   and compensatory damages, plus interest, attorneys' fees, expenses and costs of suit.

3          188.   As a proximate result of the aforementioned violations, Plaintiff Myers and the

4   putative Colorado Class have been damaged in an amount according to proof at time of trial.

5          189.   Wherefore, Plaintiff Myers and the putative Colorado Class request relief as

6   hereinafter provided.

7   **ELEVENTH CAUSE OF ACTION**
**Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods**
8   **(By Plaintiff Myers and the Colorado Class)**

9          190.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

10  herein.

11         191.   This claim is brought by Plaintiff Myers against Defendant on behalf of the Colorado

12  Class.

13         192.   Defendant failed to make available and prevented full, timely, uninterrupted,

14  compliant meal and rest breaks for Plaintiff Myers and putative Colorado Class Members, and

15  required them to continue working during these breaks.

16         193.   Colorado Minimum Wage Order No. 35, 7 C.C.R. § 1103-1:7 provides:

17      Employees shall be entitled to an uninterrupted and "duty free" meal period of at least
    a thirty minute duration when the scheduled work shift exceeds five consecutive
18      hours of work. The employees must be completely relieved of all duties and permitted
    to pursue personal activities to qualify as a non-work, uncompensated period of time.
19      When the nature of the business activity or other circumstances exist that makes an
    uninterrupted meal period impractical, the employee shall be permitted to consume
20      an "on-duty" meal while performing duties. Employees shall be permitted to fully
    consume a meal of choice "on the job" and be fully compensated for the "on-duty"
21      meal period without any loss of time or compensation.

22

23         194.   Colorado Minimum Wage Order No. 35, 7 C.C.R. § 1103-1:8 provides:

24      Every employer shall authorize and permit rest periods, which, insofar as practicable,
    shall be in the middle of each four (4) hour work period. A compensated ten (10)
25      minute rest period for each four (4) hours or major fractions thereof shall be permitted
    for all employees. Such rest periods shall not be deducted from the employee's wages.
26      It is not necessary that the employee leave the premises for said rest period.

27         195.   Plaintiff Myers performed his normal compensable work duties through his meal

28  periods and rest periods in workweeks exceeding forty (40) hours in a workweek.

196.     Defendant deducted time from Plaintiff Myers's pay based on supposed meal break periods and failed to provide Plaintiff Myers with uninterrupted and "duty free" meal periods of at least a thirty (30) minute durations when his scheduled work shifts exceeded five consecutive hours of work.

197.     In addition, Defendant failed to provide Plaintiff Myers with ten (10) minute rest periods for each four (4) hours worked or major fractions thereof.

198.     The Colorado Wage Act, C.R.S. § 8-4-110, allows plaintiffs in wage and compensation disputes to recover reasonable costs and attorney fees in successful wage actions.

199.     Defendant's conduct described herein violates the Colorado Minimum Wage Order. Defendant's conduct and practices, described herein, were willful, intentional, unreasonably, arbitrary, and in bad faith.

200.     As a proximate result of the aforementioned violations, Plaintiff Myers and the putative Colorado Class have been damaged in an amount according to proof at time of trial.

201.     Wherefore, Plaintiff Myers and the putative Colorado Class request relief as hereinafter provided.

### TWELFTH CAUSE OF ACTION
**Failure to Compensate for All Hours Worked at New York Minimum Wage and Overtime Rates**
**(By Plaintiff Almonte and the New York Class)**

202.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

203.     This claim is brought by Plaintiff Almonte against Defendant on behalf of the New York Class.

204.     Plaintiff Almonte alleges that Defendant willfully engaged and continues to engage in a policy and practice of not compensating Plaintiff Almonte and putative New York Class Members for all hours worked or spent in Defendant's control, including at the appropriate New York minimum wage and overtime rates. Detailed above, Defendant required, suffered, and/or permitted Plaintiff Almonte and the putative New York Class to perform work for the benefit of Defendant without compensation, with Defendant's knowledge.

205.   Defendant's policies and practices of requiring Plaintiff Almonte and the putative New York Class Members to perform work off-the-clock before and after their paid shifts are unlawful. Due to Defendant's systematic denial of payment for all hours worked, Plaintiff Almonte and putative New York Class Members are routinely compensated at a rate that is less than the statutory minimum wage.  Even absent this off-the-clock work, many of Defendant's non-exempt employees who work in retail stores, including Plaintiff Almonte and putative New York Class Members, have worked over forty hours in a week. Accordingly, as a result of Defendant's unlawful policy alleged herein of requiring Plaintiff Almonte and putative New York Class Members to perform off-the-clock work before the beginning and after their paid shifts, while clocked out on meal breaks, and at other times, Plaintiff Almonte and putative New York Class Members have worked overtime hours for Defendant without being paid overtime premiums in violation of the New York law.

