UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR AMARAUT, KATHERINE ALMONTE, KRISTOPHER FOX, DYLAN MCCOLLUM, QUINN MYERS, and MARISSA PAINTER, on behalf of themselves and others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>                              Defendant. | Case No.: 19-cv-411-WQH-AHG<br><br>**ORDER** |

HAYES, Judge:

      The matters before the Court are the Motion for Final Approval of Class and Collective Action Settlement (ECF No. 201) and the Motion for Award of Attorneys' Fees and Costs, Service Awards, and Approval of *Cy Pres* Recipient (ECF No. 202) filed by Plaintiffs Vladimir Amaraut, Katherine Almonte, Kristopher Fox, Dylan McCollum, Quinn Myers, and Marissa Painter.

///

///

## I. BACKGROUND

On February 28, 2019, Plaintiff Vladimir Amaraut filed a Collective and Class Action Complaint against Defendant Sprint/United Management Company ("Sprint"), alleging violations of the Fair Labor Standards Act ("FLSA") and California wage and hour laws. (ECF No. 1). On November 1, 2019, Plaintiffs Vladimir Amaraut, Katherine Almonte, Corbin Beltz, Kristopher Fox, Dylan McCollum, and Quinn Myers filed a First Amended Collective and Class Action Complaint, alleging the following claims: (1) violations of the FLSA (claim 1) (by Plaintiffs and the FLSA Collective); (2) violations of California wage and hour laws (claims 2-8) (by Plaintiff Amaraut and the California Class); (3) violations of Arizona wage and hour laws (claim 9) (by Plaintiff McCollum and the Arizona Class); (4) violations of Colorado wage and hour laws (claims 10-11) (by Plaintiff Myers and the Colorado Class); (5) violations of New York wage and hour laws (claims 12-14) (by Plaintiff Almonte and the New York Class); (6) violations of Ohio wage and hour laws (claims 15-16) (by Plaintiff Fox and the Ohio Class); (7) violations of Washington wage and hour laws (claims 17-19) (by Plaintiff Beltz and the Washington Class); (8) penalties pursuant to the Private Attorneys General Act ("PAGA") (claims 20-21) (by Plaintiff Amaraut); and (9) unlawful deductions from commissions in violation of the California Labor Code (claim 22) (by Plaintiff Amaraut). (ECF No. 45-1; *see* ECF No. 47). Plaintiffs seek damages, declaratory relief, injunctive relief, an accounting, civil penalties, and attorneys' fees and costs.

On November 1, 2019, the parties filed a Joint Motion to Conditionally Certify the Collective and Facilitate Notice Pursuant to 29 U.S.C. § 216(b). (ECF No. 46). On November 4, 2019, the Court issued an Order granting the Joint Motion, conditionally certifying the FLSA Collective, and approving the Notice of Collective Action Lawsuit and Opt-In Form. (ECF No. 48). On November 18, 2019, the Court issued an Order appointing Heffler Claims Group ("HCG") to facilitate notice to the Collective. (ECF No. 51).

2

19-cv-411-WQH-AHG

On January 8, 2021, Plaintiffs filed a Motion for Preliminary Approval of Class and Collective Action Settlement. (ECF No. 189).

On January 11, 2021, Plaintiffs filed a Second Amended Collective and Class Action Complaint, substituting Plaintiff Marissa Painter for Corbin Beltz as the proposed representative for the Washington Class. (ECF No. 194).

On February 16, 2021, the Court issued an Order granting the Motion for Preliminary Approval of Class and Collective Action Settlement. (ECF No. 195). The Court: (1) preliminarily approved the Settlement; (2) conditionally certified the Arizona, Colorado, New York, Ohio, and Washington Classes; (3) confirmed its Order conditionally certifying the Collective; (4) conditionally authorized HCG as the Settlement Administrator; (5) conditionally appointed Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A., as Counsel for the Classes and the Collective; (6) conditionally appointed Plaintiffs McCollum, Myers, Almonte, Fox, and Painter as Class Representatives and conditionally appointed Plaintiff Amaraut as the Collective Representative; (7) approved the settlement procedures and the Notices of Settlement; and (8) conditionally approved an award of attorneys' fees and costs.