206.   At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the New York law.

207.   New York Labor Law §§ 190 *et seq.*, and 650 *et seq.*, and its supporting regulations in 12 N.Y.C.R.R. § 146, require overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek.

208.   New York Labor Law § 652(1) sets the New York minimum wage rates. The general New York state minimum wage is currently $11.10 per hour. However, it is significantly higher in New York City and suburban Nassau, Suffolk and Westchester counties.

209.   New York Labor Law §§ 198 and 663 allow for a private right of action for wage claims, and provides for liquidated damages. The liquidated damages are equal to one hundred percent of the total amount of the wages found to be due. The employee is not entitled to liquidated damages where "employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." New York Labor Law §§ 198, 663.

210.   New York law allows plaintiffs in wage and compensation disputes to recover reasonable costs and attorney fees in successful wage actions. New York Labor Law § 663(4)

211.    In violation of New York law, Defendant knowingly and willfully refuses to perform its obligation to provide Plaintiff Almonte and putative New York Class Members with compensation for all time worked, including at applicable New York minimum wage and overtime rates. Therefore, Defendant committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Almonte's and putative New York Class Members' rights. Plaintiff Almonte and putative New York Class Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses and costs of suit.

212.    As a proximate result of the aforementioned violations, Plaintiff Almonte and the putative New York Class have been damaged in an amount according to proof at time of trial.

213.    Wherefore, Plaintiff Almonte and the putative New York Class request relief as hereinafter provided.

### THIRTEENTH CAUSE OF ACTION
### Failure to Authorize, Permit, and/or Make Available Meal Periods
### (By Plaintiff Almonte and the New York Class)

214.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

215.    This claim is brought by Plaintiff Almonte against Defendant on behalf of the New York Class.

216.    Defendant failed to make available and prevented full, timely, uninterrupted, compliant meal breaks for Plaintiff Almonte and putative New York Class Members, and required them to continue working during these breaks.

217.    Section 162 of the New York State Labor Law provides that every person employed in or in connection with a mercantile or other establishment or occupation shall be allowed at least thirty minutes for the noonday meal. The noonday meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon. An employee who works a shift of more than six hours, which extends over the noonday meal period, is entitled to at least thirty minutes off within that period for the meal period. Employees are entitled to a second meal period for longer shifts, and for off-hours shifts, may be entitled to a 45-minute meal period.

218. Plaintiff Almonte performed her normal compensable work duties through her meal periods in workweeks exceeding forty (40) hours in a workweek.

219. Defendant deducted time from Plaintiff Almonte's pay based on supposed meal break periods and failed to provide Plaintiff Almonte with uninterrupted and "duty free" meal periods of at least a thirty (30) minute durations when her scheduled work shifts exceeded six consecutive hours of work.

220. New York law allows plaintiffs in wage and compensation disputes to recover reasonable costs and attorney fees in successful wage actions.

221. Defendant's conduct described herein violates the Section 162 of the New York State Labor Law. Defendant's conduct and practices, described herein, were willful, intentional, unreasonably, arbitrary, and in bad faith.

222. As a proximate result of the aforementioned violations, Plaintiff Almonte and the putative New York Class have been damaged in an amount according to proof at time of trial.

223. Wherefore, Plaintiff Almonte and the putative New York Class request relief as hereinafter provided.

**FOURTEENTH CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements**
**(By Plaintiff Almonte and the New York Class)**

224. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

225. This claim is brought by Plaintiff Almonte against Defendant on behalf of the New York Class.

226. Defendant does not provide Plaintiff Almonte and putative New York Class Members with accurate wage statements as required by New York law.

227. New York Labor Law § 195(3) provides, inter alia, that every employer shall furnish each employee, at each wage payment, with a statement listing gross wages, deductions and net wages, the regular hourly rate of pay, as well as the overtime rate of pay; and upon the request of an employee must furnish an explanation of how the wages were computed.

228.   Failure to provide proper wage statements in compliance with New York Labor Law § 195(3) subjects Defendant to statutory damages of $250 per day, up to a maximum of $5,000 per employee.