On April 6, 2021, the parties filed a Joint Motion to Dismiss the California Class claims (claims 2-8) and PAGA claims (claims 20-21) without prejudice. (ECF No. 196). On April 8, 2021, the Court granted the Joint Motion.[1] (ECF No. 197).

On June 9, 2021, Plaintiffs filed a Motion for Final Approval of Class and Collective Action Settlement (ECF No. 201) and a Motion for Award of Attorneys' Fees and Costs, Service Awards, and Approval of *Cy Pres* Recipient (ECF No. 202). Sprint did not file an opposition to either Motion. On July 6, 2021, Plaintiffs filed a Supplemental Declaration in Support of Motion for Final Approval of Class and Collective Action Settlement. (ECF No. 205).

---

[1] Plaintiff Amaraut's individual claims for violations of California law (claims 2-8 and 22) remain pending.

On July 7, 2021, the Court held a final approval hearing. No member of the Class or Collective appeared.

## II. TERMS OF THE SETTLEMENT

The Putative Class consists of "any current or former non-exempt employee of Defendant working in Sprint's retail establishments in the states of Arizona, Colorado, New York, Ohio, and Washington during the applicable Settlement Period." (Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 § II.23). The Settlement Period is:

> (b) for all Arizona putative class members, February 28, 2018 through December 31, 2020; (c) for all New York putative class members, February 28, 2013 through December 31, 2020; and (d) for all Colorado, Ohio, and Washington putative class members, February 28, 2016 through December 31, 2020.

(*Id.* § II.33). Members of the Putative Class "who do not opt out are Settlement Class Members and shall be bound by the terms of the Settlement Agreement." (*Id.* § II.23). The proposed FLSA Collective, or "Opt-In Plaintiffs," consists of:

> any and all persons nationwide that were employed by Defendant as a retail non-exempt employee from February 28, 2016 through December 31, 2020, who has filed (and not withdrawn) a consent-to-join form as of the date of the filing by Plaintiffs of the motion for preliminary approval of this Settlement Agreement by the Court.

(*Id.* § II.18).

Sprint "agrees to pay the Maximum Gross Settlement Amount of Seven Million Six Hundred Thousand Dollars and Zero Cents ($7,600,000.00)" to settle the claims of the Settlement Class Members, the Opt-In Plaintiffs, and the individual named Plaintiffs. (*Id.* §§ II.12, IV.D). The following will be deducted from the Maximum Gross Settlement Amount with Court approval: (1) service awards of $15,000 for Plaintiff Amaraut and $10,000 each for Plaintiffs Almonte, Painter, Fox, McCollum, and Myers; (2) $3,999 to settle Plaintiff Amaraut's individual claims for violations of the California Labor Code; (3) settlement administration costs "currently estimated at $99,921.00;" and (4) attorneys'

fees of "33.33% of the Maximum Gross Settlement Amount" plus "out-of-pocket costs and expenses not to exceed $120,000." (*Id.* §§ II.15, IV.F-IV.I).

The remaining "Net Settlement Amount shall be allocated as follows: 70% to the Class Net Settlement Amount and 30% to the FLSA Net Settlement Amount." (*Id.* § IV.E).

> The Class Net Settlement Amount shall be further allocated as follows: 6.6% to Settlement Class Members in the Putative Arizona Class ("the Arizona Class Net Settlement Amount"), 8.4% to Settlement Class Members in the Putative Colorado Class ("the Colorado Class Net Settlement Amount"), 58.8% to Settlement Class Members in the Putative New York Class ("the New York Class Net Settlement Amount"), 10.3% to Settlement Class Members in the Putative Ohio Class ("the Ohio Class Net Settlement Amount"), and 15.9% to Settlement Class Members in the Putative Washington Class ("the Washington Class Net Settlement Amount").