229.   Plaintiff Almonte seeks to recover damages, costs, and attorneys' fees for Defendant's failure to provide accurate wage statements.

230.   Defendant fails to provide timely, accurate, itemized wage statements to Plaintiff Almonte and the putative New York Class in accordance with New York Labor Law § 195(3).  In particular, the wage statements the Defendant provides its employees, including to Plaintiff Almonte and the putative New York Class, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.  This is because, in part, Defendant does not count as "hours worked" the off-the-clock time its non-exempt employees who work in retail stores spend performing certain work activities outside of their scheduled paid shifts answering business calls on their mobile phone, logging into the computer system, and other work-related activities.

231.   Defendant's failure to comply with New York Labor Law § 195(3) was and continues to be knowing and intentional.  Although, as alleged herein, Defendant was aware that Plaintiff Almonte and the putative New York Class Members performed off-the-clock work outside of their scheduled and paid shifts, Defendant systematically fails to include this time worked in their wage statements.

232.   Plaintiff Almonte and putative New York Class Members have suffered injury as a result of Defendant's knowing and intentional failure to provide timely, accurate itemized wage statements to them in accordance with New York Labor Law § 195(3).  In particular, the injury stemming from Defendant's violations is evidenced by this live and active dispute regarding unpaid wages, including overtime pay, between the Parties. As a result of Defendant's violations, Plaintiff Almonte and the putative New York Class are required to undertake the difficult and costly task of attempting to reconstruct Defendant's incomplete and inaccurate time and pay records to ensure that they are paid for all hours worked as required by New York law.

1    233.    As a proximate result of the aforementioned violations, Defendant is liable to Plaintiff

2    Almonte and putative New York Class Members alleged herein for the amounts described, with

3    interest thereon, in an amount according to proof at time of trial.

4    234.    Wherefore, Plaintiff Almonte and the putative New York Class request relief as

5    hereinafter provided.

6    ### FIFTEENTH CAUSE OF ACTION

7    **Failure to Compensate for All Hours Worked at Ohio Minimum Wage and Overtime Rates**
**(By Plaintiff Fox and the Ohio Class)**

8    235.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

9    herein.

10   236.    This claim is brought by Plaintiff Fox against Defendant on behalf of the Ohio Class.

11   237.    Plaintiff Fox alleges that Defendant willfully engaged and continues to engage in a

12   policy and practice of not compensating Plaintiff Fox and putative Ohio Class Members for all

13   hours worked or spent in Defendant's control, including at the appropriate Ohio minimum wage

14   and overtime rates. Detailed above, Defendant required, suffered, and/or permitted Plaintiff Fox

15   and the putative Ohio Class to perform work for the benefit of Defendant without compensation,

16   with Defendant's knowledge.

17   238.    Defendant's policies and practices of requiring Plaintiff Fox and the putative Ohio

18   Class Members to perform work off-the-clock before and after their paid shifts are unlawful. Due

19   to Defendant's systematic denial of payment for all hours worked, Plaintiff Fox and putative Ohio

20   Class Members are routinely compensated at a rate that is less than the statutory minimum wage.

21   Even absent this off-the-clock work, many of Defendant's non-exempt employees who work in

22   retail stores, including Plaintiff Fox and putative Ohio Class Members, have worked over forty

23   hours in a week. Accordingly, as a result of Defendant's unlawful policy alleged herein of requiring

24   Plaintiff Fox and putative Ohio Class Members to perform off-the-clock work before the beginning

25   and after their paid shifts, while clocked out on meal breaks, and at other times, Plaintiff Fox and

26   putative Ohio Class Members have worked overtime hours for Defendant without being paid

27   overtime premiums in violation of the Ohio law.

28

239.     At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of Ohio law.

240.     The Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.03, requires employers to pay overtime compensation to all non-exempt employees, at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) hours per workweek.

241.     The Ohio Constitution, Article II, Section 34a and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.03, requires employers to pay the applicable Ohio-mandated minimum wage rate for all time worked. The Ohio minimum wage rate is currently $8.55 per hour.

242.     In Ohio, employers that fail to pay all wages and overtime owed are liable for an additional equal amount as liquidated damages. Ohio Constitution, Article II, Section 34a and ORC § 4111.14(J).

243.     Ohio law entitles plaintiffs in wage and compensation disputes to recover reasonable costs and attorney fees in successful wage actions, as provided by Ohio Rev. Code Ann. § 4111.10, § 2305.11, and other applicable state laws.