(*Id.*). "The Net Settlement Amount is currently estimated at $4,778,000.00." (*Id.* § II.15).

Settlement Class Members "will receive a *pro rata* share of the Class Net Settlement Amount" based on their respective number of workweeks in the applicable Settlement Period as compared to the total number of workweeks of all Settlement Class Members for their state. (*Id.* § IV.E.1.). Opt-In Plaintiffs "will receive a *pro rata* share of the FLSA Net Settlement Amount" based on their respective number of workweeks in the Settlement Period as compared to the total number of workweeks of all Opt-In Plaintiffs. (*Id.* § IV.E.2.). "To the extent that individuals are both Settlement Class Members and Opt-In Plaintiffs, they shall be eligible to receive both an Individual Class Settlement Share and an Individual FLSA Settlement Share." (*Id.* § IV.E.). "The average net recovery is approximately $495 for Putative Arizona Class Members, $392 for Putative Colorado Class Members, $562 for Putative New York Class Members, $307 for Putative Ohio Class Members, $666 for Putative Washington Class Members, and $353 for FLSA Opt-In Plaintiffs." (Cottrell Decl., ECF No. 201-2 ¶ 72).

Settlement Class Members and Opt-In Plaintiffs "shall have one hundred and twenty (120) calendar days from the date of mailing" to cash their individual settlement checks. (Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 §§ IV.E.1.f, IV.E.2.b). The

uncashed check funds will be redistributed *pro rata* to individuals who cashed their settlement checks. (*Id.*). If the average net recovery from the redistribution is less than $10 per person, or if there are uncashed check funds remaining after the redistribution, "the checks will be cancelled and the corresponding funds will be donated" to the *cy pres* recipient, the Justice Gap Fund. (*Id.*).

### III. NOTICE, OPT-OUTS, & OBJECTIONS TO THE SETTLEMENT

On December 13, 2019, December 27, 2019, and April 23, 2020, HCG disseminated the Court-approved Notice of Collective Action Lawsuit and Opt-In Form to individuals eligible to opt-in to the FLSA Collective. (*See* Cottrell Decl., ECF No. 201-2 ¶¶ 20-23). The Notice informed recipients of their right to opt-in to the lawsuit, the requirements to opt-in, and the 60-day deadline from the date of mailing to opt-in. (*See* Ex. A to Joint Motion to Conditionally Certify the Collective, ECF No. 46-1). "Across the three rounds of notice, [HCG] sent over 34,000 notices via U.S. Mail, over 82,000 email notices, and over 4,700 text message notices." (Cottrell Decl., ECF No. 201-2 ¶ 24). "4,732 retail employees have filed opt-in forms." (*Id.* ¶ 80).

The Senior Director of Kroll Settlement Administration, LLC, f/k/a Heffler Claims Group ("Kroll") states in a Declaration that on March 16, 2021, Kroll received a data file from Sprint containing records of "4,732 FLSA Collective Members; 446 Putative Arizona Class Members; 715 Putative Colorado Class Members; 3,501 Putative New York Class Members; 1,119 Putative Ohio Class Members; and 799 Putative Washington Class Members." (Rapazzini Decl., ECF No. 201-4 ¶ 4). "673 records were identified as both a FLSA Collective Member and a Putative Class Member. . . . The number of unique individuals in the data totaled 10,618, that were identified as FLSA Collective Members, Putative Class Members or both a FLSA Collective Member and a Putative Class Member." (*Id.*).