244.     In violation of Ohio law, Defendant knowingly and willfully refuses to perform its obligation to provide Plaintiff Fox and putative Ohio Class Members with compensation for all time worked, including at applicable Ohio minimum wage and overtime rates. Therefore, Defendant committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Fox's and putative Ohio Class Members' rights. Plaintiff Fox and putative Ohio Class Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses and costs of suit.

245.     As a proximate result of the aforementioned violations, Plaintiff Fox and the putative Ohio Class have been damaged in an amount according to proof at time of trial.

246.     Wherefore, Plaintiff Fox and the putative Ohio Class request relief as hereinafter provided.

1

2

**SIXTEENTH CAUSE OF ACTION**
**Ohio Prompt Pay Act**
**(By Plaintiff Fox and the Ohio Class)**

3     247.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

4     herein.

5     248.     This claim is brought by Plaintiff Fox against Defendant on behalf of the Ohio Class.

6     249.     The Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15, requires prompt payment

7     of wages.

8     250.     The Ohio Prompt Pay Act entitles employees to be paid all "wages earned" in a timely

9     fashion. In particular, wages earned during the first half of a month must be paid by the first day of

10    the next month. See Ohio Rev. Code Ann. § 4113.15(A). Likewise, wages earned during the second

11    half of a month must be paid by the fifteenth day of the next month. *Id*. The Ohio Prompt Pay Act's

12    protections apply to all wages earned regardless of whether such wages, if paid, would qualify as

13    overtime wages. See, e.g., Shoots v. iQor Holdings US Inc., <u>2015 U.S. Dist. LEXIS 141617, *25-</u>

14    <u>27</u> (D. Minn. Oct. 19, 2015) (applying Ohio Prompt Pay Act to non-overtime wages).

15    251.     By the actions alleged above, Defendant has violated the provisions of the Ohio

16    Prompt Pay Act by failing to pay any wage whatsoever to Plaintiff Fox and putative Ohio Class

17    members when they work off the clock and are deprived of correct minimum wage and overtime

18    compensation. These amounts remain due upon the separation of employment. Therefore,

19    Defendant committed, and continues to commit, the acts alleged herein knowingly and willfully,

20    and in conscious disregard of the Plaintiff Fox and the putative Ohio Class members' rights.

21    252.     Plaintiff Fox and the putative Ohio Class are thus entitled to recover nominal, actual,

22    statutory, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

23    253.     As a proximate result of the aforementioned violations, Plaintiff Fox and the putative

24    Ohio Class have been damaged in an amount according to proof at time of trial.

25    254.     Wherefore, Plaintiff Fox and the putative Ohio Class request relief as hereinafter

26    provided..

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTEENTH CAUSE OF ACTION
### Failure to Compensate for All Hours Worked at Washington Minimum Wage and Overtime Rates
### (By Plaintiff Painter and the Washington Class)

255.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

256.     This claim is brought by Plaintiff Painter against Defendant on behalf of the Washington Class.

257.     Plaintiff Painter alleges that Defendant willfully engaged and continues to engage in a policy and practice of not compensating Plaintiff Painter and putative Washington Class Members for all hours worked or spent in Defendant's control, including at the appropriate Washington minimum wage and overtime rates. Detailed above, Defendant required, suffered, and/or permitted Plaintiff Painter and the putative Washington Class to perform work for the benefit of Defendant without compensation, with Defendant's knowledge.

258.     Defendant's policies and practices of requiring Plaintiff Painter and the putative Washington Class Members to perform work off-the-clock before and after their paid shifts are unlawful. Due to Defendant's systematic denial of payment for all hours worked, Plaintiff Painter and putative Washington Class Members are routinely compensated at a rate that is less than the statutory minimum wage.  Even absent this off-the-clock work, many of Defendant's non-exempt employees who work in retail stores, including Plaintiff Painter and putative Washington Class Members, have worked over forty hours in a week. Accordingly, as a result of Defendant's unlawful policy alleged herein of requiring Plaintiff Painter and putative Washington Class Members to perform off-the-clock work before the beginning and after their paid shifts, while clocked out on meal breaks, and at other times, Plaintiff Painter and putative Washington Class Members have worked overtime hours for Defendant without being paid overtime premiums in violation of the Washington law.

259.     At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of RCW 49.46.010.

260.     During the applicable statutory period, RCW 49.46.020(1) was in full force and effect and required that Plaintiff Painter and putative Washington Class members receive the Washington minimum wage rate for all hours worked. The Washington minimum wage rate is currently $12 per hour.