On March 25, 2021, Kroll sent the Court-approved Notices of Class and Collective Action Settlement to the 10,618 Class and Collective Members via First Class Mail and to 6,507 email addresses on file. (*Id.* ¶¶ 8-9). The Notices informed recipients of the terms

of the Settlement; their number of workweeks; their expected share; the 60-day deadline from the date of mailing to submit objections, requests for exclusions, or disputes; the final approval hearing date; and that Plaintiffs would seek attorneys' fees, costs, and service awards and the corresponding amounts. (*See* Exs. A-D to Rapazzini Decl., ECF No. 201-5). "491 emails were rejected/bounced." (Rapazzini Decl., ECF No. 201-4 ¶ 9). "170 Notices were returned by the USPS with a forwarding address . . . [and] were re-mailed to the updated addresses . . . ." (*Id.* ¶ 10). "880 Notices were returned by the USPS as undeliverable as addressed." (*Id.* ¶ 11). Kroll ran the undeliverable records "through an address trace process," and "re-mailed Notices to [] 793 updated addresses obtained from the trace process" on June 4, 2021. (*Id.*).

"The last day to submit opt-outs/objections/workweek disputes was May 26, 2021." (*Id.* ¶ 12). These deadlines were extended "until July 4, 2021, for individuals who were mailed notice on June 4, 2021." (Cottrell Decl., ECF No. 201-2 ¶ 55). "As of July 6, 2021, Kroll has received 0 timely exclusion requests and 0 objections to the Settlement." (Rapazzini Supp. Decl., ECF No. 205 ¶ 7).

## IV.  CLASS AND COLLECTIVE CERTIFICATION

Plaintiffs request that the Court certify the Settlement Class and, "[t]o the extent necessary, . . . finally certify the Collective as to the Opt-In Plaintiffs." (ECF No. 201-1 at 43). "Collective actions and class actions are creatures of distinct texts—collective actions of [29 U.S.C.] section 216(b), and class actions of Rule 23 [of the Federal Rules of Civil Procedure]—that impose distinct requirements." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).

> To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s [] prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (citations omitted). Under § 216(b), "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell*, 903 F.3d at 1100 (quoting 29 U.S.C. § 216(b)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

The Court has preliminarily certified the proposed Settlement Class and the FLSA Collective. (*See* ECF Nos. 48, 195). 4,732 individuals have opted-in to the FLSA Collective. No individual has objected to certification of the Settlement Class or filed any motion for decertification of the FLSA Collective. *See Campbell*, 903 F.3d at 1117. The Court certifies the Settlement Class and the FLSA Collective as to the Opt-In Plaintiffs for purposes of settlement. All Settlement Class Members and Opt-In Plaintiffs shall be subject to the provisions of the Settlement Agreement, this Order, and the separately-issued Judgment.

## V. FAIRNESS OF THE SETTLEMENT

Plaintiffs assert that the terms of the Settlement are fair, reasonable, and adequate. Plaintiffs assert that the Settlement "represents approximately 10.9% of Defendant's total potential exposure of $69.7 million" and "provides for a considerable average recovery exceeding $450.00." (ECF No. 201-1 at 35-36). Plaintiffs assert that the extensive discovery performed in this case allowed the parties to accurately assess the merits of the claims and defenses. Plaintiffs contend that there are substantial risks to continuing to litigate this case, including significant further discovery, the challenging nature of class certification for off-the-clock claims, and challenges to proving liability and damages. Plaintiffs assert that the "widespread support for the Settlement among Class Members [] gives rise to a presumption of fairness." (*Id.* at 42).

"To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a

whole is fair, reasonable, and adequate." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed R. Civ. P. 23(e)(2)). Courts require a higher standard of fairness when a settlement takes place prior to formal class certification to ensure that class counsel and the defendants have not colluded in settling the case. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *as amended* (July 24, 1998). In assessing a proposed settlement,

> [the court] balance[es] [] several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The Court of Appeals for the Ninth Circuit has not established criteria to determine whether a collective action settlement warrants approval. Most courts evaluate the settlement under the standard established by the Court of Appeals for the Eleventh Circuit, which requires that the settlement constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "If a settlement in an employee FLSA suit [] reflect[s] a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In this case, substantial discovery has been completed, allowing the parties to "evaluate Defendant's exposure on a Class and Collective basis" and make an informed settlement analysis. (*See* Cottrell Decl., ECF No. 201-2 ¶¶ 25-39). The parties attended a settlement conference with the magistrate judge and an 11-hour mediation with an experienced wage and hour mediator. (*See id.* ¶¶ 41-42). On July 31, 2020, the parties