261.     RCW 49.46.130(1) provides that work performed in excess of forty hours in a given week must be compensated at a rate of no less than one and one-half times the regular rate of pay for an employee.

262.     Washington Administrative Code 296-126-002 defines hours worked as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place."

263.     RCW 49.46.090 and RCW 49.12.150 allow plaintiffs to pursue wage claims under Washington law for unpaid wages, including for minimum wage and overtime violations.

264.     RCW 49.52.70 and RCW 49.52.50 provide that employers that fail to pay minimum wage and/or overtime are liable for wages owed, civil penalties, and double damages for willful violations.

265.     RCW 49.46.090 and RCW 49.48.030 allow the court to grant reasonable attorney's fees in actions in which any person is successful in recovering judgment for wages or salary owed to him or her.

266.     In violation of Washington law, Defendant knowingly and willfully refuses to perform its obligation to provide Plaintiff Painter and putative Washington Class Members with compensation for all time worked, including at applicable Washington minimum wage and overtime rates. Therefore, Defendant committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Painter's and putative Washington Class Members' rights. Plaintiff Painter and putative Washington Class Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses and costs of suit.

267.     As a proximate result of the aforementioned violations, Plaintiff Painter and the putative Washington Class have been damaged in an amount according to proof at time of trial.

268.   Wherefore, Plaintiff Painter and the putative Washington Class request relief as hereinafter provided.

### EIGHTEENTH CAUSE OF ACTION
#### Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods
#### (By Plaintiff Painter and the Washington Class)

269.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

270.   This claim is brought by Plaintiff Painter against Defendant on behalf of the Washington Class.

271.   Defendant failed to make available and prevented full, timely, uninterrupted, compliant meal and rest breaks for Plaintiff Painter and putative Washington Class Members, and required them to continue working during these breaks.

272.   RCW 49.12.010 provides

> The welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health.  The state of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and unsanitary conditions of labor exert such pernicious effect.

273.   RCW 49.12.020 provides that "[i]t shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health."

274.   Pursuant to RCW 49.12.005(5) and WAC 296-126-002(9), conditions of labor "means and includes the conditions of rest and meal periods" for employees.

275.   Washington Administrative Code 296-126-092 provides

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled

---

1

as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

2

(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

3

4

276.     Plaintiff Painter performed her normal compensable work duties through her meal

5

periods and rest periods in workweeks exceeding forty (40) hours in a workweek.

6

277.     Defendant deducted time from Plaintiff Painter's pay based on supposed meal break

7

periods and failed to provide Plaintiff Painter with uninterrupted and "duty free" meal periods of at

8

least a thirty (30) minute durations when her scheduled work shifts exceeded five consecutive hours

9

of work.

10

278.     In addition, Defendant failed to provide Plaintiff Painter with ten (10) minute rest

11

periods for each four (4) hours worked or major fractions thereof.

12

279.     RCW 49.46.090 and RCW 49.48.030 allow the court to grant reasonable attorney's

13

fees in actions in which any person is successful in recovering judgment for wages or salary owed

14

to him or her.

15

280.     Defendant's conduct described herein violates RCW 49.12.020; RCW 49.12.005(5);

16

and Washington Administrative Code 296-126-092. Defendant's conduct and practices, described

17

herein, were willful, intentional, unreasonably, arbitrary, and in bad faith.

18

281.     As a proximate result of the aforementioned violations, Plaintiff Painter and the

19

putative Washington Class have been damaged in an amount according to proof at time of trial.

20

282.     Wherefore, Plaintiff Painter and the putative Washington Class request relief as

21

hereinafter provided.

22

**NINETEENTH CAUSE OF ACTION**

23

**Violation of Washington's Consumer Protection Act (RCW 19.86.010, *et seq*.)**
**(By Plaintiff Painter and the Washington Class)**

24

283.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

25

herein.

26

284.     This claim is brought by Plaintiff Painter against Defendant on behalf of the

27

Washington Class.

28

285.    As detailed above, Defendant fail to compensate Plaintiff Painter and putative Washington Class members for all hours worked at at least the Washington minimum wage and applicable Washington overtime rates, and failed to provide required meal and rest breaks in violation of Washington law.