accepted the mediator's proposal, which "contained the essential terms of the instant Settlement." (*Id.* ¶ 42; *see In re Bluetooth*, 654 F.3d at 948 (participation of a mediator is "a factor weighing in favor of a finding of non-collusiveness")). The estimated net recovery for the 10,618 Settlement Class Members and Opt-In Plaintiffs is $4,778,000—an average of $450 per person. (*See* Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 § II.15; Cottrell Decl., ECF No. 201-2 ¶ 67). No Class or Collective Member has opted-out of the Settlement or filed an objection to the Settlement. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *25-26 (S.D. Cal. Nov. 5, 2012) (the absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement). Class Counsel includes attorneys at two different law firms with significant experience in class action and wage and hour litigation who are well qualified to conduct this litigation and assess its settlement value. The Court concludes that the Settlement is fair, reasonable, and adequate and that no evidence of collusion exists. The Court further concludes that the Settlement reflects a reasonable compromise over FLSA issues in dispute.

## VI. ATTORNEYS' FEES & COSTS

Counsel for Plaintiffs requests that the Court approve the following awards authorized by the Settlement Agreement: (1) attorneys' fees in the amount of $2,533,080, representing 33.33% of the $7,600,000 Maximum Gross Settlement Amount and 156% of the $1,626,066 lodestar; (2) litigation costs in the amount of $110,798.93; (3) and settlement administration costs in the amount of $99,921. (*See* Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 § IV.F).

Rule 23 of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). 29 U.S.C. § 216(b) provides that the court in a FLSA collective action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The court has an "independent obligation to ensure

that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage-of-recovery method, "courts typically calculate 25% of the fund as the benchmark for a reason-able fee award." *Id*. However, in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *see* ECF No. 202-1 at 15-16 (collecting cases approving awards of up to 40% of the common fund). Reasons to exceed the 25% benchmark include when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond the cash settlement fund, or handles the case on a contingency basis. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Courts may "appl[y] the lodestar method as a crosscheck of the percentage method." *Id.* at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reason-able hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 941. After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael,* 96 F.3d 359, 363 n.8 (9th Cir. 1996) (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)), *amended on denial of reh'g*, 1997 U.S. App. LEXIS 5508 (9th Cir. Mar. 25, 1997).

In this case, the requested attorneys' fees constitute 33.33% of the common fund, a percentage commonly awarded by courts in this circuit. Class Counsel has significant experience in class action and wage and hour litigation and has demonstrated significant skill during this contentious litigation. (*See* Cottrell Decl., ECF No. 202-2 ¶¶ 5-7; Shavitz Decl., ECF No. 202-4 ¶¶ 4-13). The estimated net recovery for the 10,618 Settlement Class Members and Opt-In Plaintiffs is $4,778,000—an average of $450 per person. (*See* Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 § II.15; Cottrell Decl., ECF No. 201-2 ¶ 67). Class Counsel incurred financial risk by taking this case on a contingent fee basis, and no member of the Class or Collective has objected to the requested fees.

A lodestar cross-check confirms that the requested fees are reasonable. Schneider Wallace Cottrell Konecky LLP ("SWCK") and Shavitz Law Group, P.A. ("SLG") "have devoted over 2,668 hours to the prosecution of the Action, with a combined lodestar amount of $1,626,066.00." (Cottrell Decl., ECF No. 202-2 ¶ 8). Twenty-five attorneys and paralegals from SWCK spent 1,707.90 hours on this case, with billing rates ranging from $300 to $450 for the paralegals and $680 to $1,005 for the attorneys. (*See* Ex. A to Cottrell Decl., ECF No. 202-3 at 2-3). Five attorneys and legal assistants from SLG spent 960.5 hours on this case, with billing rates ranging from $150 for the legal assistant and $600 to $700 for the attorneys. (*See* Shavitz Decl., ECF No. 202-4 ¶ 34). The requested fees represent a lodestar multiplier of 1.56. *See Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)). The Court concludes that the requested attorneys' fees of $2,533,080 are reasonable in light of the recovery under the Settlement, the skill exercised in obtaining that recovery, and the risks in representing the Plaintiffs on a contingent basis.