286.    Defendant has engaged in unfair or deceptive acts or practices including, but not limited to: (i) failing to pay Plaintiff Painter and Washington Class members wages for off-the-clock work, including at the applicable Washington minimum wage; (ii) preventing Plaintiff Painter and Washington Class members from taking rest and meal breaks; (iii) failing to pay Plaintiff Painter and Washington Class members for the periods during which their rest and meal breaks were interrupted or missed; (iv) failing to pay Plaintiff Painter and Washington Class members for overtime worked.

287.    Defendant's unfair or deceptive acts or practices repeatedly occur in Defendant's trade or business, and are capable of deceiving a substantial portion of the public.

288.    As a direct and proximate cause of Defendant's unfair or deceptive acts or practices, Plaintiff Painter and the Washington Class have suffered actual damages, in that Plaintiff Painter and Washington Class members are wrongfully denied the payment of wages, are forced to work off the clock, and are prevented from taking rest and meal breaks.

289.    As a result of Defendants' unfair and deceptive practices, Plaintiffs and the Classes are entitled, pursuant to RCW 19.86.090, to recover treble damages, reasonable attorneys' fees, and costs.

290.    As a proximate result of the aforementioned violations, Plaintiff Painter and the putative Washington Class have been damaged in an amount according to proof at time of trial.

291.    Wherefore, Plaintiff Painter and the putative Washington Class request relief as hereinafter provided.

### TWENTIETH CAUSE OF ACTION
**Penalties Pursuant to § 2699(a) of the Private Attorneys General Act**
**(By Plaintiff Amaraut)**

292.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

293.   This claim is brought by Plaintiff Amaraut against Defendant on behalf himself and all other current and former non-exempt employees of Defendant working in Defendant's retail establishments throughout the California.

294.   Labor Code § 2699(a) provides:

Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought be an aggrieved employee on behalf of himself or herself and other current or former employees.

295.   Labor Code § 203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

296.   Labor Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

297.   Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be

aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

298.   Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

299.   Labor Code § 226.3 provides:

Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law. In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake.

300.   Labor Code § 558(a) provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3)  Wages recovered pursuant to this section shall be paid to the affected employee

301.    Plaintiff Amaraut seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendant, as alleged above, to timely pay all wages owed to Plaintiff Amaraut and each putative California Class Member in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203.  Plaintiff Amaraut seeks such penalties as an alternative to the penalties available under Labor Code § 203, as prayed for herein.

302.    In addition, Plaintiff Amaraut seeks civil penalties pursuant to Labor Code § 2699(a) for each occasion on which Defendant, as alleged above, failed to provide Plaintiff Amaraut and each putative California Class Member with timely and compliant meal and rest periods in violation of Labor Code §§ 226.7(a) and 512 and applicable Wage Orders.  Plaintiff Amaraut seeks such penalties as an alternative to the penalties available under of Labor Code § 226.7(b), as prayed for herein.

303.    Plaintiff Amaraut seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendant, as alleged above, to provide Plaintiff Amaraut and each putative California Class Member with accurate, itemized wage statements in compliance with Labor Code § 226(a) in the amounts established by Labor Code §§ 226(e) and 226.3.  Plaintiff Amaraut and the California Class seek such penalties as an alternative to the penalties available under Labor Code § 226(e), as prayed for herein.

304.    Plaintiff Amaraut also seeks civil penalties pursuant to Labor Code § 2699(a) for each violation of Labor Code § 510, alleged above, as well as any provision regulating hours and days of work in any order of the IWC.

305.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff Amaraut provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim.

1  Sixty-five calendar days have passed without notice from the LWDA. Plaintiff Amaraut satisfied

2  the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

3      306.   Plaintiff Amaraut seeks the aforementioned penalties on behalf of the State of

4  California, other aggrieved employees, and himself as set forth in Labor Code § 2699(g)(1).

5      307.   Defendant is liable to Plaintiff Amaraut, the putative California Class, and the State

6  of California for the civil penalties set forth in this Complaint, with interest thereon.   Plaintiff

7  Amaraut is also entitled to an award of attorneys' fees and costs as set forth below.

8      308.   Wherefore, Plaintiff Amaraut requests relief as hereinafter provided.

9  **TWENTY-FIRST CAUSE OF ACTION**
**Penalties Pursuant to § 2699(f) of the Private Attorneys General Act**
10 **(By Plaintiff Amaraut)**

11     309.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

12 herein.

13     310.   This claim is brought by Plaintiff Amaraut against Defendant on behalf himself and

14 all other current and former non-exempt employees of Defendant working in Defendant's retail

15 establishments throughout the California.