Class Counsel incurred $110,798.93 in out-of-pocket costs in prosecuting this action—less than the $120,000 maximum provided in the Settlement Agreement. (*See* Ex. B to Cottrell Decl., ECF No. 202-3 at 5-6; Shavitz Decl., ECF No. 202-4 ¶ 40). "A substantial portion of the costs . . . ($93,658.61) relate to notice administration costs for the FLSA Collective." (Cottrell Decl., ECF No. 202-2 ¶ 45). No member of the Class or Collective has objected to the requested costs. The Court concludes that the requested litigation costs of $110,798 are reasonable.

Kroll has billed "approximately $33,411.19 for services and fees incurred in the settlement administration of this case . . . ." (Rapazzini Decl., ECF No. 201-4 ¶ 14). Kroll estimates that it will bill no more than an additional $65,509.97 to complete the administration of this settlement . . . based on Kroll's many years of experience administering class action settlements." (*Id.*; *see id.* ¶ 3 (detailing the work Kroll has done and will do in administering the Settlement)). The Court concludes that administration costs of $98,921.16 are reasonable.

## VII. SERVICE AWARDS

Class Counsel requests that the Court approve service awards in the amounts of $15,000 for Plaintiff Amaraut and $10,000 each for Plaintiffs Almonte, Painter, Fox, McCollum, and Myers as authorized by the Settlement Agreement. (*See* Settlement Agreement, Ex. 1 to Cottrell Decl., ECF No. 201-3 ¶¶ II.12, IV.G). District courts in this circuit consider five factors in determining whether to approve a service award:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Class Counsel states in a Declaration that the named Plaintiffs "have expended substantial time assisting in the prosecution of the claims," including "providing

information to counsel, assisting in the drafting of pleadings and other documents, [] regularly discussing the facts and proceedings with Class Counsel," and "responding to Defendant's voluminous discovery requests." (Cottrell Decl., ECF No. 202-2 ¶ 51). The named Plaintiffs agreed to a general release and undertook "significant reputational risks . . . by publicly affiliating themselves with litigation against their employer." (*Id.* ¶ 52). Each of the named Plaintiffs submitted a Declaration detailing the work they performed in this case. (*See* ECF Nos. 202-5–202-10). No member of the Class or Collective has objected to the requested service awards. The Court concludes that the requested service awards of $15,000 for Plaintiff Amaraut and $10,000 each for Plaintiffs Almonte, Painter, Fox, McCollum, and Myers are reasonable. *See, e.g.*, *Hose v. Wash. Inventory Serv.*, No. 14-cv-2869-WQH-AGS, 2020 U.S. Dist. LEXIS 117242, at *51 (S.D. Cal. July 2, 2020) (approving a $20,000 service award for the named plaintiff in a wage and hour suit).

## VIII. CONCLUSION

The Court, having reviewed and considered the Motion for Final Approval of Class and Collective Action Settlement (ECF No. 201) and the Motion for Award of Attorneys' Fees and Costs, Service Awards, and Approval of *Cy Pres* Recipient (ECF No. 202), hereby **GRANTS** the Motions and **ORDERS** the following:

1. This Order incorporates by reference the definitions in the Settlement, and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement.

2. The Court has jurisdiction over the claims of the participating Settlement Class Members and Opt-In Plaintiffs asserted in this proceeding and over all Parties to the action.

3. The Court finds that no Settlement Class Members have objected to the Settlement and no Settlement Class Members have requested exclusion from the Settlement. Additionally, 4,732 Collective Members have filed valid opt-in forms.

4. The Court hereby **GRANTS** final approval of the terms and conditions contained in the Settlement, as to the Settlement Class Members and Opt-In Plaintiffs. The

Court finds that the terms of the Settlement are within the range of possible approval, pursuant to Rule 23 of the Federal Rules of Civil Procedure and applicable law.