16     311.   Labor Code § 2699(f) provides:

17         For all provisions of this code except those for which a civil penalty
           is specifically provided, there is established a civil penalty for a
18         violation of these provisions, as follows: . . . (2) If, at the time of the
           alleged violation, the person employs one or more employees, the civil
19         penalty is one hundred dollars ($100) for each aggrieved employee
           per pay period for the initial violation and two hundred dollars ($200)
20         for each aggrieved employee per pay period for each subsequent
           violation[.]
21

22     312.   To the extent than any violation alleged herein does not carry penalties under Labor

23 Code § 2699(a), Plaintiff Amaraut seeks civil penalties pursuant to Labor Code § 2699(f) for each

24 pay period in which Plaintiff Amaraut and putative California Class Members were aggrieved, in

25 the amounts established by Labor Code § 2699(f).

26     313.   Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff Amaraut provided the

27 LWDA with notice of his intention to file this claim. Sixty-five calendar days have passed without

28

1   notice from the LWDA. Plaintiff Amaraut satisfied the administrative prerequisites to commence

2   this civil action in compliance with § 2699.3(a).

3        314.    Plaintiff Amaraut seeks the aforementioned penalties on behalf of the State of

4   California, other aggrieved employees, and himself as set forth in Labor Code § 2699(g)(1).

5        315.    Defendant is liable to Plaintiff Amaraut, the putative California Class, and the State

6   of California for the civil penalties set forth in this Complaint, with interest thereon.   Plaintiff

7   Amaraut is also entitled to an award of attorneys' fees and costs as set forth below.

8        316.    Wherefore, Plaintiff Amaraut requests relief as hereinafter provided.

9                        **TWENTY-SECOND CAUSE OF ACTION**
                         **Unlawful Deductions from Commissions**
10                        **(By Plaintiff Amaraut, Individually)**

11       317.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

12   herein.

13       318.    As a retail employee of Defendant, Plaintiff Amaraut's compensation was based

14   partially on commission payments that he earned based on sales of Sprint service plans, cell phones,

15   phone accessories, and other products and services. On information and belief, Plaintiff Amaraut's

16   commissions were generally calculated on a monthly basis, with his earned commissions generally

17   ascertained, calculated and paid out by the last day of the following month.

18       319.    From approximately August 2016 through approximately March 2017, Defendant

19   instituted a modification to retail store employees' commissions structure, called the "Sprint

20   Promoter Score Adjustment." A Sprint Promoter Score, or SPS, was calculated for each retail store

21   location based on the results of customer surveys, conducted by a third-party company, that

22   customers were given the option of completing after their interaction with the store.

23       320.    Defendant further calculated a SPS "target score" for each Sprint retail store location

24   each month. If a Sprint retail store location's SPS score for the month met or exceeded the "target

25   score," then the individual earned commissions for that store's employees were unaffected.

26   However, if a Sprint retail store location's SPS was below the SPS "target" score for that month,

27   then a 10% deduction was taken from the earned individual commissions of all retail employees of

28   that retail store location, regardless of whether an individual employee had anything to do with a

1   negative customer survey result, and regardless of whether the negative survey results had any

2   relation to transactions that resulted in individual commissions earned by any individual employee.

3   Moreover, survey results (on which SPS were based) often had nothing to do with any commission-

4   earning transaction. For example, a customer who came in to a store to complain about his Sprint

5   reception (something a retail store location had no control over) could fill out a negative survey

6   result (which would result in a so-called "detractor score") that would negatively impact that store's

7   SPS for that month, even though that customer's interaction with the store had no connection with

8   any commissionable event at that store. Furthermore, a retail store location's monthly SPS was not

9   always based exclusively on survey results attained in the month for which the SPS was calculated.

10   Specifically, if a particular Sprint retail store location had fewer than 20 survey results in a particular

11   month, that store's survey results were measured using an aggregate of the current and previous

12   month's survey results (i.e., if a store had fewer than 20 survey results in February, the February

13   measurement would be the total of that store's survey results from January and February). As a

14   result, the SPS for one month could reflect surveys that were taken in the prior month, which had

15   nothing to do with any commissionable transactions that were completed in that month. Defendant

16   ended the Sprint Promoter Score Adjustment program in or about April 2017.