5.   The Court finds that: (1) the settlement amount is fair, reasonable, and adequate to the Settlement Class Members and Opt-In Plaintiffs when balanced against the probable outcome of further litigation relating to class and collective certification, liability and damages issues, and potential appeals; (2) sufficient discovery, investigation, research, and litigation have been conducted such that counsel for the parties at this time are able to reasonably evaluate their respective positions; (3) settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the lawsuit; and (4) the proposed Settlement has been reached as the result of intensive, serious, and non-collusive negotiations between the parties. Accordingly, the Court finds that the Settlement was entered into in good faith.

6.   The Court hereby makes final its certification of the provisional Arizona, Colorado, New York, Ohio, and Washington Classes, in accordance with the Settlement, for the purposes of this Settlement only. The Arizona Class is defined as all current or former non-exempt employees of Defendant working in Sprint's retail establishments in the state of Arizona from February 28, 2018 through December 31, 2020. The Colorado Class is defined as all current or former non-exempt employees of Defendant working in Sprint's retail establishments in the state of Colorado from February 28, 2016 through December 31, 2020. The New York Class is defined as all current or former non-exempt employees of Defendant working in Sprint's retail establishments in the state of New York from February 28, 2013 through December 31, 2020. The Ohio Class is defined as all current or former non-exempt employees of Defendant working in Sprint's retail establishments in the state of Ohio from February 28, 2016 through December 31, 2020. The Washington Class is defined as all current or former non-exempt employees of Defendant working in Sprint's retail establishments in the state of Washington from February 28, 2016 through December 31, 2020. All Class Members who did not opt-out of the Settlement are bound by the terms of the Settlement.

7. The Court hereby makes final its certification of the FLSA Collective comprised of the Opt-In Plaintiffs in this action.

8. The Court hereby **GRANTS FINAL APPROVAL** of the terms and conditions contained in the Settlement as to the Collective of Opt-In Plaintiffs. The Court finds that the terms of the Settlement are within the range of approval, pursuant to the Fair Labor Standards Act and applicable law.

9. The Court hereby finally appoints Plaintiff McCollum as the Class Representative for the Arizona Class, Plaintiff Quinn Myers as the Class Representative for the Colorado Class, Plaintiff Katherine Almonte as the Class Representative for the New York Class, Plaintiff Kristopher Fox as the Class Representative for the Ohio Class, and Plaintiff Marissa Painter as the Class Representative for the Washington Class.

10. The Court hereby finally appoints Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A., as Counsel for the Settlement Class and the Opt-In Plaintiffs.

11. The Court finds that the approved Notices of Settlement (submitted to the Court at ECF No. 189-3) constituted the best notice practicable under the circumstances and are in full compliance with the applicable laws and the requirements of due process. The Court finds that the Notices of Settlement fully and accurately informed the Settlement Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Settlement, and of their right and opportunity to object to the Settlement. A full opportunity has been afforded to the Settlement Class Members to participate in this hearing and all Settlement Class Members and other persons wishing to be heard have been heard. Accordingly, the Court determines that all Settlement Class Members that did not submit a Request for Exclusion are bound by this Final Order and by the separately-issued Judgment.

12. The Court further finds that the Notices of Settlement fully and accurately informed the Collective Members of all material elements of the proposed Settlement and

of their right to opt-in to the Settlement. Accordingly, the Court determines that all Opt-In Plaintiffs are bound by this Final Order and by the separately-issued Judgment.

13. The Court **FINALLY APPROVES** Class Counsel's request for attorneys' fees in the amount of 33.33% of the Gross Settlement Amount, for a total of $2,533,080.00 in fees. This amount is justified under the common fund doctrine, the range of awards ordered in this district and circuit, the excellent results obtained, the substantial risk borne by Class Counsel in litigating this matter, the high degree of skill and quality of work performed, the financial burden imposed by the contingency basis of Class Counsel' representation of Plaintiff and the Classes and Collective, and the additional work required of Class Counsel to bring this Settlement to conclusion. The Court finds the fee award is further supported by a lodestar crosscheck, whereby it finds that the hourly rates of Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A., are reasonable, and that the estimated hours expended are reasonable.