17   321.   Deductions to Plaintiff Amaraut's earned commissions made pursuant to the Sprint

18   Promoter Score Adjustment Program constituted unlawful deductions from earned wages under

19   California law, since the 10% across-the-board deduction from employees' individual earned

20   commissions was tied to factors that were unpredictable, out of individual employees' control, and

21   unrelated to any particular sale or transaction that any individual employee conducted or to any

22   individual employees' efforts. See Hudgins v. Neiman Marcus Grp., Inc., 34 Cal.App.4th 1109,

23   1123-24 (2007) (holding that conditions placed on earned commissions must relate to the sale that

24   earns the commission, and that "[an employer] cannot avoid a finding that its [commission

25   deduction] policy is unlawful simply by asserting that the deduction is just a step in its calculation

26   of commission income."); Sciborski v. Pac. Bell Directory, 205 Cal.App.4th 1152, 1168-69 (2012)

27   ("[A]n employer may not require an employee to agree to a wage deduction…based on conditions

28   that are unrelated to the sale…").

322.     Defendant made unlawful Sprint Promoter Score Adjustment Program deductions from Plaintiff Amaraut's earned wages. As a result, Defendant failed to pay all wages owed to Plaintiff Amaraut, in violation of Labor Code §§ 221-223, which prohibit, among other things, deductions from earned wages (including commissions) except in certain enumerated circumstances not applicable here.

323.     Defendant's deductions from Plaintiff Amaraut's earned commissions is unlawful. Plaintiff Amaraut is entitled to recovery for unpaid the unlawfully-deducted commissions pursuant to Labor Code §§ 221-223, interest on said commissions, and attorneys' fees pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

324.     Wherefore, Plaintiff Amaraut requests relief as hereinafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

325.     Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, other laws of the State of California, and the state laws of Arizona, Colorado, New York, Ohio, and Washington;

326.     For a declaratory judgment that Defendant has violated the FLSA, California Labor Code, the laws of the State of California, the state laws of Arizona, Colorado, New York, Ohio, and Washington, and public policy as alleged herein;

327.     For a declaratory judgment that Defendant has violated California Business and Professions Code §§ 17200, et seq., as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

328.     For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

329.     For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

330.     For an order awarding Plaintiffs and the Collective and Class Members liquidated and compensatory damages, including lost wages, earnings, and other employee benefits,

1 restitution, and all other sums of money owed to Plaintiffs and Members of the Collective and the

2 Classes, together with interest on these amounts, according to proof;

3       331.    For an order awarding Plaintiffs and the California Class Members civil penalties

4 pursuant to the California Labor Code provisions cited herein, with interest thereon;

5       332.    For an award of reasonable attorneys' fees as provided by the FLSA, California Labor

6 Code, California Code of Civil Procedure § 1021.5, the laws of the State of California, the state

7 laws of Arizona, Colorado, New York, Ohio, and Washington, and/or other applicable law;

8       333.    For all costs of suit;

9       334.    For interest on any damages and/or penalties awarded, as provided by applicable law;

10 and

11      335.    For such other and further relief as this Court deems just and proper.

12

13                                          Respectfully submitted,

14 Date: January 8, 2021                    /s/ *Carolyn H. Cottrell*
                                            Carolyn H. Cottrell
15                                          David C. Leimbach
                                            Scott L. Gordon
16                                          SCHNEIDER WALLACE
17                                          COTTRELL KONECKY LLP

18                                          Gregg I. Shavitz (*pro hac vice*)
                                            Michael Palitz (*pro hac vice*)
19                                          Tamra C. Givens (*pro hac vice*)
20                                          SHAVITZ LAW GROUP, P.A.

21                                          Attorneys for Plaintiffs and the
                                            Collective and Putative Classes
22

23

24

25

26

27

28

SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Amaraut, et al. v. Sprint/United Management Company*

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs hereby demand a jury trial on all claims and issues for which Plaintiffs and the

3   putative Collective and Classes are entitled to a jury.

4

5                                          Respectfully submitted,

6   Date: January 8, 2021                  /s/ *Carolyn H. Cottrell*

7                                          Carolyn H. Cottrell
                                           David C. Leimbach
8                                          Scott L. Gordon
                                           SCHNEIDER WALLACE
9                                          COTTRELL KONECKY LLP

10                                         Gregg I. Shavitz (*pro hac vice*)
                                           Michael Palitz (*pro hac vice*)
11                                         Tamra C. Givens (*pro hac vice*)
                                           SHAVITZ LAW GROUP, P.A.
12

13                                         Attorneys for Plaintiffs and the
                                           Collective and Putative Classes
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---