14. The Court FINALLY APPROVES Class Counsel's request for litigation costs in the amount of $110,798.93.

15. The Court FINALLY APPROVES service awards of $15,000 for Plaintiff Vladimir Amaraut, $10,000 for Katherine Almonte, $10,000 for Kristopher Fox, $10,000 for Dylan McCollum, $10,000 for Quinn Myers, and $10,000 for Marissa Painter, and finds that these awards are fair and reasonable for the work these individuals provided to the Settlement Class and Collective and the broader release they executed than the Settlement Class Members and Opt-In Plaintiffs.

16. The Court confirms the appointment of Kroll Settlement Administration, LLC ("Kroll") as Settlement Administrator and approves its reasonable administration costs of $98,921.16, which are to be paid from the Maximum Settlement Amount.

17. The Court approves Justice Gap Fund as the *cy pres* recipient.

18. Accordingly, **GOOD CAUSE APPEARING**, the Court hereby **APPROVES** the following implementation schedule:

| Effective Date | The date by which all of the following |

17

19-cv-411-WQH-AHG

| | |
|---|---|
| | have occurred: (a) the Court has entered an order granting preliminary approval and final approval of the Settlement Agreement; (b) the time for appeal from the Court's Final Approval Order and Judgment has expired (with no appeal having been filed); or (c) in the event any appeal is filed, the date the appeal is disposed in the parties' favor and is no longer subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for review, or otherwise |
| Deadline for Kroll to calculate the employer share of taxes and provide Sprint with the total amount of Sprint's Employer Taxes | Within 7 calendar days after Effective Date |
| Deadline for Sprint to pay the Maximum Gross Settlement Amount and Employer Taxes amount into a qualified settlement account provided by Kroll | Within 30 business days after Effective Date |
| Deadline for Kroll to make payments under the Settlement to Collective and Class Members, Named Plaintiffs, Plaintiffs' counsel, and itself | Within 10 business days after the funding of the qualified settlement account. |
| Check-cashing deadline | 120 calendar days after issuance |
| Deadline for Plaintiffs and Plaintiffs' counsel to Destroy and/or Return Evidence Pursuant to the Settlement Agreement | Within seven (7) calendar days of the distribution of the settlement funds to the Settlement Administrator |
| Deadline for Kroll to redistribute uncashed check funds or transfer uncashed check funds to *cy pres* recipient | As soon as practicable after check-cashing deadline |
| Deadline for Kroll to provide written certification of completion of administration of the Settlement to counsel for all parties and the Court | As soon as practicable after redistribution and/or *cy pres* payment |

19. With this Final Approval of the Settlement, it is hereby ordered that all claims that are released as set forth in the Settlement are barred as of the Effective Date.

20. The Court permanently enjoins all of the Settlement Class Members who did not timely exclude themselves (opt-out) from the Settlement and Opt-In Plaintiffs from prosecuting, pursuing, or seeking to reopen, any released claims (as defined in the Settlement Agreement at Paragraphs II.14, II.19, and II.30 and the Notices of Settlement at Section 6) against any of the "Released Persons" (as defined in the Settlement at Paragraph II.24) as of the Effective Date.

21. The Settlement is not a concession or admission and shall not be used against Defendant as an admission or indication with respect to any claim of any fault or omission by Defendant. Except as necessary to enforce the terms of the Settlement Agreement, neither the Settlement, nor any document, statement, proceeding or conduct related to the Settlement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted into evidence as, received as or deemed to be in evidence for any purpose adverse to the Defendant, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendant of any liability, fault, wrongdoing, omission, concession, or damage, except for legal proceedings concerning the implementation, interpretation, or enforcement of the Settlement.

Dated: August 5, 2021

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court